# EXHIBIT D

No. 2009-11250

ENTERED KP
VERIFIED

| | | |
|---|---|---|
| OJSC UKRNAFTA | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| CARPATSKY PETROLEUM CORPORATION, A DELAWARE CORPORATION; TAUREX RESOURCES PLC; ROBERT BENSH; AND KUWAIT ENERGY COMPANY K.S.C. | § § § § § § | 190th JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR INJUNCTIVE RELIEF AND JURY DEMAND

Plaintiff OJSC Ukrnafta files this petition based upon actual knowledge with respect to itself and its own actions, and upon information and belief as to all other persons and matters.

### Discovery Level

1. Discovery should be conducted under Level 3 of Tex. R. Civ. P. 190.4.

### Nature of the Action

2. This is a suit to recover nearly $80 million in damages and unjust enrichment resulting from defendants' coordinated fraud and negligence relating to a project to jointly develop oil and natural gas fields in Ukraine; and to require defendants to disgorge confidential trade secrets and monetary gains improperly and unjustly obtained.

### Parties

3. Plaintiff OJSC Ukrnafta ("Ukrnafta") is Ukraine's largest oil and gas extraction, processing, and supply company. It is headquartered in Kiev and employs over 30,000 people. The majority owner of Ukrnafta is National Stock Company "Naftogaz of Ukraine."

4. Defendant Carpatsky Petroleum Corporation (Delaware) ("CPC") is a company formed under the laws of the State of Delaware and has a principal place of business in this

County, and committed the torts alleged herein whilst doing business within this County. CPC has not designated an agent for service of process within the State of Texas. Therefore, service may be had by serving the Secretary of State of Texas with instructions to forward this Original Petition to CPC's registered agent in Delaware: The Corporation Trust Co., Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

5. Defendant Taurex Resources PLC ("Taurex") is a company formed under the laws of the United Kingdom with a principal place of business in this County. Taurex may be served through its President, Mr. Robert Bensh, 711 Williams Street, Suite 312, Houston, Texas 77002; or 609 Reinicke Street, Houston, Texas 77007.

6. Defendant Robert Bensh is a natural person that lives in this County and can be served at 711 Williams Street, Suite 312, Houston, Texas 77002; or 609 Reinicke Street, Houston, Texas 77007.

7. Defendant Kuwait Energy Company K.S.C. ("Kuwait Energy") is, on information and belief, a company formed under the laws of the emirate of Kuwait, which has an office and does business within this County. Kuwait Energy can be served through its Vice President, Mr. Harry Saul, at 19 Outervale Place, Spring, Texas 77381. In the alternative, Kuwait Energy can be served pursuant to The Hague Convention, by serving a USM-94 form in duplicate and with Arabic translations of the documents to be served, on the Kuwait Central Authority, at Kuwait Ministry of Justice, Department of International Relations, P.O. Box 6, Safaat 13001, Kuwait City, Kuwait (Telephone: 965-248-6057).

### Jurisdiction and Venue

8. The Court has jurisdiction of this case. A significant portion of the events giving rise to Ukrnafta's claims occurred in this County, defendants reside and/or maintain offices in this County, and the amount in controversy is within the jurisdictional limits of the Court.

9. Venue is proper under Tex. Civ. Prac. & Rem. Code § 15.002. A substantial part of the events or omissions giving rise to plaintiff's claims occurred in this County.

### Facts Giving Rise to This Action

**A.  Ukrnafta signs a Foundation Agreement on a joint venture with CPC-Texas**

10. Ukrnafta and CPC-Texas, a company incorporated under the laws of this State, signed a Foundation Agreement created the joint venture "UkrKARPATOIL LTD" effective August 18, 1994 ("JV"). The purpose of the JV was the implementation of a long-term profitable business in the oil and gas industry of Ukraine. The Charter of the JV was also approved by the signatories in a Meeting of the Participants on August 18, 1994. The JV became a licensee to develop the Bytkiv-Babchynske oil field (BB Field).

**B.  Ukrnafta signs a Joint Activity Agreement with CPC-Texas.**

11. Ukrnafta and CPC-Texas, a company incorporated under the laws of this State, signed a Joint Activity Agreement effective September 14, 1995 ("JAA"). The purpose of the JAA was to develop the Rudivsky-Chervonozavodsky oil and gas field in Ukraine ("RC Field"). The JAA is governed by Ukrainian law.

12. Under the JAA, the parties agreed to pool their "money, material, labor and resources." The JAA required the parties to contribute certain tangible goods and information, as well as to contribute in equal measure to the joint activity's need for operating funds. In return, the parties would receive payments from any operating profit generated by the joint activity.

13. From the outset, CPC-Texas failed to live up to its joint activity obligations, by consistently failing to contribute its required share to the operations of the joint project.

### C. CPC-Texas ceases to exist, merges with CPC-Delaware, but defendants cover it up.

14. On July 18, 1996, CPC-Texas ceased to exist; it merged with CPC-Delaware, a newly-created Delaware company that was the surviving entity from the merger. CPC-Texas never informed Ukrnafta that the signatory to the JAA and participant in the JV was going out of business, or that CPC-Texas wished to substitute a new company to take its place. Not only was this subterfuge inconsistent with the JAA and statutory documents of the JV, it was contrary to requirements of Ukrainian law with regard to (1) changing the parties to a joint project involving a Ukrainian company and governed by Ukrainian law, and (2) changing the participants in a Ukrainian limited liability company which is a joint venture.

15. The cover-up did not end with CPC-Texas failing to disclose that it was going out of business and that CPC-Delaware was trying to take over. Over the subsequent years, defendants studiously avoided disclosing this state of affairs to Ukrnafta, and actually took steps to shield the true facts from Ukrnafta. During that period, certain amendments to the JAA were executed as were statutory documents of the JV. Each time, the defendants took affirmative steps to give the appearance that CPC-Texas still existed, was the signatory to the amendment, and remained Ukrnafta's joint projects associate.

16. Indeed, in an October 1996 amendment and restatement of the JAA (the first one after CPC-Texas had secretly merged with CPC-Delaware) the defendants went so far as to expressly represent that the signatory to that amendment was "Carpatsky Petroleum Corporation, registered in Texas, USA." That was, of course, false.

17.     Thereafter, despite drafting and executing more amendments to the JAA, defendants never corrected that misrepresentation. Indeed, in many amendments throughout 1997, 1998, and 1999, defendants used CPC-Texas's corporate seal to sign the documents.

18.     Because defendants hid this merger from Ukrnafta, and took affirmative steps to perpetuate the coverup, Ukrnafta did not know that its joint activity and JV partner CPC-Texas had dissolved and another company surreptitiously took its place, all in contravention of Ukrainian law. Indeed, in November 2006 Ukrnafta requested proof of CPC's corporate status. In response, defendants forwarded copies of the decade-old incorporation papers of CPC-Texas, not documents relevant to CPC-Delaware.

**D.    Defendants' actions violate the JAA, statutory documents of the JV and Ukrainian law.**

19.     Ukrainian law forbids parties engaged in a joint activity and limited liability company to which a Ukrainian company is a party, from substituting parties or adding new parties to the agreement and to the participants of the JV without notice to and consent by the Ukrainian signatory. Moreover, in 1995 when Ukrnafta entered into the JAA with CPC-Texas, Ukrnafta was a state-owned company and the JAA was in certain respects approved by the state-owned entity Chernigovneftegazgeologiya which provided a geological study of the RC field at that time. Therefore, under Ukrainian law and the terms of the JAA and statutory documents of the JV, defendants' actions violated Ukrainian law.

20.     The effect of defendants' actions is that every amendment to the JAA, starting with the October 15, 1996 amendment/restatement, is null and void. Only the original JAA was valid.

21.     Nevertheless, defendants have continued to profit from their concealment of the true state of affairs from Ukrnafta, by receiving well over $6 million in money and property to

which they were not entitled, directly from the RC Field project and all to Ukrnafta's detriment. Defendants have also improperly received, and continue to possess, Ukrnafta trade secrets.

22. Indeed, perhaps the most egregious result of defendants' deceit is the $70 million payment they received late in 2007 from Kuwait Energy, who purported to purchase defendants' interest in the RC Field project and in the JV, among other interests. Of course, these assets were not defendants' to sell, and the sale and $70 million defendants CPC, Taurex and Bensh pocketed constitutes an unjust enrichment.

### E. Ukrnafta learns of defendants' deceit.

23. Not until November 2008 did Ukrnafta learn of the coordinated cover-up by defendants. Only then did Ukrnafta learn, for the first time, that which defendants had known for years: CPC-Texas dissolved in 1996; every subsequent amendment to the JAA was invalid; and defendants had been improperly receiving trade secrets and being unjustly enriched by taking payments they were not entitled to, all to Ukrnafta's detriment.

### F. Defendants improperly possess trade secrets belonging to Ukrnafta.

24. Pursuant to the terms of the JAA, Ukrnafta shared with CPC-Texas a wealth of trade secrets and confidential business information. This information included detailed geologic data and surveys, sufficient to give CPC-Texas detailed technical knowledge of the RC field.

25. Such information would be considered extremely sensitive by any oil and gas company. In this case, it is even more so: under Ukrainian law, such information cannot be shared with a third party that has no right to the information. Violation of these provisions can lead to serious penalties for the company that provides the information to the third party.

26. That is the precise situation Ukrnafta finds itself in. While it was appropriate for Ukrnafta to provide these trade secrets to CPC-Texas (indeed, the JAA required it), once CPC-

Texas dissolved and CPC-Delaware had taken no steps to properly and openly obtain its participation in the JAA (and JV) in accordance with the laws of Ukraine, Ukrnafta was left as the sole party authorized to develop the RC Field. CPC-Delaware had no right to possess this information, and Ukrnafta is obligated to retrieve the information. Moreover, CPC-Delaware never had the right to receive directly such information from Ukrnafta. However, because of defendants' deceit, Ukrnafta was unaware that after July 1996 the entity that possessed its trade secrets, and with which Ukrnafta continued to share such information, was not its joint activity partner CPC-Texas.

27. These facts have left Ukrnafta open to legal liability in the Ukraine, as well as created the likelihood that this wealth of trade secret and confidential information has been and will be misused by defendants.

### First Cause of Action
### (Negligent Misrepresentation--as to Defendants CPC, Taurex, and Bensh)

28. Ukrnafta realleges the material facts alleged in the preceding paragraphs.

29. As the foregoing facts demonstrate, defendants made material representations to Ukrnafta with regard to what entity was party to the many JAA amendments. Defendants had a pecuniary interest in the RC Field project, and made these representations in the course of their business and for the guidance of Ukrnafta in proceeding with the RC field project under the auspices of the JAA. The representations were false, and defendants failed to exercise reasonable care and/or competence in communicating this information to Ukrnafta.

30. Ukrnafta reasonably relied on defendants' representations; defendants were the only ones in position to know the real truth behind CPC's secret corporate machinations. The false representations damaged Ukrnafta, in an amount that will be proved at trial.

31. All conditions precedent to making this claim have been met.

### Second Cause of Action
### (Fraud----as to Defendants
### CPC, Taurex, and Bensh)

32. Ukrnafta realleges the material facts alleged in the preceding paragraphs. Defendants made material representations to Ukrnafta, including representing that CPC-Texas remained alive and well, not dissolved; that the JAA continued to be valid; that the JAA amendments were valid; and that the signatory to those many amendments, was CPC-Texas. The representations were material, and they were false.

33. In making these representations, defendants knew they were false, or made the representations recklessly, as positive assertions and without knowledge of the truth or falsity of these representations. Defendants intended that Ukrnafta act on these false representations, by continuing to provide CPC-Delaware with trade secrets and confidential information; continuing to approve distribution of joint activity profits to defendants; and continuing to share benefits under the JAA with defendants. Ukrnafta relied on these and other misrepresentations, and reasonably so.

34. Defendants' material false representations damaged Ukrnafta in an amount that will be proved at trial.

35. All conditions precedent to making this claim have been met.

### Third Cause of Action
### (Misappropriation of Trade Secrets--
### as to Defendants CPC, Taurex, and Bensh)

36. Ukrnafta realleges the material facts alleged in the preceding paragraphs.

37. Ukrnafta owns various trade secrets. Defendants obtained and used these trade secrets after having acquired them by improper means, that is, the fraudulent and deceitful cover-up of CPC-Texas's dissolution and CPC-Delaware's improper hijacking of CPC-Texas' role in the JAA and the JV.

38. Ukrnafta has been injured by these actions in an amount that will be proved at trial.

### Fourth Cause of Action
### (Tortious Interference with Existing Contract--
### As to Defendants CPC and Bensh)

39. Ukrnafta realleges the material facts alleged in the preceding paragraphs.

40. Ukrnafta was party to a valid, subsisting contract -- the September 1995 JAA. Its counter-party was CPC-Texas. Defendants willfully and intentionally interfered with that contract, by dissolving CPC-Texas without notice to Ukrnafta, and then engaging in a concerted effort to conceal their acts. These actions have proximately caused actual damage to Ukrnafta in an amount that will be proved at trial.

### Fifth Cause of Action
### (Unjust Enrichment--as to Defendants
### CPC, Taurex, and Bensh)

41. Ukrnafta realleges the material facts alleged in the preceding paragraphs. Defendants have obtained, and continue to obtain, economic benefits from Ukrnafta, by keeping millions in ill-gotten gains, and by keeping Ukrnafta's valuable trade secrets. Defendants' actions have constituted the taking of an unfair advantage over Ukrnafta, resulting in an economic gain for defendants in an amount that will be proved at trial.

### Sixth Cause of Action
### (Declaratory Judgment--all Defendants)

42. Ukrnafta realleges the material facts alleged in the preceding paragraphs.

43. There is a real, substantial, and justiciable controversy about the rights and status of the parties under the JAA. Ukrnafta alleges that the JAA is void and all of the amendments are void *ab initio*. Declaratory relief will resolve the controversy.

44.     Pursuant to the Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37.001, *et seq.*, Ukrnafta seeks a declaration of the respective rights of the parties under the JAA. All parties that have any claim or interest in the declarations sought by Ukrnafta are parties to this proceeding.

### Seventh Cause of Action
### (Application for Permanent Injunction--All Defendants)

45.     Ukrnafta realleges the material facts alleged in the preceding paragraphs.

46.     Ukrnafta pleads for a permanent injunction to issue, preventing defendants from using or disseminating Ukrnafta's trade secrets, and requiring them to return to Ukrnafta the trade secrets in their possession. The facts alleged above demonstrate a probable right to relief on the part of Ukrnafta. These facts also demonstrate that Ukrnafta has been injured, and continues to be injured, by defendants' improper possession of Ukrnafta's trade secrets. The harm to Ukrnafta is imminent, ongoing and irreparable. Moreover, Ukrnafta has no adequate remedy at law: money cannot adequately compensate it for having its trade secrets improperly possessed by defendants.

47.     This warrants issuance of a permanent injunction, preventing defendants from using or disseminating Ukrnafta's trade secrets, and requiring them to return to Ukrnafta the trade secrets in their possession.

### Attorney Fees

48.     Ukrnafta has been required to retain the services of attorneys in the prosecution of this claim. Pursuant to § 37 of the Texas Civil Practice and Remedies Code, Ukrnafta seeks to recover its reasonable attorney fees and costs necessarily expended in this matter.

## Jury Demand

49. Ukrnafta demands a jury for all issues so triable, and has tendered the required jury fee concurrently with filing of this Original Petition.

## Prayer for Relief

Upon final hearing or trial, Ukrnafta respectfully requests judgment for itself and against defendants, and that Ukrnafta be awarded the following relief:

1. All actual, consequential, and exemplary damages to which Ukrnafta shows itself justly entitled;

2. Permanent injunctive relief as requested above;

3. The costs of this action and the reasonable attorney fees Ukrnafta incurred in prosecuting this action;

4. Pre- and post-judgment interest as permitted by law; and,

5. All other relief to which Ukrnafta is entitled, whether at law or in equity.

Respectfully submitted,

YETTER, WARDEN & COLEMAN, L.L.P.

By: _____
R. Paul Yetter
State Bar No. 22154200
Shawn M. Bates
State Bar No. 24027287
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

ATTORNEYS FOR PLAINTIFF
OJSC UKRNAFTA



**STATE OF TEXAS**
**COUNTY OF HARRIS**

I, Loren Jackson, District Clerk of Harris County, Texas, certify that this is a true and correct copy of the original record filed and/or recorded in my office, electronically or hard copy, as it appears on this date. Witness my official hand and seal of office this 3-25-09

**LOREN JACKSON, DISTRICT CLERK**
**HARRIS COUNTY, TEXAS**
                                                Deputy