# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| OJSC UKRNAFTA | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | |
| | § | |
| CARPATSKY PETROLEUM | § | Civil Action No. 4:09-CV-891 |
| CORPORATION, a Delaware Corporation; | § | |
| TAUREX RESOURCES PLC; | § | |
| ROBERT BENSCH and | § | |
| KUWAIT ENERGY COMPANY, K.S.C. | § | |
| | § | |
| Defendants. | § | |

---

## CARPATSKY PETROLEUM CORPORATION'S EMERGENCY MOTION FOR STAY PENDING DECISION BY ARBITRATION TRIBUNAL

---

Stuart C. Hollimon
Texas Bar No. 09878500
S.D.O.T. No. 139075
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4033
Fax: (713) 238-7212
stuarthollimon@andrewskurth.com

Attorney-In-Charge for Defendant,
CARPATSKY PETROLEUM CORPORATION

# TABLE OF CONTENTS

I.     SUMMARY OF RELIEF SOUGHT ................................................................. 1

II.    THE CLAIMS IN THIS LAWSUIT ............................................................... 2

III.   THE ARBITRATION AGREEMENTS .......................................................... 3

IV.   THE CLAIMS IN THE STOCKHOLM ARBITRATION ................................ 4

V.    ARGUMENT AND AUTHORITIES ............................................................. 7

    A.   The JV and the JAA Are Subject to the Federal Arbitration Act and The Convention on the Recognition and Enforcement of Foreign Arbitral Awards. ................................... 7

    B.   Federal Law Strongly Favors Arbitration in The International Context. ........................... 8

    C.   This Lawsuit Must Be Stayed Pursuant to the Act. ......................................................... 10

       1. There are valid arbitration agreements between the parties ......................................... 10

       2. The dispute falls within the scope of the arbitration agreements ................................. 13

    D.   This Lawsuit Must be Stayed Pursuant to the Convention ............................................... 13

    E.   The Case for a Stay is Even More Compelling Because These Same Issues Have Already Been Briefed and Heard by the Tribunal. .......................................................... 14

VI.   PRAYER ..................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Agere Systems, Inc. v,. Samsung Electronics Co., Ltd.,*
  No. 07-40984, 2009 WL 388940 at *3 (5th Cir. February 18, 2009) ......................................... 9

*Alford v. Dean Witter Reynolds, Inc.,*
  975 F.2d 1161 (5th Cir. 1992) ................................................................................................. 16

*Al-Salamah Arabian Agencies Co., Ltd. v. Reece,*
  673 F.Supp. 748 (M.D.N.C. 1987) ............................................................................................. 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
  207 F.3d 1126 (9th Cir. 2000) ................................................................................................. 15

*Complaint of Hornbeck Offshore (1984) Corp.,*
  981 F.2d 752 (5th Cir. 1993) ............................................................................................. 10, 13

*Indep. Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.,*
  202 F.3d 965 (7th Cir. 2000) ................................................................................................... 15

*John Hancock Mut. Life Ins. Co. v. Olick,*
  151 F.3d 132 (3rd Cir. 1998) ................................................................................................... 15

*Jureczki v. Banc One Texas, N.A.,*
  252 F.Supp.2d 368 (S.D. Tex. 2003) ........................................................................... 10, 11, 13

*Mitsubishi Motors v. Soler Chrysler-Plymouth,*
  473 U.S. 614 (1985) ................................................................................................................... 9

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp,*
  460 U.S. 1 (1983) ....................................................................................................................... 8

*Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.,*
  88 F.3d 129 (2nd Cir. 1996) ..................................................................................................... 15

*Neal v. Hardee's Food Sys., Inc.,*
  918 F.2d 34 (5th Cir. 1990) ....................................................................................................... 8

*New Orleans S.S. Ass'n v. General Longshore Wkrs.,*
  626 F.2d 455, 468 (5th Cir. 1980) ........................................................................................... 15

*OPE International LP v. Chet Morrison Contractors Inc.*
  258 F.3d 443 (5th Cir. 2001) ................................................................................................... 10

*Pioneer Properties, Inc. v. Martin,*
    557 F.Supp. 1354 (D. Kansas 1983) ......................................................................................... 7

*Prima Paint v. Flood & Conklin,*
    388 U.S. 395 (1967) ................................................................................................................. 11,12

*Scherk v. Alberto-Culver Co.,*
    417 U.S. 506 (1974) ................................................................................................................. 8

*Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*
    767 F.2d 1140 (5th Cir. 1985) ................................................................................................ 13,14

*Will-Drill Res., Inc. v. Samson Res. Co.,*
    352 F.3d 211 (5th Cir. 2003) ................................................................................................. 11

## <u>Statutes</u>

9 U.S.C. § 1 ................................................................................................................................... 7

9 U.S.C. § 2 ................................................................................................................................... 7

9 U.S.C. § 3 ................................................................................................................................... 10, 14

9 U.S.C. § 201 .............................................................................................................................. 8

9 U.S.C. § 208 .............................................................................................................................. 14

| | | |
|---|---|---|
| OJSC UKRNAFTA | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | |
| | § | |
| CARPATSKY PETROLEUM | § | Civil Action No. 4:09-CV-891 |
| CORPORATION, a Delaware Corporation; | § | |
| TAUREX RESOURCES PLC; | § | |
| ROBERT BENSCH and | § | |
| KUWAIT ENERGY COMPANY, K.S.C. | § | |
| | § | |
| Defendants. | § | |

---

## CARPATSKY PETROLEUM CORPORATION'S EMERGENCY MOTION FOR STAY PENDING DECISION BY ARBITRATION TRIBUNAL

---

COMES NOW, Defendant Carpatsky Petroleum Corporation ("Carpatsky") and files this Emergency Motion for Stay Pending Decision by Arbitration Tribunal.[1]

## I.     SUMMARY OF RELIEF SOUGHT

Carpatsky moves the Court to stay all proceedings in this lawsuit on the grounds that the claims asserted by Plaintiff OJSC Ukrnafta ("Ukrnafta"), a privately owned Ukrainian entity, involve matters already under consideration in a pending arbitration between the parties in Stockholm, Sweden. Indeed, the facts and issues at the heart of this case have been fully briefed and argued to the Arbitration Tribunal, and it has stated its intention to issue a ruling on those issues by mid-April 2009. As explained below, the provisions of the Federal Arbitration Act, the

---

[1]     This motion is supported by the Affidavit of Brenda Horrigan ("Horrigan Aff."), attached hereto as Exhibit A, as well as Exhibits 1, 3, and 4 to the Affidavit of Vasylets, Svitlana Volodymyrivna ("Vasylets Aff.") attached to Ukrnafta's Motion for Preliminary Injunction (Dkt. # 3, Ex. 1).

Convention on the Recognition and Enforcement of Foreign Arbitration Awards, and the strong federal policy favoring arbitration require this Court to stay this lawsuit until the Arbitration Tribunal has issued its ruling on these issues.

## II.    THE CLAIMS IN THIS LAWSUIT

The claims asserted by Ukrnafta in this case concern the validity of a Foundation Agreement that created a joint venture between the parties effective August 18, 1994, (the "JV") and certain amendments to a separate Joint Activity Agreement between the parties dated September 14, 1995 ("JAA"). The JV concerns the parties' joint development of the Bytkiv-Babchynske oil field in Ukraine (the "BB Field"). Similarly, the JAA governs the relations between Carpatsky and Ukrnafta in the Rudivsky-Chervonozavodsky gas condensate field in Ukraine (the "RC Field"). All of Ukrnafta's claims arise from the fact that the JV and the JAA were executed by Carpatsky Petroleum Corporation, a Texas corporation ("Carpatsky-Texas"), which in July 1996 was merged into an affiliate known as Carpatsky Petroleum Corporation, a Delaware corporation ("Carpatsky-Delaware"). Because Carpatsky-Texas did not obtain Ukrnafta's consent prior to merging into its corporate affiliate, Ukrnafta contends that all post-merger amendments to the JAA are void and that Carpatsky-Delaware is not a proper party to the original JAA or the JV. Ukrnafta further alleges that subsequent to the 1996 merger pursuant to the JAA and the JV, Ukrnafta unwittingly delivered trade secret information to Carpatsky-Delaware, which had no lawful right to receive or possess that information. Ukrnafta seeks to enjoin Carpatsky from using or disseminating the alleged trade secret information.[2]

---

[2]    Ukrnafta also asserts claims against Carpatsky's parent corporation, Kuwait Energy Company, K.S.C., as well as Carpatsky's former parent, Taurex Resources PLC, and Robert Bensch, former President and CEO of Carpatsky-Delaware. None of these defendants have yet been served or appeared in this action. For purposes of this motion, however, the Court need not be concerned with the absence of these defendants because Ukrnafta's claims against them hinge on the same fundamental allegations as do its claims against Carpatsky and are therefore equally related to the Stockholm arbitration.

Carpatsky, on the other hand, contends that as legal successor to Carpatsky-Texas, Carpatsky-Delaware automatically assumed all rights and obligations under the original JAA and the JV and is therefore a rightful party to those agreements. Carpatsky further contends that provisions of the Ukrainian Civil Code in effect at the time of the 1996 merger did not require Carpatsky-Texas to notify Ukrnafta of the merger or obtain Ukrnafta's consent to the merger. Furthermore, Carpatsky contends that even if such was required, Ukrnafta waived its claim by continuing to execute amendments to the JAA and operate under the JV and the JAA long after having notice of the merger.

### III.  THE ARBITRATION AGREEMENTS

Both the JV and the JAA, as well as its amendments, contain broadly worded agreements to arbitrate all disputes relating to the agreements. In that regard, the JV provides:

> Any disputes and disagreements, and controversies raising from or connected with this Agreement will be settled by amicable negotiations. Unless amicable settlement has been reached within 90 (ninety) days of the date of submission of the notice of presence of a dispute, disagreement, claim by one of the Participants, the case shall be addressed to the Arbitration.[3]

Likewise, the JAA, as originally executed, contained a dispute resolution provision which provided that if the parties failed to resolve "any dispute, discrepancy and difference arising out of or in connection with" the JAA through negotiations, then the dispute would be submitted to arbitration.[4] The parties later entered into two amendments to the JAA—one on October 15, 1996, and one on August 26, 1998.[5] Each of those amendments involved revisions to several provisions of the agreement, including the dispute resolution clause. With respect to arbitration, the dispute resolution provision of the JAA now provides, in relevant part, as follows:

---

[3]  Vasylets Aff., ¶ 3, Ex. 1.

[4]  Vasylets Aff. ¶ 7, Ex. 4.

[5]  Vasylets Aff. ¶ 7, Ex. 3, 4.

> If the Participants fail to achieve agreement with respect to any disputable matters within sixty (60) days upon delivery by one of the Participants of a notice of a dispute, such dispute shall be referred to the Arbitration Institute of the Stockholm Chamber of Commerce which shall finally resolve the same. The Participants agreed that the Arbitration shall be conducted pursuant to the provisions of the UNCITRAL Arbitration Rules. The place of arbitration shall be Stockholm, Sweden. Disputes shall be considered subject to the material law of Ukraine, the country where this Agreement shall be fulfilled. The languages of Arbitration shall be Ukrainian and English.[6]

Thus, by including broad arbitration provisions in both the JV and the JAA, Carpatsky and Ukrnafta agreed to submit to arbitration any and all disputes arising in connection with those agreements.

## IV.  THE CLAIMS IN THE STOCKHOLM ARBITRATION

The issues at the heart of this lawsuit also lie at the core of the Stockholm Arbitration, which has been pending for more than one year.

As mentioned above, the JAA provides for the joint exploration and development by Carpatsky and Ukrnafta of the RC Field in Ukraine.[7] To that end, under the JAA the parties agreed to "pool their money, material, labor resources, technological and economic potential" in order to achieve the objectives of the joint activity, with the stated intention of the parties being that each would hold a 50% interest in the joint activity.[8] The agreement also provided, however, that if either party was unable to fully fund its 50% share of the investment, then the other party could cover the deficit, and the investment proportions of the parties could be changed for a period of time.[9]

---

[6]     Vasylets Aff. ¶ 7, Ex. 4.

[7]     Vasylets Aff. ¶ 7, Ex. 3.

[8]     Vasylets Aff. ¶ 7, Ex. 3.

[9]     Vasylets Aff. ¶ 7, Ex. 3.

The initial investments by Carpatsky and Ukrnafta were made on a 50-50 basis as contemplated by the agreement, but for a period of time thereafter, Carpatsky was unable to fully fund its share.[10] Ukrnafta made up the difference, and the parties' interests were adjusted accordingly.[11] Subsequently, disputes arose between the parties concerning whether Carpatsky has the right to restore its interest back to 50%, whether Ukrnafta has undertaken operations in the RC Field without obtaining necessary approvals, and whether Ukrnafta has improperly denied Carpatsky access to information about operations under the JAA.[12]

By a Request for Arbitration dated September 28, 2007, Carpatsky referred a dispute to the Arbitration Institute of the Stockholm Chamber of Commerce pursuant to the above-quoted arbitration provision of the JAA.[13] Ukrnafta voluntarily participated in the arbitration proceeding without objection and filed pleadings in the proceeding with respect to the merits. However, on December 19, 2008, Ukrnafta for the first time objected to the jurisdiction of the Arbitration Tribunal.[14]

The basis for Ukrnafta's objection to the Tribunal's jurisdiction is the same as the foundation for its purported claims in this action—that Ukrnafta was not informed of, and did not consent to, the merger of the original party to the JAA, Carpatsky-Texas, into its corporate affiliate, Carpatsky-Delaware.[15] As part of its challenge to the Tribunal's jurisdiction, Ukrnafta further alleges that the fact of the merger was concealed from it in various ways by Carpatsky

---

[10]  Horrigan Aff. ¶ 3, Ex. 1.

[11]  Horrigan Aff. ¶ 3, Ex. 1.

[12]  Horrigan Aff. ¶ 3, Ex. 1.

[13]  Horrigan Aff. ¶ 3, Ex. 1.

[14]  Horrigan Aff. ¶ 4, Ex. 2.

[15]  Horrigan Aff. ¶ 4, Ex. 2.

and the other parties named as defendants in this lawsuit.[16] Based on these allegations, Ukrnafta has argued to the Tribunal that all post-merger amendments to the JAA, including the amendment that incorporates the arbitration provision described above, are void,[17] and that it has no contract – and no arbitration agreement – with Carpatsky-Delaware.[18]

The Tribunal conducted a hearing on Ukrnafta's jurisdictional objection on March 4, 2009, and has indicated that it expects to issue a ruling by mid-April, 2009.[19] Ukrnafta did not appear and did not participate in the hearing.[20] Instead, on February 23, 2009, Ukrnafta filed this lawsuit in state court in Harris County, Texas.[21] Carpatsky subsequently removed the case to this Court pursuant to a Notice of Removal filed March 29, 2009.[22]

The allegations by Ukrnafta in this lawsuit that it was not informed of the merger of Carpatsky-Texas into Carpatsky-Delaware, and that all post-merger amendments to the JAA are void, are the very same assertions that Ukrnafta has raised as the basis for its objection to jurisdiction in the Stockholm arbitration.[23] Those allegations are the foundation for all claims asserted against Carpatsky and the other defendants in this lawsuit, including the claims that the defendants made material misrepresentations regarding what entity was a party to many amendments to the JAA, that the representations regarding the identity of the signatory to the

---

[16]    Horrigan Aff. ¶ 4, Ex. 2.

[17]    Horrigan Aff. ¶ 4, Ex. 2.

[18]    Horrigan Aff. ¶ 4, Ex. 2.

[19]    Horrigan Aff. ¶ 7, Exs. 7, 10.

[20]    Horrigan Aff. ¶ 7, Ex. 7.

[21]    Plf.'s Orig. Complaint (Dkt. # 1, Ex. D).

[22]    Notice of Removal (Dkt. #1).

[23]    *Compare* Plf.'s Orig. Complaint (Dkt. # 1, Ex. D) *with* Horrigan Aff. ¶ 4, Ex. 2.

amendments constitute fraud, and that the defendants misappropriated trade secrets and were unjustly enriched by acquiring economic benefits under the JV and the JAA.[24]

## V. ARGUMENT AND AUTHORITIES

### A. The JV and the JAA Are Subject to the Federal Arbitration Act and The Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, (the "Act") requires enforcement of "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. As defined in the Act, "commerce" includes commerce with foreign nations. 9 U.S.C. § 1. A contract between an American company and a foreign corporation that is to be performed in a foreign country involves commerce with a foreign nation. *Al-Salamah Arabian Agencies Co., Ltd. v. Reece,* 673 F.Supp. 748, 750 (M.D.N.C. 1987) (citing *Reynolds Jamaica Mines v. La Societe Navale Caennaise,* 239 F.2d 689, 693 (4th Cir. 1956)); *Pioneer Properties, Inc. v. Martin,* 557 F.Supp. 1354, 1364 (D. Kansas 1983). Both the JV and the JAA are agreements under which a United States corporation, Carpatsky, agreed to use its money to help a foreign entity, Ukrnafta, fund the development of property in a foreign country — the BB Field and the RC Field in Ukraine. The JV and the JAA are therefore agreements involving commerce that are subject to the Act. *See Pioneer,* 557 F.Supp. at 1364 ("[C]ertainly the use of plaintiff's money to develop and manage Canadian real estate is a transaction involving commerce for purposes of application of the Arbitration Act.").

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), to which both the United States and Ukraine are parties, provides that each Contracting State shall recognize agreements under which the parties undertake to submit

---

[24]    Plf.'s Orig. Complaint (Dkt. # 1, Ex. D).

disputes to arbitration.[25]   The United States implementing legislation for the Convention provides for the enforcement of the Convention in United States courts.  9 U.S.C. § 201.  Thus, in addition to being independently enforceable under the Act, the arbitration provisions in the JV and the JAA are also enforceable under the Convention, as implemented through the Act.

**B.      Federal Law Strongly Favors Arbitration in The International Context.**

Federal law strongly favors arbitration, particularly in the context of international transactions.  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp*, 460 U.S. 1, 24-25 (1983).  A presumption exists in favor of agreements to arbitrate, and courts must resolve any doubts about an agreement to arbitrate in favor of arbitration.  The Fifth Circuit acknowledged this policy as follows in *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990):

> A party cannot be compelled to submit a dispute to arbitration unless there has been a contractual agreement to do so. . . . In addressing questions of arbitrability, we must, however, keep in mind the strong federal policy favoring arbitration. . . . We resolve doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration. . . . We have held that arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."

918 F.2d at 37 (citations omitted).

In *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974), the Supreme Court noted that the presumption in favor of freely negotiated contractual choice-of-forum provisions and the federal policy in favor of arbitration are particularly strong in the field of international commerce. Citing the adoption of the Convention, and the enactment by Congress of implementing legislation, as evidence of the importance of arbitration in international commercial transactions, the Court said:

> An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the

---

[25]      A copy of the Convention is attached hereto as Exhibit B.

procedure to be used in resolving the dispute. The invalidation of such an agreement in the case before us would not only allow the respondent to repudiate its solemn promise but would, as well, reflect a "parochial concept that all disputes must be resolved under our laws and in or courts. . . . We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts."

417 U.S. at 519 (quoting from *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972).

In *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985), the Supreme Court reiterated the strong presumption in favor of freely negotiated contractual choice-of-forum provisions, and the strong federal policy in favor of arbitration, particularly in the field of international commerce. Citing *Scherk*, the Court said:

[W]e conclude that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

473 U.S. at 629.

The Fifth Circuit recently applied the federal policy favoring arbitration in a manner particularly relevant the issue now before this Court. In *Agere Systems, Inc. v. Samsung Electronics Co. Ltd.*, No. 07-40984, 2009 WL 388940 at *3 (5th Cir. February 18, 2009), the parties disputed whether an arbitration clause contained in an old agreement between them was still in effect or whether it had been superceded by a later agreement containing no arbitration clause. Finding that there were potentially plausible arguments on both sides, the Fifth Circuit held that the federal policy in favor of arbitration required that the ultimate issue of arbitrability be left for the arbitrators to decide. *Agere*, 2009 WL 388940 at *3. That holding is especially pertinent to disputes between U.S. entities and a foreign companies, given the heightened respect for arbitration in the international arena. Accordingly, in this case, as in *Agere*, it is for the arbitrators to decide their jurisdiction over the claims raised by Ukrnafta.

### C.     This Lawsuit Must Be Stayed Pursuant to the Act.

Consistent with the strong federal policy in favor of arbitration, Section 3 of the Act provides that if any suit is brought on a claim that is referable to arbitration under a written agreement, the lawsuit **"shall"** be stayed.   9 U.S.C. § 3 (emphasis added).   In the words of Section 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

The Fifth Circuit has recognized that under Section 3, the stay is mandatory and that a district court has no discretion to deny the stay if the issues in the case are within the reach of the arbitration agreement.   *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 752 (5th Cir. 1993).   In determining whether the issues are within the reach of the arbitration agreement, the Fifth Circuit considers two factors:   (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.   *OPE International LP v. Chet Morrison Contractors Inc.*, 258 F.3d 443, 445 (5th Cir. 2001); *Jureczki v. Banc One Texas, N.A.*, 252 F.Supp.2d 368, 370 (S.D. Tex. 2003). Both factors compel arbitration of the claims asserted against Carpatsky in this case and a corresponding stay of this litigation.

### 1.     There are valid arbitration agreements between the parties.

In determining whether there is a valid arbitration agreement, federal courts hold that the agreement to arbitrate is separable from the contract as a whole, and that the court must

determine the validity of the arbitration agreement separately from the validity or invalidity of the main contract. *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 403; *Jureczki*, 252 F.Supp.2d at 371. Thus, the court can only determine issues relating to the making of the agreement to arbitrate, while defenses that relate to the entire contract must be arbitrated. *Prima Paint*, 388 U.S. at 403-04. The Fifth Circuit in *Will-Drill Res., Inc. v. Samson Res. Co.* explained this rule in plain terms:

> [W]here parties have formed an agreement which contains an arbitration clause, *any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator.* Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator.

352 F.3d 211, 218 (5th Cir. 2003) (*citing Prima Paint Corp.*, 388 U.S. at 403) (emphasis added).

Here, Ukrnafta has not raised any defenses that relate specifically to the arbitration clauses of the JV or the JAA. Instead, Ukrnafta's arguments relate to Carpatsky's status as a party to the agreements, and to the validity of the amendments to the JAA. With respect to the JV and the original JAA, Ukrnafta's allegations concern the validity of the entire agreements as they relate to Carpatsky-Delaware, the surviving Carpatsky corporation. Ukrnafta's only objection to those agreements is that Carpatsky-Delaware is a successor by merger to the original contracting party — Carpatsky-Texas — and that Carpatsky-Texas did not follow the proper procedures to substitute the surviving entity as a party to the JV or the JAA. Those issues do not relate specifically to the validity of the arbitration provisions. Accordingly, those issues are subject to arbitration. *Prima Paint*, 388 U.S. at 403-04.

The same is true with respect to the amendments to the JAA. An October 15, 1996, amendment to the JAA revised the dispute resolution provision, but that was only a small part of

- 11 -

the overall revision.[26] That amendment substantially revised, reorganized and renumbered the provisions of the JAA and added numerous new provisions.[27] Ukrnafta contends that the entire October 15, 1996, amendment is void, not just the revisions to the arbitration provision. Because that contention is directed at the entire amendment, it can be arbitrated and will not defeat the arbitration. *Id.*

The JAA was amended again by changes and amendments dated August 26, 1998.[28] That amendment revised the arbitration provision to provide for referral of disputes to the Arbitration Institute of the Stockholm Chamber of Commerce, and it specified that the place of the arbitration would be Stockholm, Sweden.[29] Like the earlier amendment, the August 26, 1998, amendment revised and supplemented the JAA in numerous respects, and the change in the arbitration provision was only a small part of the revisions. Ukrnafta contends that the entire August 26, 1998, amendment is void, not just the change in the arbitration provision. Because that contention is directed at the entire amendment, and is not directed specifically at the arbitration agreement, it can be arbitrated and thus will not defeat the arbitration. *Id.*

In sum, Ukrnafta's contentions that Carpatsky-Delaware is not a proper party to the JV or to the original JAA and that the contract amendments revising the JAA's arbitration provision are void cannot defeat Carpatsky's right to arbitration because those contentions concern the agreements in their entirety. Because Ukrnafta's claims do not relate specifically to the validity of the arbitration provisions, they must be submitted to arbitration. Thus, the first factor in

---

[26] Vasylets Aff. ¶ 7, Ex. 4.

[27] Vasylets Aff. ¶ 7, Ex. 4.

[28] Vasylets Aff. ¶ 7, Ex. 3.

[29] Vasylets Aff. ¶ 7, Ex. 3.

determining whether the claims against Carpatsky are subject to arbitration must be resolved in favor of arbitration.

### 2. The dispute falls within the scope of the arbitration agreements.

The second factor — whether the dispute in question falls within the scope of the arbitration agreement — must also be resolved in favor of arbitration. In determining whether a dispute falls within the scope of an arbitration agreement, the court must first characterize the arbitration clause as "broad" or "narrow." *Hornbeck*, 981 F.2d at 754; *Jureczki*, 252 F.Supp.2d at 374. If the clause is broad, the action must be stayed and the arbitrators must be permitted to determine whether the dispute falls within the scope of the clause. *Hornbeck*, 981 F.2d at 754; *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985). Clauses that provide generally for the arbitration of "any disputes" between the parties are classified as broad arbitration clauses for this purpose. For example, a clause in *Hornbeck* that covered "any dispute" arising between the parties and a clause in *Sedco* that covered "any dispute or difference between the parties" were both classified as broad clauses.

Similarly, the arbitration provisions at issue here provide broadly that "[a]ny disputes and disagreements, and controversies raising from or connected with [the JV]," as well as "any dispute, discrepancy and difference arising out of or in connection with [ the JAA]" will be submitted to arbitration. Thus, because the JV and the JAA contain valid and broadly worded arbitration provisions, a stay of this case is mandatory under Section 3 of the Act.

### D. This Lawsuit Must be Stayed Pursuant to the Convention.

Like the Act, the Convention requires a stay of all trial court proceedings against Carpatsky. In this regard, Article II Section 1 of the Convention provides that when a dispute subject to the Convention is filed in a court, the court **"shall"** refer the matter to arbitration. Further, through the Convention's implementing legislation, Congress made the mandatory stay

provision in Section 3 of the Act applicable to all agreements subject to the Convention. 9

U.S.C. § 208. Accordingly, where, as here, the limited factual inquiry permitted under Section 3

of the Act (as described in Part C, *supra*) reveals that a U.S. company and a foreign company

have entered into a broad agreement to arbitrate that is subject to the Convention, disputes

between them *must* be referred to arbitration and the litigation stayed. *Sedco*, 767 F.2d at 1151

(reversing district court's refusal to grant stay and holding that the Convention "does not confer

discretion" to deny arbitration in the face of a broad arbitration clause).

E.     **The Case for a Stay is Even More Compelling Because These Same Issues Have Already Been Briefed and Heard by the Tribunal.**

Ukrnafta's lawsuit hinges on its assertions that Carpatsky-Delaware is not a party to the

JV or the original JAA, and that, as a result, the present version of the JAA, including its

arbitration provision, is void. With respect to the JAA, this fundamental issue has already been

asserted by Ukrnafta, fully briefed by the parties, and heard by the Tribunal in the pending

Stockholm arbitration in connection with Ukrnafta's jurisdictional objection. Both Carpatsky

and Ukrnafta have invested significant time and resources into that arbitration, and the Tribunal

has indicated that it expects to issue a ruling on the jurisdictional issue in a matter of weeks.

Further, although the specific claims raised by Ukrnafta in this lawsuit relating to

Carpatsky-Delaware's status as a party to the JV are not a part of the pending Stockholm

arbitration, they are still subject to a stay. As discussed above, those claims are encompassed by

the JV's broad arbitration clause, and arbitration is therefore the only forum in which they can be

decided. Whether that ultimately involves Ukrnafta instituting an arbitration of those claims or

Carpatsky demanding arbitration on them, the fact remains that they are not susceptible to

adjudication in a court of law.

Carpatsky believes that the decision of the Stockholm arbitration Tribunal on the jurisdictional objections raised by Ukrnafta will be *res judicata* of the fundamental issues underlying Ukrnafta's claims in respect of the JV because those issues (including the effect of the 1996 merger of the Carpatsky entities upon Carpatsky's status as a party to the Ukrainian contracts) are the subject of the Tribunal's current deliberations. Moreover, that issue – whether the Stockholm decision has binding effect in a later arbitration – is itself an arbitrable issue. As the Fifth Circuit succinctly stated in *New Orleans S. S. Ass'n v. General Longshore Wkrs.*, 626 F.2d 455 (5th Cir. 1980):

> Whether the award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties, neither the district court nor this court should decide. If the parties do not agree, that issue itself is a proper subject for arbitration.

626 F.2d at 468.

Consistent with the Fifth Circuit's position on the issue, the majority of federal courts have determined that whether a prior arbitration proceeding is res judicata of a later one is a matter for the arbitrator to determine. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132-33 (9th Cir. 2000); *Indep. Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.*, 202 F.3d 965, 968 (7th Cir. 2000); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 139-40 (3rd Cir. 1998); *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135-36 (2nd Cir. 1996). Thus, the potential impact of the Stockholm decision in a subsequent arbitration under the JV is a further reason why all claims in this case should be stayed pending a decision by the Stockholm Tribunal.

For all these reasons, Carpatsky respectfully requests that this court issue a stay of this litigation until such time as the Tribunal in the Stockholm arbitration issues a decision on Ukrnafta's jurisdictional challenge. If the Tribunal grants the objection to its jurisdiction and

dismisses the arbitration, then the stay of this lawsuit can be lifted and this case can go forward with little delay. If, however, the Tribunal determines that the JAA, as amended, is valid and that it therefore has jurisdiction over all disputes relating to the JAA, then the claims against Carpatsky in this lawsuit must be dismissed because such claims can only be resolved by arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1163 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

## VI.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Carpatsky Petroleum Corporation prays that this lawsuit be stayed pending a jurisdictional decision by the Tribunal in the Stockholm arbitration. Carpatsky further prays that all claims asserted against it be dismissed in the event that the Tribunal finds it has jurisdiction.

Respectfully submitted,

By:   s/Stuart C. Hollimon
    Stuart C. Hollimon
    Texas Bar No. 09878500
    S.D.O.T. No. 139075
    600 Travis, Suite 4200
    Houston, Texas  77002
    (713) 220-4033
    Fax: (713) 238-7212
    stuarthollimon@andrewskurth.com

Attorney-In-Charge for Defendant,
CARPATSKY PETROLEUM CORPORATION

OF COUNSEL:
ANDREWS KURTH LLP
Jeffrey D. Migit
Texas Bar No. 00794306
S.D.O.T. No. 20433
jmigit@andrewskurth.com
Timothy S. McConn
Texas Bar No. 24032713
S.D.O.T. No. 32228
tmcconn@andrewskurth.com
Kelly Sandill
Texas Bar No. 24033094
S.D.O.T. No. 38594
ksandill@andrewskurth.com

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 2, 2009, I conferred with Ukrnafta's counsel, Shawn M. Bates, and that counsel cannot agree about the disposition of this Motion for Stay Pending Decision by Arbitration Tribunal.


s/Timothy S. McConn
Timothy S. McConn


## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April, 2009, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

R. Paul Yetter
Shawn M. Bates
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010


s/Stuart C. Hollimon
Stuart C. Hollimon