UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OJSC UKRNAFTA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-891 |
| | § | |
| CARPATSKY PETROLEUM CORP., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Pending before the court are plaintiff OJSC Ukrnafta's motion for preliminary injunction and emergency motion for expedited discovery. Dkts. 3, 4. Also pending before the court is defendant Carpatsky Petroleum Corporation's emergency motion for stay pending decision by arbitration tribunal. Dkt. 6. Upon consideration of the motions, the responses, and the applicable law, the defendant's motion to stay is GRANTED, and this case is STAYED pending arbitration. Accordingly, plaintiff's motions are DENIED.

## BACKGROUND

This case involves two agreements—a joint venture agreement and a joint activity agreement—both originally executed by the plaintiff Ukrnafta and a predecessor-in-interest to defendant Carpatsky. Effective August 18, 1994, Ukrnafta and Carpatsky's predecessor in interest (hereinafter "Carpatsky Texas") executed a Foundation Agreement or joint venture ("JV") to engage in the oil and gas business in Ukraine. Dkt. 3, Ex. 1, Foundation Agreement.[1] The JV stated that it would "be governed in its activities by the Laws of Ukraine, this Foundation Agreement and [the]

---

[1] All of the agreements and amendments to which the court refers are contained within a single unpaginated exhibit. Therefore, the court includes only general citation to the exhibits.

Charter of the JV." *Id.* at Art. 1.2.  Additionally, it provided that "[a] legal successor of a Participant[2] of the Agreement shall directly assume the rights and obligations hereunder, including those related to settlements of disputes and disagreements with regard to Article XVIII hereof."[3]  *Id.* at Art. 13.2  Article XVIII governs dispute resolution and contains a fairly broad arbitration clause providing that "[a]ny disputes and disagreements, and controversies [arising] from or connected with this Agreement . . . shall be addressed [in] Arbitration" absent successful amicable negotiations.  *Id.* at Art. 18.2.

Effective September 14, 1995, the same parties entered into a Joint Activity Agreement ("JAA") for the exploration and operation of the Rudivsko-Chervonzavodsky Field.  *Id.*  The JAA contained a choice of law provision for Ukrainian law and a broad arbitration clause identical to the clause in the JV.  *Id.* at Arts. 1.7, 14.3.  The JAA was amended several times.  First, on October 15, 1996, the JAA was amended to add a section on the assignment of rights and legal succession.  *Id.* at Oct. 15 Amend., Art. XVII.  In relevant part, the amendment provides that "[i]f any of the Participants terminates as a result of liquidation or reorganization, its rights and obligations hereunder shall pass to the official legal successor subject to legal backing of the rights of the latter."  *Id.* at Art. 17.3.  The amendment also provided that any arbitration would be conducted by the Internation Arbitration Court at the Chamber of Commerce and Industry of Ukraine.  *Id.* at 20.5.

Next, on August 26, 1998, the JAA was amended to add a definition of Participant omitted from the original agreement.[4]  *Id.*  The definition of Participant read "the legal entities that initially

---

[2] The JV unhelpfully defines Participant as "Participant under this Agreements establishing the JV as holding certain participation interest."  Dkt. 3, Ex. 1, Foundation Agreement.

[3] Notably the section immediately proceeding specifies that third parties—presumably unlike successors in interest—may only be joined with prior consent of the Participants.  *Id.* at Art. 13.1.

[4] The JAA was also amended on May 12, 1998 adding nothing that related to the dispute in this case.  *Id.*

entered into this Agreement *or their legal successors* as well as any legal entities and individuals that will further join the Agreement." *Id.* (emphasis added). Like the JV, the JAA now distinguished between successors in interest and third parties. This amendment also provided more detail regarding the forum and rules for any arbitration under the JAA. *Id.* at Art. 21.

Disputes arose between the parties regarding the distribution of interest under the JAA. In September 2007, Carpatsky referred the dispute to the Arbitration Institute of the Stockholm Chamber of Commerce. According to Carpatsky—Ukrnafta fails to mention the arbitration in its pleadings—Ukrnafta participated voluntarily in the arbitration, including filing pleadings on the merits, until December 2008, when Ukrnafta for the first time objected to the tribunal's jurisdiction. The Tribunal conducted a hearing—in which Ukrnafta did not participate—on the jurisdictional objections on March 4, 2009 and has stated that it will issue a ruling by mid-April 2009.

On February 23, 2009, Ukrnafta filed suit in the 190th District Court of Harris County, Texas against Carpatsky, Taurex Resources PLC, Robert Bensh, and Kuwait Energy Company. Dkt. 1. In its original petition, Ukrnafta claims (1) negligent misrepresentation, (2) fraud, (3) misappropriation of trade secrets, (4) tortious interference with existing contract, and (5) unjust enrichment and seeks declaratory judgment, and a permanent injunction.

According to Ukrnafta, Carpatsky-Texas ceased to exist when it merged with the newly-formed Delaware corporation, Carpatsky Petroleum Corporation (hereinafter "Carpatsky Delaware"). Ukrnafta argues that the succession of interest without its prior knowledge and consent violates both Ukrainian law and the contracts. In its original petition, it contended that all amendments after the date of the merger are therefore void *ab initio*. Moreover, Ukrnafta argued that the trade secrets—consisting mainly of highly confidential geological data—it contributed to the JV have now been disseminated not only to Carpatsky Delaware, but also to third parties: Taurex Resources PLC,

Robert Bensh, and Kuwait Energy Company. It alleges that Carpatsky-Delaware sold its interest in the JV to Kuwait Energy. The pleadings allege that until recently Taurex was the parent of Carpatsky when it was sold to Kuwait Energy. It sought injunctive relief to prevent further dissemination of its trade secrets, and a declaratory judgment voiding the JAA. Additionally, Ukrnafta brought claims for monetary relief pursuant to its various tort claims.

On March 26, 2009, Carpatsky removed the action to this court based on the presence of a federal question. Although not apparent from the face of the complaint, Carpatsky contends that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*, gives federal courts jurisdiction over international arbitrations. Section 202 provides that any arbitration agreement falling under § 2 of the Federal Arbitration Act and involving an international party to that agreement is governed by the Convention. 9 U.S.C. § 202. Sections 203 and 205 authorize respectively federal question jurisdiction over and the right to remove state court cases based on these agreements. §§ 203, 205.

Ukrnafta has not filed a motion for remand. Instead, it reurges its request for preliminary injunction to protect its trade secrets. Dkt. 3. Additionally, it requests focused accelerated discovery on the co-defendants' access to the trade secrets in support of its motion for a preliminary injunction. Dkt. 4.

Carpatsky responds with a motion to stay pending arbitration. Dkt. 6. It contends that the question of whether the JAA was breached when Carpatsky Texas became Carpatsky Delaware is a question for the arbitrator, not this court. The court agrees.

## ANALYSIS

Section 3 of the Federal Arbitration Act provides in relevant part that

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration,

4

>   the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. To determine whether a dispute is "referable to arbitration," courts perform a two-step inquiry. *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). The first question is whether the parties agreed to arbitrate. *Id.*

### A. Did the Parties Agree to Arbitrate the Dispute?

The first question depends on "two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

#### 1. Is There a Valid Agreement?

The Supreme Court has instructed federal courts that under the first consideration they may only consider "issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S. Ct. 1801 (1967). The Fifth Circuit has held that under the *Prima Paint* severability doctrine "where parties have formed an agreement which contains an arbitration clause, any attempt to dissolve that agreement by having the entire agreement declared voidable or void is for the arbitrator." *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 218 (5th Cir. 2003). "Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Id.* In no event should the court delve "into the merits of the underlying dispute." *Primerica*, 304 F.3d at 471. "[T]he merits of the underlying dispute are for the arbitrator to consider, not for this Court or the district court." *Snap-On Tools Corp. v. Mason*, 18 F.3d 1261, 1267 (5th Cir. 1994).

In the instant case, none of the parties disputes that the JV and the JAA were valid at the time the original parties entered into them. And, both contracts contain an arbitration clause. Therefore, the parties had a valid agreement to arbitrate. The question of whether the transfer of interest to a successor in interest was a breach of the contract or a violation of Ukrainian law goes to the merits of the breach of contract claim to be determined by the arbitrator.

Ukrnafta argues, however, that Carpatsky Delaware is not a signatory to the JAA and may not enforce the arbitration provision against Ukrnafta. While "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248 (1989), "a nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004) (quoting *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)). Other circuits have recognized that in a successor in interest situation or even a parent subsidiary relationship, a nonsignatory may be required to arbitrate based on the relationship of the parties when the claims are founded in and intertwined with the underlying contract obligation. *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993) (holding that a nonsignatory was bound to arbitrate based on the "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties"); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir.1988); *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., Inc.*, 741 F.2d 342 (11th Cir.1984); *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir.1981). Here, although Ukrnafta has recast its claims as torts, the alleged dissemination of trade secrets and fraud allegations are based on the contractual relationship between Ukrnafta and Carpatsky. Therefore, Ukrnafta is required to arbitrate its claim.

Ukrnafta also argues that it should be allowed to pursue its claims against the other defendants because they are unrelated third parties. However, as noted above, each defendant is either a predessor or successor in interest to Carpatsky Texas[5] and for the same reasons discussed above Ukrnafta must pursue its claims against them in arbitration.

2.  Is the Dispute Within the Scope of the Arbitration Provision?

"Once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426 (5th Cir. 2004). Courts "resolve all doubts concerning the scope of coverage of an arbitration clause in favor of arbitration." *Neal v. Hardee's Food Sys. Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). "Where . . . an arbitration provision purports to cover all disputes related to or connected with the agreement, [the Fifth Circuit has] held that the provision is 'not limited to claims that literally arise under the contract, but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.'" *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (quoting *Pennzoil Exploration & Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)) (internal quotations omitted).

Here the disputes center around the transfer of title from Carpatsky Texas to Carpatsky Delaware and the consequences of that transfer. Therefore "[s]tated in terms of the applicable caselaw, the question is whether [the court] can say 'with positive assurance' that the arbitration provision in the [JAA] is not susceptible of an interpretation that would cover those claims." *Id.* at 392. The court finds that it cannot. Accordingly, the claims arising from the transfer of Carpatsky

---

[5] In its motion for preliminary injunction, Ukrnafta explains the relationship of the defendants.

7

Texas's interest and the alleged dissemination of the related trade secrets falls within the scope of the arbitration clause.

        **B.**    **Legal Constraints External to the Agreement**

If the court determines that the parties agreed to arbitrate the issue at hand, then it moves to the second inquiry which asks "whether any federal statute or policy renders the claims nonarbitrable." *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992). "Just as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627, 105 S. Ct. 3346 (1985). Therefore, absent some showing that Congress expressly exempted Ukrnafta's claims from arbitration, the presumption under the Federal Arbitration Act is that arbitration must be compelled. *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996).

"[T]he burden is on [Ukrnafta] to show that Congress intended to preclude a waiver of the judicial forum" for its negligence claim. *Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20, 26, 111 S. Ct. 1647 (1991). And, Ukrnafta has presented the court with no evidence that Congress intended any different treatment of its claims. In the absence of a manifestation of Congressional intent to the contrary, there are no external legal constraints to compelling arbitration on all of Ukrnafta's claims. Accordingly, Ukrnafta's claims are "referable to arbitration" under § 3 of the Federal Arbitration Act and must be stayed. Therefore, Ukrnafta's motion for preliminary injunction and motion for discovery are denied.

## CONCLUSION

Pending before the court are plaintiff's motion for preliminary injunction, and emergency motion for expedited discovery. Dkts. 3, 4. Also pending before the court is defendant's emergency motion for stay pending decision by arbitration tribunal. Dkt. 6. Upon consideration of the motions, the responses, and the applicable law, the defendant's motion to stay is GRANTED and this case is STAYED pending arbitration. Accordingly, plaintiff's motion are DENIED.

It is so ORDERED.

Signed at Houston, Texas on April 7, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY