## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **OJSC UKRNAFTA** | § | |
| | § | |
| **Plaintiff,** | § | |
| **VS.** | § | |
| | § | |
| **CARPATSKY PETROLEUM** | § | **Civil Action No. 4:09-CV-891** |
| **CORPORATION, a Delaware** | § | |
| **Corporation; TAUREX RESOURCES** | § | |
| **PLC; ROBERT BENSCH and** | § | |
| **KUWAIT ENERGY COMPANY, K.S.C.** | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANT CARPATSKY PETROLEUM CORPORATION'S MOTION TO CONFIRM ARBITRATION AWARD AND DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE

---

OF COUNSEL:

ANDREWS KURTH LLP

KELLY SANDILL
Texas Bar No. 24033094
S.D.O.T. No. 38594
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-4181
Fax: (713) 238-7304
ksandill@andrewskurth.com

STUART C. HOLLIMON
Texas Bar No. 09878500
S.D.O.T. No. 139075
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-4033
Fax: (713) 238-7212
stuarthollimon@andrewskurth.com

ATTORNEY-IN-CHARGE FOR
DEFENDANT CARPATSKY
PETROLEUM CORPORATION

HOU:3067870.17

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ............................................................................iii

I.  SUMMARY OF RELIEF SOUGHT ............................................................ 1

II.  THE NATURE OF THIS LAWSUIT ........................................................ 2

III.  THE STOCKHOLM ARBITRATION ..................................................... 3

IV.  ARGUMENT AND AUTHORITIES.......................................................... 9

   A.  This Court Has Jurisdiction To Confirm The Final Award Pursuant To The Convention ................................................................................................ 9

   B.  Confirmation Is *Mandatory*. ....................................................................... 10

     1.  A Foreign Award *"Shall"* Be Confirmed Absent Proof Of One of Convention's Exclusive Grounds For Non-Enforcement......................... 10

     2.  There Are No Grounds for Non-Enforcement ........................................ 11

   C.  Ukrnafta's Claims Should Be Dismissed On Grounds of *Res Judicata* and Collateral Estoppel ................................................................................. 15

V.  PRAYER.................................................................................................... 17

HOU:3067870.17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alford v. Dean Witter Reynolds, Inc.,*
    975 F.2d 1161 (5th Cir. 1992)..................................................................... 17

*Autotrol v. J-F Equip. Co.,*
    820 F. Supp. 293 (N.D. Tex. 1993) ............................................................. 15

*Beatus v. Gebbia,*
    4 F. Supp. 2d 256 (S.D.N.Y. 1998) ............................................................. 15

*Biobased Systems, L.L.C. v. Biobased of South Texas, LLC,*
    No. H-06-2149, 2007 WL 1080114 (S.D. Tex. Apr. 9, 2007)...................... 17

*Citgo Petroleum Corp. v. M/T Bow Fighter,*
    No. Civ. A. H-07-2950, 2009 WL 960080 (S.D. Tex. Apr. 7, 2009) ........... 13

*Imperial Ethiopian Gov't. v. Baruch-Foster Corp.,*
    535 F.2d 334 (5th Cir. 1976)................................................................. 9, 11

*Jacobson v. Fireman's Fund Ins. Co.,*
    111 F.3d 261 (2d Cir. 1997)........................................................................ 15

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas*
    *Bumi Negara,* 364 F.3d 274 (5th Cir. 2004) ................................. 10, 11, 12, 13

*Manion v. Nagin,*
    394 F.3d 1062 (8th Cir. 2005)..................................................................... 15

*New Orleans S. S. Ass'n v. General Longshore Wkrs.,*
    626 F.2d 455 (5th Cir. 1980)....................................................................... 17

*Pike v. Freeman,*
    266 F.3d 78 (2d Cir. 2001).......................................................................... 15

*Scherk v. Alberto-Culver Co.,*
    417 U.S. 506 (1974) ...................................................................................... 9

HOU:3067870.17

*Trans Chemical Ltd. v. China Nat'l Machinery Import and Export Corp.,*
    161 F.3d 314 (5th Cir. 1998)........................................................... 11

*Tremont LLC v. Halliburton Energy Services, Inc.,*
    696 F. Supp. 2d 823-24 (S.D. Tex. 2010)........................................... 15, 16, 17

*Universal Am. Barge Corp. v. J-Chem, Inc.,*
    946 F.2d 1131 (5th Cir. 1991).................................................. 15, 16

## FEDERAL STATUTES

9 U.S.C. §§ 1-2 ..................................................................... 13

9 U.S.C. §§ 201, 203................................................................... 9

9 U.S.C. § 207 (emphasis added) ........................................................ 9, 11, 12

## INTERNATIONAL CONVENTIONS

United Nations Convention on the Recognition and Enforcement of
    Foreign Arbitration Awards ................................................ *passim*

iv

Defendant Carpatsky Petroleum Corporation ("Carpatsky") files this Motion to Confirm Arbitration Award and Dismiss Plaintiff's Claims with Prejudice and respectfully would show as follows.[1]

## I.     SUMMARY OF RELIEF SOUGHT

By order dated April 7, 2009, the Court stayed this action in favor of an arbitration pending between the parties in Stockholm, Sweden.[2] The Stockholm arbitral tribunal (the "Tribunal") has now issued a final award in favor of Carpatsky (the "Final Award"), which rejects all theories asserted by Plaintiff OJC Ukrnafta ("Ukrnafta") in this case.[3]

Carpatsky therefore moves this Court to (i) lift its stay, (ii) render a judgment confirming the Final Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitration Awards (the "Convention"), and (iii) dismiss Ukrnafta's claims against Carpatsky with prejudice.

---

[1]     In accordance with Article IV Section 1 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, attached to this motion are certified copies of (i) the Arbitral Tribunal's Final Award (Exhibit 1), (ii) the parties' agreement to arbitrate (Exhibit 2), (iii) the Tribunal's Decision on Jurisdiction (Exhibit 3) and (iv) the Tribunal's Answer to Ukrnafta's post-award request for reconsideration (Exhibit 4).  Also included for the Court's convenience is a copy of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Exhibit 5).

[2]     Order of April 7, 2009 (Dkt. # 11).

[3]     Ex. 1.

## II.   THE NATURE OF THIS LAWSUIT

The claims asserted by Ukrnafta in this case concern the validity of a Foundation Agreement that created a joint venture between the parties effective August 18, 1994 (the "JV") and certain amendments to a separate Joint Activity Agreement between the parties dated September 14, 1995 ("JAA").   The JV relates to the parties' joint development of the Bytkiv-Babchynske oil field in Ukraine (the "BB Field").   The JAA governs the relations between Carpatsky and Ukrnafta in the Rudivsky-Chervonozavodsky gas condensate field in Ukraine (the "RC Field").

All of Ukrnafta's claims arise from the fact that the JV and the JAA were executed by Carpatsky Petroleum Corporation, a Texas corporation ("Carpatsky-Texas"), which in July 1996 was merged into a Delaware corporate affiliate known as Carpatsky Petroleum Corporation ("Carpatsky-Delaware").   Because Carpatsky-Texas did not obtain Ukrnafta's consent prior to merging into its corporate affiliate, Ukrnafta contends that all post-merger amendments to the JAA, including the incorporation of the parties' arbitration clause, are void and that Carpatsky-Delaware is not a proper party to the original JAA or the JV.

Ukrnafta further alleges that subsequent to the 1996 merger, its actions pursuant to the JAA and JV resulted in the unwitting delivery of Ukrnafta's trade secrets to Carpatsky-Delaware, and that as a result of the purportedly

2

unauthorized merger, Carpatsky-Delaware had no lawful right to receive or possess that information.   Ukrnafta seeks to enjoin Carpatsky from using or disseminating the alleged trade secret information.

For its part, Carpatsky contends that as the legal successor to Carpatsky-Texas, Carpatsky-Delaware automatically assumed all rights and obligations under the original JAA and the JV and is therefore a rightful party to those agreements.   Carpatsky further contends that the provisions of the Ukrainian Civil Code in effect at the time of the 1996 merger did not require Carpatsky-Texas to notify Ukrnafta of the merger or obtain Ukrnafta's consent to the merger, and that,  in any event, notice of the merger and of CPC-Delaware's existence was in fact given by Carpatsky.   Furthermore, Carpatsky asserts that even if notice was required and not given, Ukrnafta waived its claim by continuing to execute amendments to the JAA and operate under the JV and the JAA long after it became aware of the merger.

## III.   THE STOCKHOLM ARBITRATION

When this lawsuit was filed on February 23, 2009, Ukrnafta's arguments were already the subject of a pending arbitration that had been commenced by Carpatsky a year and a half earlier in Stockholm, Sweden, to resolve certain disputes that had arisen between the parties concerning the JAA.    Those

disputes concerned the amount of Carpatsky ownership interest in the RC Field and whether Ukrnafta had breached the JAA in certain specific respects.

In this connection, and as mentioned above, the JAA provides for the joint exploration and development by Carpatsky and Ukrnafta of the RC Field in Ukraine.  To that end, the JAA provides that the parties will pool their money, material, labor resources, technological and economic potential in order to achieve the objectives of the joint activity, and that each of the parties will hold a 50% interest in the joint activity.  The agreement further provides, however, that if either party is unable to fully fund its 50% share of the investment, then the other party has the right to cover the deficit, and the investment proportions of the parties will be adjusted for a period of time.

The initial investments by Carpatsky and Ukrnafta were made on a 50-50 basis as contemplated by the JAA, but for a period of time thereafter, Carpatsky was unable to fully fund its share of the investment.  Ukrnafta made up the difference, and the parties' interests were adjusted accordingly.  Subsequently, disputes arose between the parties concerning whether (i) Carpatsky had the right under the JAA to restore its interest back to 50%, (ii) Ukrnafta had undertaken operations under the JAA without obtaining necessary approvals, and (iii) Ukrnafta had improperly denied Carpatsky access to information about operations conducted under the JAA.

HOU:3067870.17

The JAA provides that disputes arising under its terms shall be submitted to arbitration.[4]  Accordingly, by a Request for Arbitration dated September 28, 2007, Carpatsky referred the parties' dispute to the Arbitration Institute of the Stockholm Chamber of Commerce.[5]   The Tribunal was constituted according to the procedures outlined in the JAA.  Ukrnafta voluntarily participated in the arbitration without objection until December 19, 2008, when it objected to the jurisdiction of the Tribunal for the first time.[6]

The basis for Ukrnafta's objection to the Tribunal's jurisdiction was the same as the foundation for its claims in this action — that Ukrnafta was not informed of, and did not consent to, the merger of the original party to the JAA, Carpatsky-Texas, into its corporate affiliate, Carpatsky-Delaware.[7]  As part of its challenge to the Tribunal's jurisdiction, Ukrnafta further alleged that the fact of

---

[4]    The JAA, as originally executed, contained a dispute resolution provision which provided for disputes to be submitted to arbitration.  The parties later entered into several amendments to the JAA, some of which involved revisions to the dispute resolution provision.  The dispute resolution provision was last amended on August 26, 1998, and now provides, in relevant part, for the submission of disputes to arbitration under the auspices of the Arbitration Institute of the Stockholm Chamber of Commerce and in accordance with the UNCITRAL Rules of Arbitration.  The provision further states that the arbitration shall take place in Stockholm, Sweden, and shall be governed by the substantive laws of Ukraine.  Ex. 2 at § 21.

[5]    Ex. 1 at ¶ 55.  In its Answer dated November 28, 2007, Ukrnafta confirmed the applicability of the arbitration provision and identified certain procedural modifications that had been made by agreement of the parties' representatives.  Ex. 3 at ¶13.

[6]    Ex. 1 at ¶ 57.

[7]    *Id*. at ¶¶ 16, 57.

HOU:3067870.17

the merger was concealed from it in various ways by Carpatsky and the other parties named as defendants in this lawsuit.[8]

Based on these allegations, Ukrnafta argued to the Tribunal that all post-merger amendments to the JAA, including the amendment that incorporated the current arbitration provision, are void, and that it has no contract – and no arbitration agreement – with Carpatsky-Delaware.[9]   In addition to its jurisdictional argument, Ukrnafta asserted these same arguments as defenses to the merits of Carpatsky's claims.[10]

The Tribunal conducted a hearing on Ukrnafta's jurisdictional objection on March 4, 2009.[11]   Ukrnafta did not participate in the hearing,[12] and instead filed this lawsuit in state court in Harris County, Texas.[13]   Carpatsky removed the case to this Court,[14] and filed a motion to stay the case in favor of the pending Stockholm arbitration.[15]   On April 7, 2009, this Court issued an order granting

---

[8]    *Id.* at ¶ 59.

[9]    *Id.*.

[10]   *Id.* at ¶¶ 156-161.

[11]   *Id.* at ¶ 81.

[12]   *Id.*

[13]   Plf.'s Orig. Complaint (Dkt. # 1, Ex. D).

[14]   Notice of Removal (Dkt. #1).

[15]   Def.'s Emergency Motion to Stay (Dkt. # 6).

6

Carpatsky's motion and staying the litigation pending a decision from the Tribunal.[16]

On April 22, 2009, the Tribunal issued a decision rejecting Ukrnafta's jurisdictional challenge.[17]  The arbitration proceeded and Ukrnafta participated fully on the merits, presenting motions, filing briefs, and presenting live testimony from expert and fact witnesses.

On September 24, 2010, the Tribunal issued its Final Award, which directly addresses the merits of all of Ukrnafta's arguments.[18]  In this connection the Final Award:

- holds the JAA and subsequent amendments to be valid,[19]
- finds that that Ukrnafta breached the JAA;[20]
- declares the JAA terminated by reason of Ukrnafta's breach;[21]
- awards damages to Carpatsky in the amount of $145.7 million, plus post-award interest;[22] and
- awards Carpatsky recovery of $1.2 million in attorneys fees and certain costs of the arbitration.[23]

---

[16]    Order of April 7, 2009 (Dkt. # 11).

[17]    Ex. 3; *see also* Ex. 1 at ¶ 154.

[18]    Ex. 1 at ¶¶ 155-212.

[19]    *Id.* at ¶¶ 203, 212.

[20]    *Id.* at ¶ 361.

[21]    *Id.*

[22]    *Id.*

[23]    *Id.*

HOU:3067870.17

The arguments that Ukrnafta advances in this litigation — *i.e.* that the JAA and its amendments are invalid —are fully adjudicated in the Final Award.   In fact, the Tribunal devotes *twenty pages* of its decision to Ukrnafta's arguments based on the contracts' alleged invalidity.   That discussion culminates in the Tribunal's **complete rejection** of Ukrnafta's arguments, as follows:

> In conclusion, the Arbitral Tribunal finds that, governed by the law of Delaware, CPC-TX was merged into CPC-DE and ceased to exist on 22 July 1996.   With that merger CPC-DE succeeded into all rights and obligations of CPC-TX and thus both became a party to the initial JAA and acquired the legal capacity to enter into the Restated JAA as well as other addenda concluded with [Ukrnafta].   Therefore, also due to the automatic succession of rights, no issues of assignment arise in this context.   Further, there was no contractual or statutory requirement for CPC to notify [Ukrnafta] of this reorganisation.   In any event, it appears very likely that Respondent was informed about this merger at the time.   In light of the evidence before it, the Arbitral Tribunal cannot agree with [Ukrnafta's] assertion that it was misled by [Carpatsky] regarding these changes, but, in any event, no relevant conclusion depends on a finding of misleading.   Consequently, **[Carpatsky] validly concluded the Restated JAA as well as the subsequent addenda which are not null and void.**[24]

Following the Tribunal's issuance of the Final Award in Carpatsky's favor, Ukrnafta moved for reconsideration.   The Tribunal denied Ukrnafta's request for reconsideration in a decision issued October 22, 2010.[25]   Accordingly, the Final Award is now fully binding and enforceable on the parties.

---

[24]   Ex. 1 at ¶ 203.

[25]   Ex. 4.

## IV.    ARGUMENT AND AUTHORITIES

**A.    This Court Has Jurisdiction To Confirm The Final Award Pursuant To The Convention.**

The Convention, to which the United States, Sweden, and the Ukraine are all parties, provides that each contracting state shall recognize agreements under which parties undertake to submit disputes to arbitration.[26]  As stated by the U.S. Court of Appeals for the Fifth Circuit, "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[27]  Thus, the United States' implementing legislation for the Convention provides for enforcement of arbitral awards in the United States district courts[28] and expressly authorizes any party to the arbitration to apply to a United States district court for "an order confirming the award as against any other party to the arbitration."[29]

---

[26]    Ex. 5, Art. V.

[27]    *Imperial Ethiopian Gov't. v. Baruch-Foster Corp.*, 535 F.2d 334, 335 (5th Cir. 1976) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974)).

[28]    9 U.S.C. §§ 201, 203.

[29]    *Id.* § 207.

9

## B.   Confirmation Is *Mandatory*.

The Convention provides a carefully structured framework for the review and enforcement of international arbitral awards.[30]  Only a court in the country that issued the award has primary jurisdiction such that it may annul the award. *Id.*  Courts in other countries have secondary jurisdiction limited to deciding whether the award may be enforced in that country through confirmation.[31]

### 1.   A Foreign Award *"Shall"* Be Confirmed Absent Proof Of One of Convention's Exclusive Grounds For Non-Enforcement.

With respect to enforcement of foreign arbitration awards in secondary jurisdictions, the Convention states that, "Each Contracting State **shall** recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles."[32]  The Convention further specifies that, "There **shall not** be imposed substantially more onerous conditions . . . on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards."[33]

---

[30]   *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004).

[31]   *Id.*

[32]   Ex. 5, Art. III (emphasis added).

[33]   *Id.* (emphasis added).

10

Consistent with the Convention's mandates, Title 9, Section 203 of the United States Code directs that a district court **"shall"** confirm an award pursuant to the Convention unless the court "finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified by said Convention."[34] This strong federal policy in favor of recognizing and enforcing foreign arbitration awards has been repeatedly implemented by U.S. courts, including the Fifth Circuit.[35]

## 2. There Are No Grounds for Non-Enforcement.

Article Five of the Convention sets forth the <u>exclusive</u> defenses to enforcement of an award.  A party seeking to prevent enforcement of an arbitral award must furnish competent proof that:

- the parties to the arbitration agreement were under some incapacity, or the agreement is not valid under the law;

- the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;

- the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration or it contains decisions on matters beyond the scope of the submission to arbitration;

---

[34]  9 U.S.C. § 207 (emphasis added).

[35]  *See e.g., Karaha Bodas*, 364 F.3d 274, 310 (5th Cir. 2004) (affirming decision by district court of Southern District of Texas confirming foreign arbitration award under the Convention); *Trans Chemical Ltd. v. China Nat'l Machinery Import and Export Corp.*, 161 F. 3d. 314, 319 (5th Cir. 1998) (per curiam) (same); *Imperial Ethiopian Gov't. v. Baruch-Foster Corp.*, 535 F.2d 334, 337 (5th Cir. 1976) (same).

11

- the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties;

- the award has not yet become binding on the parties or has been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made;

- the subject matter of the parties' difference is not capable of settlement by arbitration under the law; or

- recognition and enforcement of the award would be contrary to public policy.[36]

Absent proof of one of the foregoing conditions, a foreign award ***"shall"*** be confirmed.[37]

The defenses specified in the Convention are "construed narrowly" to give effect to the Convention's goals of encouraging the timely and efficient enforcement of awards.[38] The defenses do not permit a district court to address the merits of the dispute submitted to arbitration.[39] Accordingly, "[a]bsent extraordinary circumstances, a confirming court is not to reconsider the arbitrator's findings."[40] Instead, unless there is a convincing showing that one of the narrowly construed exceptions applies to the arbitration award, the award

---

[36]    Ex. 5, Art. V.

[37]    9 U.S.C. § 207 (emphasis added).

[38]    *Kahara Bodas*, 364 F.3d at 288.

[39]    *Id.*

[40]    *Id.* (internal quotations omitted).

HOU:3067870.17

must be confirmed.[41]   Further, confirmation of an award may not be refused

merely because of a mistake in law or fact.[42]

Here, there is no viable defense to enforcement of the Tribunal's Final

Award.   Ukrnafta and Carpatsky were not under any incapacity when they

agreed to arbitrate, and this Court, citing numerous federal authorities, has

already determined that the enforceability of the parties' arbitration agreement is

an issue for the arbitrators.[43]   The Tribunal concluded both that (i) Ukrnafta

waived any claim of non-arbitrability by participating in the arbitration for many

months without challenging jurisdiction,[44] and (ii) in any event, the JAA and its

arbitration provisions are valid and enforceable.[45]

Ukrnafta was not deprived of proper notice of the arbitration or otherwise

estopped from presenting its case.   Quite the contrary, Ukrnafta participated

---

[41]   *Id.*   Similarly, Section 9 of the Federal Arbitration Act, which applies generally to all arbitration agreements arising from transactions involving foreign or interstate commerce, *see* 9 U.S.C. §§ 1-2, mandates that the district court shall enter judgment in accordance with a foreign award, such that the confirmed award will be treated as any other judgment of the court. Where not in conflict, this Court has recognized that the Convention and the FAA can both apply to an arbitration award falling within their respective purviews.   *See Citgo Petroleum Corp. v. M/T Bow Fighter*, NO. CIV. A. H-07-2950, 2009 WL 960080 at *3 (S.D. Tex. Apr. 7, 2009).

[42]   *Karaha Bodas*, 364 F.3d at 288.

[43]   *See* Order of April 7, 2009 (Docket # 11).

[44]   Ex. 1 at 154. Ex. 1 at ¶¶ 55-141.

[45]   Ex. 1 at 203, 212. Ex. 2 at ¶ 21.

13

throughout the arbitration, making motions, filing briefs, submitting expert reports, and presenting oral arguments and evidence in support of its position.[46]

There can be no legitimate assertion that the award deals with issues not contemplated by the submission to arbitration or that the composition of the Tribunal or the arbitral procedure was not in accordance with the agreement of the parties. The parties agreed to submit <u>any</u> disputes that could not be resolved between them to arbitration.[47]   The issues decided by the Tribunal in the Final Award were exactly those presented by the parties.[48]   The Tribunal was formed according to agreed-upon procedures,[49] and the arbitration was conducted according to the rules of the Stockholm Chamber of Commerce, as agreed by the parties.[50]

Finally, there is no basis to contend that the parties' contract dispute is incapable of settlement by arbitration or that recognition and enforcement of the

---

[46]   Ex. 1 at ¶¶ 55-141.

[47]   Ex. 2 at ¶ 21.

[48]   Ex. 1 at ¶¶ 142-152.

[49]   Ex. 2 at ¶ 21.

[50]   The arbitration agreement provided for a combination of the UNCITRAL and  SCC Rules. However, in its Answer, Ukrnafta confirmed the parties' separate agreement that the arbitration proceed in English (though all submissions were also to be made in Ukrainian), and that it be governed by the SCC Rules (including the Schedule of Costs). Ex. 3 at ¶ 13.

award would be contrary to public policy.  In fact, this Court in its Order of April 7, 2009, rejected such arguments.[51]

With the Tribunal's rejection of Ukrnafta's request for reconsideration, the Tribunal's Final Award has become fully binding on the parties.[52] Accordingly, Carpatsky respectfully requests that this Court confirm the Tribunal's Final Award.

## C.  Ukrnafta's Claims Should Be Dismissed On Grounds of *Res Judicata* and Collateral Estoppel.

Dismissal of Ukrnafta's claims is appropriate because the fundamental arguments underlying all of its causes of action have been rejected by the Tribunal.  The fact that Ukrnafta presented those arguments to the Tribunal in the form of defenses rather than affirmative claims for relief makes no difference, because the Tribunal's decision carries both claim preclusive and issue preclusive effect.[53]

---

[51]   *See* Order of April 7, 2009 (Docket # 11) at p. 8.

[52]   Ex. 4.

[53]   *See Tremont LLC v. Halliburton Energy Services, Inc.*, 696 F. Supp. 2d 823-24 (S.D. Tex. 2010) (granting summary judgment in an environmental remediation case, based upon the issue preclusive effect of a prior arbitration decision dealing with the same arguments, even though arbitration pertained to a different remediation site than was at issue in federal court litigation); *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136 (5th Cir. 1991) (holding that collateral estoppel can apply based on a prior determination in an arbitration proceeding, particularly where there is no indication that procedures available in federal court would lead to a different result); *see also e.g., Manion v. Nagin*, 394 F.3d 1062, 1066-67 (8th Cir. 2005) (issue preclusion barred litigation of issues resolved in prior arbitration); *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267-68 (2d Cir. 1997) ("We therefore hold . . . that res judicata and collateral estoppel apply to issues resolved by arbitration 'where there has been a final

An arbitration award is preclusive of litigation over both (i) the same issues, even if raised in actions with differing subject matters (collateral estoppel),[54] and (ii) different issues between the same parties that could have been raised in the prior arbitration (*res judicata*).[55] This is particularly true where the arbitration bears the hallmarks of a traditional adjudicatory proceeding.[56]

Here, the arbitration proceedings involved extensive motion practice and four days of live testimony from fifteen expert and fact witnesses that resulted in a 117-page written opinion detailing the reasons for the Tribunal's decision.[57] Ukrnafta had its opportunity to present its claims, and in fact did present them as "defenses," and all of them were rejected on the merits by the Tribunal. Accordingly, the doctrines of *res judicata* and collateral estoppel, as applied to the

---

determination on the merits, notwithstanding a lack of confirmation of the award.' "); *Beatus v. Gebbia*, 4 F. Supp. 2d 256, 260 (S.D.N.Y. 1998) ("Collateral estoppel can be applied to a confirmed arbitration award entered as a final judgment."); *Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001) ("It is well settled that [claim preclusion] serves to bar certain claims in federal court based on the binding effect of past determinations in arbitral proceedings."); *Autotrol v. J-F Equip. Co.*, 820 F. Supp. 293, 297 (N.D. Tex. 1993) ("Numerous courts have recognized that arbitration awards can have preclusive effect in subsequent litigation.").

[54]    *Tremont*, 696 F. Supp. 2d at 824.

[55]    *Universal Am. Barge Corp.*, 946 F.2d at 1136.

[56]    *Id.*

[57]    Ex. 1 at ¶ 112.

Final Award, bar any attempt by Ukrnafta to litigate its claims asserted in this case.[58]

## V.    PRAYER

For all the foregoing reasons, Defendant Carpatsky Petroleum Corporation prays that the stay of this lawsuit be lifted, that its motion to confirm the Stockholm Tribunal's Final Award be granted, and that all claims of Plaintiff OJSC Ukrnafta against Carpatsky be dismissed with prejudice.

---

[58]    *See Tremont*, 696 F. Supp. at 824; *Universal Am. Barge Corp.*, 946 F. 2d at 1136. Alternatively, Carpatsky contends that the preclusive effect of the Tribunal's Award is itself an arbitrable issue under the parties' broad agreement to arbitrate all disputes between them. *See New Orleans S. S. Ass'n v. General Longshore Wkrs.*, 626 F.2d 455, 468 (5th Cir. 1980); *Biobased Systems, L.L.C. v. Biobased of South Texas, LLC*, No. H-06-2149, 2007 WL 1080114 at *1 (S.D. Tex. Apr. 9, 2007). In that event, dismissal of this case is still the appropriate action, because all of Ukrnafta's claims are subject to arbitration. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1163 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration").

HOU:3067870.17

Respectfully submitted,

OF COUNSEL:

ANDREWS KURTH LLP

Kelly Sandill
Texas Bar No. 24033094
S.D.O.T. No. 38594
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-4181
Fax: (713) 238-7304
ksandill@andrewskurth.com

/s/Stuart C. Hollimon
Stuart C. Hollimon
Texas Bar No. 09878500
S.D.O.T. No. 139075
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-4033
Fax: (713) 238-7212
stuarthollimon@andrewskurth.com

ATTORNEY-IN-CHARGE FOR
DEFENDANT CARPATSKY
PETROLEUM CORPORATION

18

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March, 2011, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

R. Paul Yetter
Shawn M. Bates
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010


_/s/Stuart C. Hollimon_
Stuart C. Hollimon

HOU:3067870.17