UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OJSC UKRNAFTA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-891 |
| | § | |
| CARPATSKY PETROLEUM CORP., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the court is defendant Carpatsky Petroleum Corporation's ("Carpatsky") motion to confirm the arbitration award issued in Sweden and to dismiss plaintiff OJSC Ukrnafta's ("Ukrnafta") claims in this case with prejudice. Dkt. 21. After a review of the motion, the response, the supplemental pleadings, the relevant exhibits, and the law, the court is of the opinion that Carpatsky's motion should be DENIED WITHOUT PREJUDICE and that this matter should be STAYED pending the ongoing annulment proceedings in Sweden.

## BACKGROUND

This case involves two agreements—a joint venture agreement and a joint activity agreement—both originally executed by the plaintiff Ukrnafta and a predecessor-in-interest to defendant Carpatsky (hereinafter "Carpatsky Texas"). Effective August 18, 1994, Ukrnafta and Carpatsky Texas executed a Foundation Agreement or joint venture ("JV") to develop the Bytkiv-Babchynske oil field in Ukraine. Dkt. 3-3 at 44-68. The JV stated that it would "be governed in its activities by the Laws of Ukraine, this Foundation Agreement and [the] Charter of the JV." *Id.* at 45 (Clause 1.2). Article XVIII governs dispute resolution and contains a fairly broad arbitration clause providing that "[a]ny disputes and disagreements, and controversies [arising] from

or connected with this Agreement . . . shall be addressed [in] Arbitration" absent successful amicable negotiations. *Id.* at 56 (Clause 18.2).

On September 14, 1995, the same parties entered into a Joint Activity Agreement ("JAA") for the exploration and operation of the Rudivsko-Chervonzavodsky Field in Ukraine. Dkt. 3-4 at 18-28. The JAA contained a choice of law provision for Ukrainian law and a broad arbitration clause identical to the arbitration clause in the JV. *Id.* at 19, 27 (Clauses 1.7, 14.3). The JAA was amended several times. For purposes of the present motion, the only relevant amendment occurred on August 26, 1998, when the JAA was amended to provide for arbitration of all disputes arising under the JAA in Stockholm, Sweden before the Arbitration Institute of the Stockholm Chamber of Commerce and pursuant to UNCITRAL arbitration rules. *Id*. at 40 (Clauses 20.4 and 20.5).

Disputes arose between the parties regarding the distribution of interest under the JAA. In September 2007, Carpatsky referred the dispute to the Arbitration Institute of the Stockholm Chamber of Commerce, and expressly invoked the arbitration clause set forth in the 1998 document, initiating arbitration in Stockholm under the UNCITRAL arbitration rules. Dkt. 22.

In response, Ukrnafta filed suit on February 23, 2009 in the 190th District Court of Harris County, Texas against Carpatsky, Taurex Resources PLC, Robert Bensh, and Kuwait Energy Company. Dkt. 1-7. In its original petition, Ukrnafta asserted claims for (1) negligent misrepresentation, (2) fraud, (3) misappropriation of trade secrets, (4) tortious interference with existing contract, and (5) unjust enrichment and sought a declaratory judgment, and a permanent injunction. *Id*. According to Ukrnafta, Carpatsky's predecessor in interest, Carpatsky-Texas, ceased to exist in July 2006 when it merged with the newly-formed Delaware corporation (and current defendant), Carpatsky Petroleum Corporation. Ukrnafta argues that the succession of interest without its prior knowledge and consent violates both Ukranian law and the contracts. Ukrnafta

2

contends that all amendments to the JAA after the date of the Carptasky entities' merger are therefore void *ab initio*, making the arbitration proceedings in Stockholm, rather than in Kiev as originally agreed by the parties, improper. *Id*. Ukrnafta seeks injunctive relief to prevent further dissemination of its trade secrets, and a declaratory judgment voiding the JAA. Additionally, Ukrnafta brought claims for monetary relief pursuant to its various tort claims. *Id*.

Carpatsky removed the case to federal court on March 26, 2009. Dkt. 1. On March 30, 2009, Ukrnafta filed its Motion for Preliminary Injunction requesting that Carpatsky be enjoined from further disseminating trade secret documents that it had obtained from Ukrnafta. Dkt. 3. Carpatsky then moved to stay the district court proceedings pending conclusion of the Stockholm arbitration. Dkt. 6. On April 7, 2009, this court granted Carpatsky's motion to stay and denied Ukrnafta's motion for preliminary injunction. Dkt. 11.

The arbitration proceeding in Stockholm, which began before this case was filed, continued after this case was stayed. Ukrnafta challenged the jurisdiction of the Arbitral Tribunal making the same arguments summarized above, but on April 22, 2009, the Tribunal determined that it had jurisdiction. Dkt. 22. Ukrnafta thereafter participated in the Swedish arbitration while expressly reserving its position on jurisdiction. Dkt. 22.[1]

The Swedish arbitration concluded on September 24, 2010 with an award adverse to Ukrnafta. Dkt. 22-4. Specifically, the tribunal held that the JAA and subsequent amendments were valid, that Ukrnafta breached the JAA, and that the JAA was terminated by reason of Ukrnafta's

---

[1] Urknafta also filed suit in the Commercial Court of Kiev, Ukraine, which held that the JV and JAA were void. Dkt. 22-12. This ruling was upheld by the High Commercial Court of Ukraine. Dkt. 22-14. The Ukraine court proceedings are not relevant to the pending motion except, perhaps, to highlight the importance of proceeding with caution where a dispute has found its way into multiple judicial fora.

breach. The tribunal awarded damages to Carpatsky in the amount of $145.7 million, plus post-award interest and $1.2 million in attorneys' fees and costs of the arbitration. Dkt 22-4.

Ukrnafta has challenged the tribunal's award on both jurisdictional and procedural grounds in two Swedish proceedings. In May 2009, while the arbitration was proceeding, Ukrnafta brought an action in the District Court of Stockholm seeking a declaration that the Tribunal had no jurisdiction. Dkt. 22-10. After the arbitration award, on December 23, 2010, Ukrnafta brought a separate action in the Swedish Court of Appeal challenging the award on the basis of a lack of jurisdiction and procedural irregularities. Dkt. 22-6. The Swedish courts have yet to issue a ruling in either case.

Carpatsky seeks enforcement of the arbitral tribunal's final award in this court. Dkt. 21. More specifically, Carpatsky argues that the substance of the claims raised by Ukrnafta in this case was adjudicated during the arbitration proceeding and that Ukrnafta's claims are, therefore, barred. Ukranafta opposes any ruling by the court at this time, and argues both that confirmation is inappropriate, and, in the alternative, also asserts that the court should stay this matter pending the outcome of the two annulment proceedings that are pending in Sweden. Dkt. 22.

## LEGAL STANDARDS

### 1. *Standard for Confirmation of Arbitration Award - Article V*

The recognition and enforcement of foreign arbitral awards is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards [hereinafter "the Convention"], June 10, 1958. 21 U.S.T. 2517, 330 U.N.T.S. 38 (entered into force with respect to the United States, Dec. 29, 1970), codified at 9 U.S.C. § 201 *et seq.* The United States, Ukraine, and Sweden are all signatories to the Convention. The United States implementing legislation for

the Convention provides for enforcement of arbitral awards in the United States district courts and expressly authorizes any party to the arbitration to apply to a United States district court for "an order confirming the award as against any other party to the arbitration." 9 U.S.C. §§ 201, 203, 207.

Under the implementing legislation of the Convention, a district court may refuse to confirm an arbitration award only on the basis of one of the grounds for non-enforcement specified by Article V of the Convention. 9 U.S.C. § 207; *Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004). The party opposing confirmation, Ukrnafta in this case, bears the burden of proving the application of one or more of the grounds for non-enforcement. *Karaha Bodas*, 364 F.3d at 288. Defenses to confirmation are construed narrowly, in order "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts ...." *Id.* (citations omitted).

The mere pendency of nullification proceedings in the country where the arbitration occurred (Sweden in this case) does not deprive the court of jurisdiction over proceedings to enforce the award. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 335 F.3d 357, 366 (5th Cir. 2003) ("[A] court maintains the discretion to enforce an arbitral award even when nullification proceedings are occurring in the country where the award was rendered."). In fact, the Fifth Circuit has recognized that "[w]hen the Convention was drafted, one of its main purposes was to facilitate the enforcement of arbitration awards by enabling parties to enforce them in third countries without first having to obtain either confirmation of such awards or leave to enforce them from a court in the country of the arbitral situs." *Id.* at 366-67. "In short, multiple judicial proceedings on the same legal issues are characteristic of the confirmation and enforcement of international arbitral awards under the Convention." *Id.* at 366.

## 2. *Adjournment of Enforcement Action - Article VI.*

Although the Convention *permits* enforcement of arbitration awards under Article V even while nullification proceedings are ongoing, Article VI of the Convention allows a court, in its discretion, to "adjourn" a decision on the enforcement action pending nullification proceedings:

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

9 U.S.C. § 201, art. VI.

There is a "complex interplay between Articles VI and V" of the Convention, but the ultimate decision to adjourn an enforcement proceeding is a matter within the discretion with the district court. *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 181 (3d Cir. 2006). "[W]here a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317 (2nd Cir. 1998).

## ANALYSIS

The court will first consider whether to adjourn the instant motion until the conclusion of the appeals pending in Sweden. In *Europcar*, the Second Circuit set forth a non-exhaustive list of the "various concerns that come into play when a district court is asked to adjourn enforcement proceedings to await the outcome of parallel foreign proceedings" including:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

6

(2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the Convention, an award should not be enforced if it is set aside or suspended in the originating country . . .; and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

156 F.3d at 317-318.

The first factor weighs neither in favor of, nor against, adjournment. A ruling by this court, whether confirming or refusing to confirm the award, would certainly promote one objective of arbitration—the expeditious resolution of disputes. However, another aim of arbitration is to avoid protracted and expensive litigation. Were this court to rule in one fashion on confirmation of the Award, and the Swedish court (or courts) ultimately rule differently, the court will have *engendered* more protracted and expensive litigation by proceeding to the issue of confirmation rather than staying the matter, and will have acted "improvidently." *Europcar*, 156 F.3d at 317. Thus, the possibility of a ruling by this court conflicting with rulings by the Swedish courts counterbalances the interest in expeditious resolution of disputes.

7

The second factor favors adjournment. The two foreign proceedings have been underway for some time, and both predate the current motion filed by Carpatsky. Further, the proceeding filed by Ukrnafta in the Swedish courts in 2009 has survived a motion to dismiss, and a ruling is expected this year. Dkt. 27-14. The separate appeal from the arbitration proceeding may take up to two years. Neither time frame in a complex case involving multiple iterations of a joint agreement raises the specter of unreasonably protracted litigation.

The third factor also weighs in favor of adjournment because the standards for review in the two Swedish appeals certainly have a less deferential standard for affirming the award than the extremely deferential standard under Article V.

The fourth factor is, like the first, a toss-up. The foreign proceedings were brought to challenge the award, and so this favors reaching the issue of enforcement. However, the fact that the annulment proceedings were filed prior to Carpatsky's motion to enforce in this case raises concerns of international comity. Again, as with the first factor, the prospect that the appeals may be delay tactics by Ukrnafta is counterbalanced by the possibility of inconsistent rulings.

The fifth factor, involving the balancing of potential hardships, is an interesting exercise in this case. Normally, a party seeking to enforce an arbitration award in a foreign forum is doing so with the aim of executing the judgment in its favor on assets held by the opposing party. Here, however, this case was brought by Ukrnafta as a possible alternative to arbitration of the dispute between the parties, and it involves *only* Ukrnafta's claims against Carpatsky, all of which have been stayed pending the Stockholm arbitration. The "enforcement" mechanism in this case is Carpatsky's motion to dismiss Ukrnafta's claims as being barred by the arbitration award. Thus, as Carpatsky has framed the matter in its pleadings, the enforcement of the award in the context of this proceeding involves only the dismissal of Ukrnafta's claims. There is no indication that Carpatsky wishes to (or

can) use this court's ruling as a means of executing on the arbitration award. Indeed, Ukrnafta has presented uncontested affidavit evidence that it is a Ukranian company with "no office, executive, employee, or presence in Texas or the United States of America." Dkt. 27-14.

Therefore, as to the fifth factor, and recognizing that the dismissal of claims against it is certainly an important benefit to Carpatsky arising from the Stockholm arbitration, this is not a case where a delay by this court in proceeding to Article V enforcement will change the nature or the amount of the relief to which Carpatsky will ultimately be entitled. If Carpatsky is entitled to dismissal of Ukrnafta's claims brought in this suit, that dismissal will have the same impact and worth whether it occurs now or after the appeals in Sweden have concluded.[2] This factor, therefore, weighs in favor of adjournment.

After careful consideration of the overall objectives of arbitration, and the peculiar procedural posture of this case, the court concludes that Carpatsky's motion to dismiss and to enforce the award should be denied without prejudice pending the conclusion of the two actions presently pending in Sweden challenging the arbitration award.

The court must now consider whether to require "suitable security" of Ukrnafta while this matter is stayed. Carpatsky asserts that an adjournment of this matter should only occur if Ukrnafta posts a bond in the amount of the arbitration award—$145 million. Article VI vests courts with the discretion to require "suitable security" in order to obtain adjournment. 9 U.S.C. § 201, art. VI. However, as the court just explained, Carpatsky seeks to confirm the award in this matter for the purpose of dismissing Ukrnafta's affirmative claims for relief. Carpatsky's interest in having

---

[2] Nor will there by any further cost to the parties arising from this litigation, because it will be, as it has been for the last two years, stayed.

Ukrnafta's claims dismissed need not be "funded" in the sense that arbitral award would be, because that interest will be met in full upon dismissal of those claims. Thus, the court is not convinced that any security is necessary. Further, and although neither party has indicated whether Ukrnafta was required to post security in Sweden for its appeal of the arbitration award, the existence of that appeal argues against requiring security in this proceeding. If security has been posted, then this court need not duplicate what the Swedish court found to be adequate assurance of payment by Ukrnafta, and Carpatsky's interests are protected. If, on the other hand, no security has been required of Ukrnafta by the Swedish courts, even though the arbitration was conducted in that country, that would constitute persuasive evidence that security is not necessary in this case.[3]

In the unique circumstances of this case, the court believes that no security is necessary to guarantee the relief that Carpatsky seeks.

---

[3] Carpatsky referred the matter to arbitration in Stockholm pursuant to the 1998 amended JAA, and can hardly be heard to complain about the absence of security in the appeal from arbitration, or the insufficiency of any security that has been required.

## CONCLUSION

After careful consideration of the submissions of the parties, all relevant facts, and the applicable law, the court ORDERS that the motion to confirm the award and to dismiss Ukrnafta's claims (Dkt. 21) is DENIED WITHOUT PREJUDICE, and that this matter should be STAYED pending decisions in the ongoing appeals in Sweden.

It is further ORDERED that this case is administratively (statistically) CLOSED pending conclusion of those appeals. The parties may move to reinstate the case on the court's active docket at such time in the future as deemed appropriate. A copy of this order shall be attached as an exhibit to any motion to reinstate.

It is so ORDERED.

Signed at Houston, Texas on October 12, 2011.

_____
Gray H. Miller
United States District Judge