IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OJSC UKRNAFTA | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | |
| | § | |
| CARPATSKY PETROLEUM | § | CIVIL ACTION NO. 4:09-CV-891 |
| CORPORATION, a Delaware | § | |
| Corporation; TAUREX RESOURCES | § | |
| PLC; ROBERT BENSH and | § | |
| KUWAIT ENERGY COMPANY, | § | |
| K.S.C. | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT CARPATSKY PETROLEUM CORPORATION'S
SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS
MOTION TO CONFIRM ARBITRATION AWARD**

Defendant Carpatsky Petroleum Corporation ("Carpatsky") files this Supplemental Briefing In Support of Its Second Motion to Confirm Arbitration Award (Dkt. #33) and would respectfully show as follows.

## I. INTRODUCTION

This case has been stayed for eight years pending an arbitration between the parties in Sweden and subsequent Swedish appeals by Plaintiff OJSC Ukrnafta ("Ukrnafta"). Following the arbitration, Carpatsky sought this Court's confirmation of the $145.7 million award rendered by

the Swedish arbitral tribunal in Carpatsky's favor[1] (the "Final Award"), pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). (Dkt. # 33) The Court exercised its discretion to maintain the stay of this case, including Carpatsky's motion to confirm, until Ukrnafta exhausted all appellate avenues in Sweden. (Dkt. # 29, 40)

The Swedish appeals have now concluded, and the Final Award has been upheld. This Court has therefore lifted the stay and set a briefing schedule on Carpatsky's motion to confirm. (Dkt. # 42) In accordance with that schedule, Carpatsky submits this supplemental briefing supporting confirmation of the Final Award.

The factual background of the parties' dispute and the arguments and authorities supporting confirmation of the Final Award are discussed at length's in Carpatsky's motion.[2] In the interest of efficiency, they will not be restated here, though they are fully incorporated by reference.

---

[1] The Final Award also includes $1.2 million in attorney fees and costs awarded to Carpatsky.

[2] In accordance with the requirements of Article IV of the Convention, Carpatsky's motion to confirm includes as attachments certified copies of (i) the Arbitral Tribunal's Final Award (Exhibit 1), (ii) the parties' agreement to arbitrate (Exhibit 2), (iii) the Tribunal's Decision on Jurisdiction (Exhibit 3), and (iv) the Tribunal's Answer to Ukrnafta's post-award request for reconsideration (Exhibit 4).

Instead, the purpose of this supplemental briefing is to highlight the decisions of the Swedish courts that have upheld the Final Award against Ukrnafta's efforts to set it aside, and to urge the Court's consideration of those decisions in ruling on Carpatsky's motion to confirm.

## II. ARGUMENT AND AUTHORITIES

As noted in Carpatsky's motion, Article V of the Convention sets forth the exclusive defenses to enforcement of an arbitral award. A party seeking to prevent enforcement must furnish competent proof that:

- the parties to the arbitration agreement were under some incapacity, or the agreement is not valid under the law;

- the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;

- the award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration or it contains decisions on matters beyond the scope of the submission to arbitration;

- the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties;

- the award has not yet become binding on the parties or has been set aside or suspended by a competent authority of the country in which, or under the law of which, the award was made;

- the subject matter of the parties' difference is not capable of settlement by arbitration under the law; or

- recognition and enforcement of the award would be contrary to public policy.[3]

Absent proof of one of the foregoing conditions, a foreign award ***"shall"*** be confirmed.[4] Ukrnafta has already tried to convince courts in Sweden to set aside the Final Award based on theories that mirror several of the enforcement exceptions outlined in Article V. The Swedish courts have rejected Ukrnafta's arguments, as detailed below.

### A. Ukrnafta Unsuccessfully Sought to Set Aside the Final Award in Sweden.

#### 1. Challenge 1 in Sweden

While the arbitration was still ongoing, Ukrnafta instituted a challenge to the jurisdiction of the arbitration tribunal in the District Court of Stockholm ("Challenge 1"). *See* Ex. A. Ukrnafta argued that the tribunal lacked jurisdiction because the parties had purportedly never entered into a binding arbitration agreement. *Id.* On December 13, 2011, the District Court of Stockholm issued a decision in Challenge 1 finding that a valid agreement existed between the parties and that Ukrnafta had waived its

---

[3] Convention, Art. V.

[4] 9 U.S.C. § 207 (emphasis added).

right to contest the jurisdiction of the arbitral tribunal under governing Swedish law. *Id*.

Ukrnafta appealed the decision to the Swedish Court of Appeal. On November 30, 2012 the Swedish Court of Appeal affirmed the decision of the District Court of Stockholm.[5] *See* Ex. B. Ukrnafta then appealed to the Supreme Court of Sweden, which denied Ukrnafta's application for certiorari on June 14, 2013. *See* Ex. C. This Court, of course, has already determined that a valid arbitration agreement exists between the parties under U.S. law. *See* Dkt. # 11 at 5-6.

### 2. Challenge 2 in Sweden

After the arbitration concluded, Ukrnafta filed a second proceeding ("Challenge 2") on December 23, 2010 in the Swedish Court of Appeal. Ukrnafta sought to set aside the Final Award on grounds that (i) the tribunal exceeded its mandate and (ii) Ukrnafta was deprived of an adequate opportunity to present its case in the arbitration. *See* Ex. D. The proceeding was stayed by order of the Swedish Court of Appeal, pending the outcome of Challenge 1. Following the resolution of Challenge 1, the

---

[5] The Court of Appeal decided the case on the basis that Ukrnafta had waived its right to contest jurisdiction, without reaching the District Court's finding of a valid arbitration agreement. *See* Ex. B.

5

Swedish Court of Appeal lifted the stay in Challenge 2 and scheduled a final hearing for February of 2015. On March 26, 2015, the Swedish Court of Appeal issued its final decision rejecting Ukrnafta's claims in their entirety and denying Ukrnafta any further right of appeal. *Id*.

### 3. Challenge 3 in Sweden

Though it had been restricted from any further appeals, Ukrnafta instituted a collateral attack on the Court of Appeal's decision at the Supreme Court of Sweden ("Challenge 3"). Ukrnafta complained of "grave procedural error" in the Court of Appeal's handling of Challenge 2, pursuant to Chapter 59 of the Swedish Code of Judicial Procedure. *See* Ex. E. Specifically, Ukrnafta alleged that the Court of Appeal had improperly "dismissed a clarification of a ground for challenge already adduced, or alternatively allowed an objection based on a procedural impediment that was presented too late, adjudicated on an operative legal fact that had not been adduced by a party, reviewed substantively a fact that was not in dispute between the parties, and failed to consider a ground for challenge that had been adduced." *Id*.

On December 9, 2016, the Supreme Court of Sweden issued its ruling denying Ukrnafta's application to set aside the decision of the Court of

Appeal on grounds of grave procedural error. *Id.* That decision marked the end of all appellate avenues in Sweden and rendered the Final Award of full force and effect in that jurisdiction.[6] *Id.*

**B. The Decisions of the Swedish Courts Upholding the Final Award Are Entitled to Deference.**

"Though its 'essential purpose' relates to the recognition and enforcement of foreign arbitral awards, 'the underlying theme of the New York Convention as a whole is clearly the autonomy of international arbitration.'" *Gulf Petro Trading Company, Inc. v. Nigerian Nat. Petroleum Corp.*, 512 F.3d 742, 746 (5th Cir. 2008) (quoting FOUCHARD, GAILLARD, GOLDMAN ON INTERNATIONAL COMMERCIAL ARBITRATION § 250 (Emmanuel Gaillard & John Savage, eds., 1999)). For this reason, the Convention "mandates very different regimes for the review of arbitral awards (1) in the countries in which, or under the law of which, the award was made,

---

[6] Ukrnafta's arguments have also been rejected by a court in the Netherlands. On April 24, 2015, Carpatsky filed an application for recognition and enforcement of the Final Award in the District Court of the Hague, Netherlands. *See* Ex. F. Ukrnafta argued, *inter alia*, that enforcement should be denied under several of the exceptions set forth in Article V of the Convention and the similar Article 1076 of the Dutch Code of Civil Procedure. *Id.* Among the arguments Ukrnafta made were that (i) the arbitral tribunal exceeded its mandate, (ii) Ukrnafta was deprived of a fair opportunity to present its case, and (iii) enforcement of the award would be contrary to public policy. *Id.* On October 21, 2015, the Dutch court issued its reasoned decision rejecting each of Ukrnafta's contentions and granting Carpatsky leave to enforce the Final Award in the Netherlands. *Id.* That decision can no longer be appealed and has thus become final.

7

and (2) in other countries where recognition and enforcement are sought." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir.2004) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2nd Cir.1997) (internal quotations and brackets omitted)).

Under the Convention, the country in which, or under the law of which, an award was made has primary jurisdiction over the arbitration award. *Id.* "As one commentator has explained, Articles V and VI of the Convention 'unequivocally lay down the principle that the court in the [primary jurisdiction] has the exclusive competence to decide on the action for setting aside the award.' " *Gulf Petro*, 512 F.3d at 747 (quoting Albert Jan van den Berg, *The New York Arbitration Convention of 1958: Towards a Uniform Judicial Interpretation* (1981)).

All other signatories to the Convention are secondary jurisdictions, capable only of determining whether the award should be enforced within their jurisdictional boundaries. *Id.* Importantly, "while courts of a primary jurisdiction country may apply their own domestic law in evaluating a request to annul or set aside an arbitral award, courts in countries of

8

secondary jurisdiction may refuse enforcement only on the grounds specified in Article V." *Kahara Bodas*, 364 F.3d at 288.

The Convention is deeply rooted in principles of international comity. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 629 (1985). Thus, although courts in secondary jurisdictions deciding confirmation applications are not bound by the decisions reached by courts in the primary jurisdiction in set-aside proceedings, the findings of the primary jurisdiction should be afforded significant weight in the enforcement analysis. Indeed, just as the Convention allows a court in a secondary jurisdiction to refuse confirmation of an award that has been *set aside* by the courts of the primary jurisdiction, so too does it encourage deference by secondary jurisdictions to the primary jurisdiction's decisions *upholding* an award. *Cf. TermoRio S.A. E.SP. v. Electranta S.P.*, 487 F.3d 928, 930-37 (D.C. Cir. 2007) (holding that principles of comity underlying the Convention required deference to decision of Colombian court annulling award of Colombian arbitration tribunal).

Such deference is particularly appropriate where, as here, the courts in the primary jurisdiction have considered and rejected arguments that mirror Article V's enforcement exceptions and have done so under a "less

9

deferential standard for affirming the award than the extremely deferential standard under Article V," as this Court has recognized. *See* Dkt. # 29 at 7. Under these facts, the same comity-based concerns that initially led the Court to stay this action pending resolution of the Swedish appeals now support deference to the decisions of those courts. (Dkt. # 29 at 7).

## III. CONCLUSION

Carpatsky has met the requirements under Article IV of the Convention for obtaining confirmation of the Final Award. The burden is on Ukrnafta to prove one of the limited exceptions to enforcement set forth in Article V, which it cannot do. Courts in Sweden, which have primary jurisdiction and apply a less deferential standard of review, have upheld the Final Award - time and time again - against attacks by Ukrnafta premised on the same theories as the enforcement exceptions of Article V. Applying the principles of federal comity embodied in the Convention, this Court should give deference to the Swedish courts' resolution of those issues if raised by Ukrnafta in opposition to Carpatsky's motion to confirm.

|  |  |
|---|---|
| | Respectfully submitted, |
| OF COUNSEL: | By: */s/ Stuart C. Hollimon* |
| | Stuart C. Hollimon |
| Kelly Sandill | Texas Bar No. 09878500 |
| Texas Bar No. 24033094 | S.D.O.T. No. 139075 |
| S.D.O.T. No. 38594 | ANDREWS KURTH LLP |
| Ashley Sullivan | 600 Travis, Suite 4200 |
| Texas Bar No. 24079415 | Houston, Texas 77002 |
| S.D.O.T. No. 1457934 | Telephone: (713) 220-4033 |
| ANDREWS KURTH LLP | Fax: (713) 238-7212 |
| 600 Travis, Suite 4200 | stuarthollimon@andrewskurth.com |
| Houston, Texas 77002 | |
| Telephone: (713) 220-4181 | ATTORNEY-IN-CHARGE FOR |
| Fax: (713) 238-7304 | DEFENDANT CARPATSKY |
| ksandill@andrewskurth.com | PETROLEUM CORPORATION |
| ashleysullivan@andrewskurth.com | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of March, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record:

R. Paul Yetter
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010

*/s/ Kelly Sandill*
Kelly Sandill