## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| OJSC UKRNAFTA,<br><br>          Plaintiff,<br><br>     v.<br><br>CARPATSKY PETROLEUM<br>CORPORATION, a Delaware Corporation;<br>TAUREX RESOURCES PLC;<br>ROBERT BENSCH; and<br>KUWAIT ENERGY COMPANY, K.S.C.,<br><br>          Defendants. | No. 4:09-cv-00891 |

## DEFENDANT CARPATSKY PETROLEUM CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, RENEWED MOTION TO DISMISS, AND MOTION FOR JUDGMENT UNDER RULE 54(b)

Philip Hilder
State Bar No. 09620050
SD Tex. No. 2474
Stephanie McGuire
State Bar No. 11100520
SD Tex. No. 437432
HILDER & ASSOCIATES, P.C.
819 Lovett Blvd.
Houston, Texas  77006
Tel.: (713) 655-9111
Fax: (713) 655-9112
philip@hilderlaw.com
stephanie@hilderlaw.com

Robert K. Kry
D.C. Bar #490545
MOLO LAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, D.C.  20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

Sara E. Margolis
N.Y. Bar #5237508
MOLO LAMKEN LLP
430 Park Avenue, Floor 6
New York, New York  10022
Tel.: (212) 607-8172
Fax: (212) 607-8161
smargolis@mololamken.com

*Attorneys for Defendant Carpatsky Petroleum Corporation*

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

    A.    The Dispute and Initiation of Arbitration ................................................. 2

    B.    Ukrnafta's Claims in This Lawsuit ......................................................... 4

    C.    The Arbitral Tribunal's Findings ............................................................ 6

    D.    The Confirmation of the Arbitral Award ................................................. 8

ARGUMENT ......................................................................................................................... 9

I.    THE ARBITRAL AWARD IS ENTITLED TO PRECLUSIVE EFFECT ...................... 9

    A.    Arbitral Awards Normally Have the Same Preclusive Effects as
            Court Judgments ..................................................................................... 9

    B.    There Is No Basis To Deny Preclusive Effect to the Award in This Case ........... 11

II.    UKRNAFTA'S CLAIMS ARE BARRED BY ISSUE PRECLUSION ........................ 13

    A.    Each of Ukrnafta's Claims Is Precluded as Untimely Based on the
            Award's Findings ................................................................................. 14

    B.    Each of Ukrnafta's Claims Is Precluded on the Merits .......................... 17

III.    UKRNAFTA'S CLAIMS ARE BARRED BY CLAIM PRECLUSION ...................... 20

    A.    Ukrnafta's Claims Relating to the RC Field Are Precluded Because They
            Could and Should Have Been Raised in the Arbitration ....................... 21

    B.    Ukrnafta's Claims Relating to the BB Field Should Be Dismissed ...................... 24

            1.    The BB Field Claims Are Inadequately Pled ............................. 24

            2.    The BB Field Claims Are Subject to Arbitration ....................... 26

IV.    IN THE ALTERNATIVE, THE COURT SHOULD ENTER JUDGMENT ON
          ITS ORDER CONFIRMING THE AWARD UNDER RULE 54(b) ...................... 29

    A.    The Confirmation Order Is a "Final Judgment" for Purposes of Rule 54(b) ......... 29

    B.    There Is No Just Reason for Delay in Enforcing the Award ................... 30

1.     The Fundamental Purposes of the New York Convention Weigh
        Strongly in Favor of Entering a Separate Judgment ...................................30

2.     Other Factors Favor Entry of Judgment......................................................32

CONCLUSION.......................................................................................................................... 35

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ackerman v. FDIC*, 973 F.2d 1221 (5th Cir. 1992) ........................................................29

*Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443
  (5th Cir. 2013) .............................................................................................................27

*Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-cv-17, 2015 WL 12696219
  (E.D. Tex. Sept. 29, 2015) .....................................................................................14, 16

*Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663 (5th Cir. 1994) .........23

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992) ....................27, 28

*Allen v. McCurry*, 449 U.S. 90 (1980) ...........................................................................23

*Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955 (5th Cir. 2007)..............27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................25

*Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310 (Tex. App. Dallas 2013, no pet.) .........17

*BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59 (Tex. 2011) ..........................................15

*Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc.*, 170 F.3d 536
  (5th Cir. 1999)..............................................................................................................29

*Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771
  (Tex. App. Dallas 2005, writ denied) ..........................................................................14

*Comm'ns Imp. Exp. S.A. v. Republic of Congo*, 757 F.3d 321 (D.C. Cir. 2014) ............31

*Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v.
  Pemex-Exploración y Producción*, 832 F.3d 92 (2d Cir. 2016) .........................31, 34

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980) ..........................................29

*Dole v. Phoenix Roofing, Inc.*, 922 F.2d 1202 (5th Cir. 1991) .....................................29

*Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007) ............14

*Everhart v. Citibank, N.A.*, No. H-13-2752, 2015 WL 12805172
  (S.D. Tex. Mar. 30, 2015)............................................................................................22

*Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674 (5th Cir. 1999).......................................28

*In re FirstMerit Bank*, 52 S.W.3d 749 (Tex. 2001) ........................................................18

*Fitigues, Inc., LRV v. Varat Enters., Inc.*, 813 F. Supp. 1336 (N.D. Ill. 1992) ...........................33

*Forest Elec. Corp. v. HCB Contractors*, No. 91-1732, 1995 WL 429141
    (E.D. Pa. July 20, 1995)...........................................................................32

*Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017 (5th Cir. 1990)..............................30

*Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000)...............................................26

*Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913 (Tex. 2010) ...................25

*Grimes v. BNSF Ry. Co.*, 746 F.3d 184 (5th Cir. 2014) ..........................................10, 12

*Grynberg v. BP, P.L.C.*, 855 F. Supp. 2d 625 (S.D. Tex. 2012).............................................22

*Grynberg v. BP, P.L.C.*, 527 F. App'x 278 (5th Cir. 2013)..................................................10

*Halliburton Energy Servs., Inc. v. NL Indus.*, No. H-05-4160,
    2008 WL 2697345 (S.D. Tex. July 2, 2008).........................................30, 31, 32, 33

*HECI Expl. Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998) ...................................................14

*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) ...........................20

*Hicks v. Quaker Oats Co.*, 662 F.2d 1158 (5th Cir. 1981) ..............................................14

*Himark Biogas, Inc. v. W. Plains Energy LLC*, No. 14-1070, 2016 WL 3654764
    (D. Kan. July 8, 2016)............................................................................30

*HRD Corp. v. Bagherzadeh*, No. H-10-1747, 2011 WL 1157544
    (S.D. Tex. Mar. 24, 2011)..........................................................................31

*Johansen v. E.I. Du Pont de Nemours & Co.*, 810 F.2d 1377 (5th Cir. 1987) ............................14

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    364 F.3d 274 (5th Cir. 2004) ....................................................................32

*Milliken v. Grigson*, No. 97-41534, 1998 WL 648483 (5th Cir. Sept. 1, 1998)...........................10

*Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617
    (5th Cir. 2015).............................................................................10, 13, 21

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Cont'l Carbon Co.*, No. H-10-2379,
    2012 WL 43604 (S.D. Tex. Jan. 9, 2012) ..........................................................10

*Nilsen v. City of Moss Point*, 701 F.2d 556 (5th Cir. 1983).............................................23

iv

*Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272 (5th Cir. 2005)......................................13

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).....................................................13

*Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388 (5th Cir. 2002) ..........24

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278
    (5th Cir. 2007)......................................................................................................14

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74 (Tex. 2000).......19

*RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995) .......................................13

*Roberts v. A.G. Edwards & Sons, Inc.*, No. B-06-17, 2007 WL 597371
    (S.D. Tex. Feb. 21, 2007)....................................................................................30

*Sheikh v. Cisco Sys., Inc.*, 472 F. App'x 787 (9th Cir. 2012) ........................................28

*Shell Oil Co. v. Ross*, 356 S.W.3d 924 (Tex. 2011) ................................................15, 16

*Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512 (5th Cir. 2016) ....................21

*In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1999) ...................................................21

*Stoker v. Trimas Corp.*, 481 F. App'x 155 (5th Cir. 2012)...........................................10

*In re Swate*, 99 F.3d 1282 (5th Cir. 1996) ....................................................................13

*Taylor v. Sturgell*, 553 U.S. 880 (2008)........................................................................22

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
    300 S.W.3d 348 (Tex. App. Dallas 2009, writ denied) ........................................19

*Tremont LLC v. Halliburton Energy Servs.*, 696 F. Supp. 2d 741 (S.D. Tex. 2010)...................13

*Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131 (5th Cir. 1991).............9, 12, 13

*Wing v. J.C. Bradford & Co.*, 678 F. Supp. 622 (N.D. Miss. 1987)..............................32

## TREATY PROVISIONS, STATUTES, AND RULES

Convention on the Recognition and Enforcement of Foreign Arbitral Awards
    ("New York Convention"), June 10, 1958, 21 U.S.T. 2517 ................................8, 26
        Art. II(3)..................................................................................................26
        Art. V ...........................................................................................8, 30, 32
        Art. V(1)..................................................................................................32
        Art. V(1)(b).................................................................................................8
        Art. V(2)..................................................................................................32

9 U.S.C. § 3 ...................................................................................................26, 27

9 U.S.C. § 201 ....................................................................................................26

9 U.S.C. § 208 ....................................................................................................26

Fed. R. Civ. P. 54(b) ..................................................................................... *passim*

Tex. Civ. Prac. & Rem. Code § 16.003(a) ......................................................14

Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) ..................................................14

Tex. Civ. Prac. & Rem. Code § 16.010(a) ......................................................14

## OTHER AUTHORITIES

Charles Alan Wright *et al.*, *Federal Practice and Procedure* (2d ed. rev. 2017)..........................11

*Restatement (Second) of Judgments* § 84(1) (1982)........................................10

*Restatement (Second) of Judgments* § 84 cmt. b (1982) ................................11

Defendant Carpatsky Petroleum Corporation ("Carpatsky") respectfully submits this memorandum of law in support of its motion for summary judgment, renewed motion to dismiss, and motion for entry of judgment under Federal Rule of Civil Procedure 54(b).[1]

## INTRODUCTION

OJSC Ukrnafta ("Ukrnafta") seeks to relitigate claims and issues it has already fully contested and lost in a contractually bargained-for arbitration.  One of the key disputes in that earlier proceeding concerned Carpatsky's change of domicile from Texas to Delaware.  Just like it does here, Ukrnafta alleged that this utterly routine corporate restructuring was somehow improper and meant that Ukrnafta was no longer bound by its contractual commitments to Carpatsky.  The arbitral tribunal had no difficulty seeing through that meritless and overly formalistic defense, ruling that Carpatsky's change of domicile was valid under governing law, that Carpatsky was not required to notify Ukrnafta about the change, that Ukrnafta knew or could have known about the change in any event, and that Ukrnafta suffered no damages as a result.  Rabij Decl. Ex. A ¶¶ 155-212.  Ukrnafta's claims in this lawsuit are nothing but an attempted do-over of the exact same disputes settled in the arbitration.

Basic preclusion principles foreclose Ukrnafta from relitigating those disputes.  Issue preclusion applies because the tribunal made key findings that either preclude Ukrnafta from overcoming the statute of limitations or make it impossible for Ukrnafta to establish the elements of its claims.  The tribunal found that Ukrnafta knew or could have known about Carpatsky's change in domicile by no later than 2000.  That finding renders all of Ukrnafta's claims untimely because Ukrnafta did not file suit until more than *eight years* later.  The tribunal also found that

---

[1] Citations to "Rabij Decl." are to the accompanying declaration of Myron Rabij.  Citations to "Kry Decl." are to the accompanying declaration of Robert K. Kry.

Ukrnafta suffered no harm from Carpatsky's change in domicile.  That finding precludes Ukrnafta from proving the merits of its claims, for which injury is an indispensable element.

Claim preclusion independently forecloses Ukrnafta's suit.  All of Ukrnafta's claims arise out of the same nucleus of operative facts as the claims in the arbitration.  And to the extent they relate to the Joint Activity Agreement concerning the RC Field, they fall squarely within the arbitration clause in that agreement.  Those claims could and should have been brought in the arbitration in Stockholm.  To the extent the Complaint contains passing references to the separate joint venture over the BB Field, the claims should be dismissed because they are so cursory and cryptic that they are inadequately pled and, in any event, they cannot be resolved in this forum.

Finally, if any of Ukrnafta's claims somehow survive the preclusive effects of the Award, the Court should certify its confirmation order under Federal Rule of Civil Procedure 54(b) and enter judgment on the Award.  One of the core purposes of the New York Convention is to streamline enforcement of arbitral awards.  Courts have thus repeatedly recognized that Rule 54(b) certification is particularly appropriate for orders confirming arbitral awards.  The Court should enter judgment on the Award at this time so that Carpatsky can begin collection efforts – remedies that are already long overdue.

## **BACKGROUND**

### A.    **The Dispute and Initiation of Arbitration**

This case stems from the parties' agreements to cooperate in the development of two oil and gas fields in the Ukraine.  On August 18, 1994, the parties entered into a joint venture agreement to develop the Bytkiv-Babchynske field (the "BB Field").  Rabij Decl. Ex. C.  On September 14, 1995, the parties entered into a Joint Activity Agreement (the "JAA") to develop the Rudivsko-Chervonozavodskiy field (the "RC Field").  Rabij Decl. Ex. D.  In each case, the

parties agreed to pool their financial and technical resources to develop and exploit the fields. Rabij Decl. Ex. C art. 3; Rabij Decl. Ex. D art. 3.

Both agreements contain broad arbitration clauses. The 1994 joint venture agreement provides that "[a]ny disputes and disagreements[ ] and controversies [ar]ising from or connected with this Agreement" shall be resolved in the International Commercial Arbitration Court of the Chamber of Commerce and Industry of the Ukraine. Rabij Decl. Ex. C § 18.2. The 1995 Joint Activity Agreement similarly provided that "[a]ny dispute, discrepancy and difference arising out of or in connection with this Agreement" would be resolved in that same forum. Rabij Decl. Ex. D § 14.3. In 1998, however, the parties amended that latter agreement to provide for arbitration in the Arbitration Institute of the Stockholm Chamber of Commerce instead. Rabij Decl. Ex. F § 20.4-20.5; *cf.* Rabij Decl. Ex. E § 20.3-20.5 (1996 version).

During the early stages of the JAA, Ukrnafta contributed more capital than Carpatsky, resulting in a reduction of Carpatsky's share in the business. Rabij Decl. Ex. A ¶ 20. By early 2004, however, Carpatsky sought to restore its stake to 50% by making additional investments. *Id.* ¶ 33. Ukrnafta refused to allow Carpatsky to "top up" its investment or to participate on an equal basis in further development of the RC Field. *Id.* ¶¶ 35-36.

After negotiations failed, Carpatsky filed a request for arbitration in the Stockholm Chamber of Commerce on September 28, 2007. Rabij Decl. Ex. A ¶ 55. Carpatsky argued that Ukrnafta had breached the JAA by refusing to allow it to top up its investment in existing wells and to participate on a 50/50 basis in new wells. *Id.* ¶ 147. Ukrnafta filed an answer in November 2007, acknowledging that the parties had "agreed to proceed with the arbitration." *Id.* ¶ 55. Ukrnafta then filed its statement of defense and counterclaim in June 2008. *Id.* ¶ 56.

On December 19, 2008, over a year after the arbitration began, Ukrnafta for the first time objected to the tribunal's jurisdiction. Rabij Decl. Ex. B ¶ 15. As it pointed out, the Carpatsky

entity that originally signed the JAA in September 1995 was incorporated in Texas.  *Id.* ¶53.  In July 1996, as part of a change in domicile undertaken for tax and corporate law reasons, that entity was merged into a new entity incorporated in Delaware with the same name.  *Id.* ¶52; Rabij Decl. Ex. A ¶163.  According to Ukrnafta, that change in domicile rendered the 1998 amendments to the JAA invalid, depriving the tribunal of jurisdiction.  Rabij Decl. Ex. B ¶54.[2]

The arbitral tribunal rejected that jurisdictional challenge as untimely.  Rabij Decl. Ex. B ¶¶69-76.  Ukrnafta, it noted, had been aware of Carpatsky's Delaware domicile throughout the arbitration, but waited over a year to object.  *Id.*  Despite that ruling, Ukrnafta continued to press the same arguments in the merits stage, urging that Carpatsky's change in domicile prevented Carpatsky from pursuing any of its claims because the currently existing Carpatsky entity was different from the one that originally signed the JAA in 1995.  Rabij Decl. Ex. A ¶¶156-161.

### B.    Ukrnafta's Claims in This Lawsuit

On February 23, 2009 – over a year after the arbitration began – Ukrnafta filed suit against Carpatsky in Texas state court.  Dkt. 1-7 ("Compl.").  Carpatsky removed the case to this Court.  Dkt. 1.  As this Court recognized, the gravamen of Ukrnafta's claims is "the transfer of title from Carpatsky Texas to Carpatsky Delaware and the consequences of that transfer."  Dkt. 11 at 7.  Ukrnafta's Complaint asserts seven causes of action based on that change in domicile:

- **<u>Negligent Misrepresentation.</u>**  Ukrnafta alleges that Carpatsky made negligent misrepresentations to Ukrnafta with regard to "what entity was party to the many JAA amendments."  Compl. ¶29.  According to the Complaint, Carpatsky never informed Ukrnafta that CPC-TX had ceased to exist and that CPC-DE had signed the amendments to the JAA in its stead.  *Id.* ¶14.  Carpatsky allegedly "took affirmative steps to give the appearance that [CPC-TX] still existed, was the signatory to the amendment[s], and remained Ukrnafta's joint projects associate."  *Id.* ¶15.

---

[2] Consistent with the Award, this brief refers to the old Texas entity as "CPC-TX" and the new Delaware entity as "CPC-DE," and uses the generic term "Carpatsky" when not necessary to distinguish between the two.

- **Fraud.**  Ukrnafta's fraud claim largely tracks its negligent misrepresentation claim, but alleges that Carpatsky acted not just negligently but knowingly and recklessly in conveying the impression that CPC-TX continued to exist.  Compl. ¶¶32-33.

- **Misappropriation of Trade Secrets.**  Ukrnafta alleges that it shared "detailed geologic data and surveys" with Carpatsky "sufficient to give [it] detailed technical knowledge of the RC field."  Compl. ¶ 24. CPC-DE allegedly improperly obtained those trade secrets when it took CPC-TX's place under the JAA.  *Id.* ¶37.

- **Tortious Interference with Contract.**  Ukrnafta claims that CPC-DE "intentionally interfered" with the JAA by "dissolving CPC-Texas without notice."  Compl. ¶40.

- **Unjust Enrichment.**  Ukrnafta alleges that CPC-DE was unjustly enriched when it obtained "millions in ill-gotten gains" and "valuable trade secrets" that should have gone to CPC-TX.  Compl. ¶41.  The Complaint points to earnings from the RC Field as well as sale proceeds Carpatsky obtained upon selling its stakes in the joint venture and the JAA to Kuwait Energy in 2007.  *Id.* ¶¶21-22.

- **Declaratory Judgment.**  Ukrnafta seeks a declaratory judgment that the JAA and all of its amendments are void.  Compl. ¶43.

- **Permanent Injunction.**  Finally, Ukrnafta seeks a permanent injunction prohibiting Carpatsky from "using or disseminating Ukrnafta's trade secrets, and requiring [it] to return to Ukrnafta the trade secrets in [its] possession."  Compl. ¶¶46-47.

One week after removing the case to this Court, Carpatsky filed a motion to stay the suit pending arbitration, invoking the arbitration clauses in both the joint venture agreement and the JAA.  Dkt. 6.  This Court granted the motion.  Dkt. 11.  "[N]one of the parties dispute[d] that the JV and the JAA were valid at the time the original parties entered into them," and "both contracts contain an arbitration clause."  *Id.* at 6.  While Ukrnafta asserted that CPC-DE was not a party to the agreements, the Court ruled that "a successor in interest . . . may be required to arbitrate."  *Id.* Further, "although Ukrnafta ha[d] recast its claims as torts, the alleged dissemination of trade secrets and fraud allegations are based on the contractual relationship between Ukrnafta and Carpatsky," and those claims "f[ell] within the scope of the arbitration clause."  *Id.* at 6-8.  The Court thus granted the motion and stayed the case pending arbitration.  *Id.* at 9.

### C.     The Arbitral Tribunal's Findings

The arbitral tribunal held a four-day hearing on the merits in September 2009.   Rabij Decl. Ex. A ¶ 112.   It heard from fifteen fact and expert witnesses, and considered two rounds of pre-hearing briefs and two rounds of post-hearing briefs.   *Id*. ¶¶ 112, 142.   On September 24, 2010, the tribunal issued its decision on the merits (the "Award").   Rabij Decl. Ex. A.

The tribunal rejected Ukrnafta's argument that Carpatsky's change of domicile was a basis for rejecting any of its claims.   CPC-DE, it held, "is a proper party to the JAA."   Rabij Decl. Ex. A ¶ 175.   CPC-DE's legal capacity to sue was "governed by the laws of the country where [the] entity is established."   *Id.* ¶ 176.   And under Delaware law, "CPC-DE was the successor of CPC-TX and with the merger acquired all of the latter's rights and obligations."   *Id.* ¶ 177.   Following the change in domicile, the various amendments to the JAA were properly executed on behalf of CPC-DE, even though the company sometimes mistakenly used the corporate seal of its Texas predecessor.   *Id.* ¶¶ 178-185.

Ukrnafta argued that CPC-DE could not have succeeded to CPC-TX's rights under the JAA because Carpatsky never notified Ukrnafta about the change in its domicile.   Rabij Decl. Ex. A ¶ 186.   The tribunal rejected that argument based on several alternative holdings.

***First***, the tribunal held that Carpatsky was not required to notify Ukrnafta about the reorganization in order for it to be effective.   Rabij Decl. Ex. A ¶¶ 186-191.   The JAA itself imposed no such requirement.   *Id.* ¶ 186.   And the tribunal found no such requirement under Ukrainian law either.   *Id.* ¶ 187.

***Second***, the tribunal found that the existence or non-existence of any notice requirement was irrelevant because Ukrnafta "knew, and in any event could have known, about the change of CPC's place of registration."   Rabij Decl. Ex. A ¶ 196; *see id.* ¶¶ 192-202.   The tribunal pointed to several pieces of evidence in support of that finding:

6

- Leslie Texas – the president of Carpatsky – "confirmed that he had informed Mr. Kusch, the deputy head of Ukrnafta's board of foreign economic relations," about the merger.  Rabij Decl. Ex. A ¶192; *see id.* (Mr. Texas: "I clearly explained to, at that time, the foreign relationship department chief, Mr. Kusch, that we changed the corporate structure just simply because of these advantages [of] what the Delaware set-up means.  And nothing changed: the same people he personally met before, he knew the key shareholders, nothing changed.").  Because "Mr. Kusch died in 2000," Mr. Texas must have informed Mr. Kusch about Carpatsky's change in domicile before that date.  *Id.* ¶195.  The tribunal found that it had "no reason to doubt Mr. Texas' testimony or even suspect that he was not telling the truth."  *Id.*

- On March 24, 2005, Ms. Vasylets – a senior Ukrnafta executive – prepared and sent a letter to the Ukrainian government acknowledging the change of domicile.  Rabij Decl. Ex. A ¶201.  The letter referred to "the cooperation with 'Carpatsky Petroleum Co[rpo]ration (Delaware, USA)'" and noted that "*Carpatsky Petroleum Company was re-registered in the sate [sic] of Delaware, USA*."  *Id.* (emphasis added by tribunal).

- In 2006, Ukrnafta received a certificate stating that Carpatsky was "*a company organized and existing under the laws of the State of Delaware, USA*."  Rabij Decl. Ex. A ¶200 (emphasis added by tribunal).

*Third*, the Tribunal found that any lack of notice was beside the point because Ukrnafta had not shown any harm from Carpatsky's change of domicile.  Rabij Decl. Ex. A ¶¶204-207.  The tribunal could "not identif[y] *any . . . possible harm*" suffered by Ukrnafta as a consequence of the merger.  *Id.* ¶204 (emphasis added).  "[S]ince the merger was carried out in 1996, the Parties have actively continued their contractual relationship," and "[n]othing in relation to the way that business was conducted . . . changed."  *Id.* ¶¶204-205.  Moreover, the merger had "no impact on [Ukrnafta] as a creditor" because Ukrnafta "was still dealing with a contracting partner with the same rights, obligations, liabilities and assets."  *Id.* ¶206.

The tribunal ultimately found that Ukrnafta had breached the JAA by failing to allow Carpatsky to participate on an equal footing.  Rabij Decl. Ex. A ¶361.  It awarded Carpatsky $145.7 million in damages plus interest, costs, and attorney's fees.  *Id.*

### D.      The Confirmation of the Arbitral Award

On March 10, 2011, Carpatsky filed its first motion to dismiss Ukrnafta's claims and confirm the Award.  Dkt. 21.  This Court denied that motion without prejudice pending proceedings Ukrnafta had brought in Sweden to challenge the Award.  Dkt. 29 at 9.  Once those proceedings concluded, Carpatsky renewed its motion.  Dkts. 33, 41, 43.

On October 2, 2017, this Court issued its order confirming the Award.  Dkt. 53.  The Court noted that, under the New York Convention, it was required to "enforce the award unless one of the grounds enumerated in Article V is present."  *Id.* at 6.  The Court considered each of Ukrnafta's arguments and found them all to be without merit.  *Id.* at 14-41.

The Court specifically rejected Ukrnafta's claim that "the arbitration tribunal did not allow Ukrnafta to present key evidence and arguments on multiple issues."  Dkt. 53 at 22.  Under Article V(1)(b) of the Convention, "[a] court may refuse to recognize or enforce the arbitration award if [a party] presents proof that it 'was . . . unable to present its case.' "  *Id.*  The Court evaluated that claim under "U.S. due process standards" and examined whether Ukrnafta "ha[d] an opportunity to be heard 'at a meaningful time and in a meaningful manner.' "  *Id.*  After carefully reviewing Ukrnafta's challenges, the Court found that Ukrnafta "had an opportunity to be heard and was thus afforded due process," and that "Ukrnafta had ample opportunity to present evidence to the panel."  *Id.* at 27, 29.

Despite confirming the Award, the Court denied without prejudice Carpatsky's motion to dismiss Ukrnafta's claims based on the preclusive effect of the Award.  Dkt. 53 at 41-43.  The Court explained:  "The parties devote perhaps three pages total briefing to a request to dismiss seven causes of action on collateral estoppel or res judicata grounds.  The court simply does not have the information it needs to use the case-by-case approach required for it to rule on this request."  *Id.* at 42.  The Court invited Carpatsky to file a "renewed motion in the proper motion

for summary judgment format that outlines each claim and why Carpatsky believes the claim is identical to the arbitration panel's findings." *Id.*

**ARGUMENT**

The Court should grant summary judgment in Carpatsky's favor because each of Ukrnafta's claims is barred by the preclusive effects of the Award. Ukrnafta had a full and fair opportunity to contest its claims in the arbitration. Those proceedings foreclose Ukrnafta from relitigating the dispute now.

## I.    THE ARBITRAL AWARD IS ENTITLED TO PRECLUSIVE EFFECT

This Court should accord the arbitral award the same preclusive effect as a court judgment. Courts routinely grant preclusive effects to arbitral awards. And although exceptions apply where preclusion would undermine important federal statutory or constitutional rights or where the arbitral proceedings were so inferior that a party lacked a fair opportunity to present its claims, no such concerns are present here.

### A.    Arbitral Awards Normally Have the Same Preclusive Effects as Court Judgments

The Fifth Circuit has long accorded preclusive effects to arbitral awards. In *Universal American Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131 (5th Cir. 1991), the court rejected the notion that an award is not preclusive merely because it "was rendered in an arbitration proceeding, rather than in a 'court of law.'" *Id.* at 1136. Preclusion might not apply where a case "directly involv[es] federal statutory or constitutional rights," and a court must examine "the procedural adequacy of the arbitration proceeding." *Id.* at 1136-37. But neither concern justified denying preclusion in that case. Because the "arbitration . . . afforded litigants the 'basic elements of adjudicatory procedure,'" the "arbitral award collaterally estop[ped] relitigation of the previously determined issues." *Id.* at 1137.

The Fifth Circuit reiterated that standard in *Grimes v. BNSF Railway Co.*, 746 F.3d 184 (5th Cir. 2014).  The court explained:  "[W]hen an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings . . . ."  *Id.* at 188.  Indeed, "arbitral proceedings can have preclusive effect even in litigation involving federal statutory and constitutional rights."  *Id.* (emphasis omitted).  The court ultimately denied preclusive effect in that case only because the arbitral proceedings had failed to afford "basic procedural protections": "the investigation and hearings were conducted by the [opposing party]," and "[t]he actual arbitrators . . . only reviewed the record from that investigation."  *Id.*  The court contrasted that one-sided process with a proceeding where "both parties had been represented by counsel, made opening and closing arguments, and were permitted to examine and cross-examine witnesses and to present relevant evidence."  *Id.*

Consistent with those standards, the Fifth Circuit routinely accords preclusive effects to arbitral awards.  *See, e.g.*, *Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 620-21 (5th Cir. 2015) (claim preclusion); *Grynberg v. BP, P.L.C.*, 527 F. App'x 278, 281-82 (5th Cir. 2013) (same); *Stoker v. Trimas Corp.*, 481 F. App'x 155, 156-57 (5th Cir. 2012) (same); *Milliken v. Grigson*, No. 97-41534, 1998 WL 648483, at *1 (5th Cir. Sept. 1, 1998) (issue preclusion).  Other authorities agree:  Subject only to narrow exceptions, "a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court."  *Restatement (Second) of Judgments* § 84(1) (1982); *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Cont'l Carbon Co.*, No. H-10-2379, 2012 WL 43604, at *10 (S.D. Tex. Jan. 9, 2012) ("Courts routinely give arbitration awards preclusive effect.").  A contrary rule would render arbitration toothless:  "If any party dissatisfied with the award were left free to pursue independent judicial proceedings on the same claim or

defenses, arbitration would be substantially worthless."  18B Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 4475.1 (2d ed. rev. 2017); *see also Restatement (Second) of Judgments* § 84 cmt. b ("If the arbitration award were not treated as the equivalent of a judicial adjudication for purposes of claim preclusion, the obligation to arbitrate would be practically illusory.").

### B.       There Is No Basis To Deny Preclusive Effect to the Award in This Case

Neither of the exceptions to arbitral preclusion applies here.  This case clearly involves no important federal statutory or constitutional policy that might be undermined by arbitral preclusion.  Ukrnafta asserts no federal claims at all, and the only "policy" it seeks to vindicate – essentially, escaping from its contractual obligations on the basis of corporate technicalities – is far removed from any weighty concern.

Nor does this case involve arbitral procedures so deficient that Ukrnafta was denied a fair opportunity to present its case.  This was a sophisticated international arbitration under the auspices of a well-respected authority, the Arbitration Institute of the Stockholm Chamber of Commerce.  Rabij Decl. Ex. A ¶ 54.  The governing rules gave Ukrnafta ample opportunity to contest the claims against it.  *Id.* ¶ 55; Kry Decl. Ex. A (applicable 2007 rules); *see, e.g., id.* art. 24 (written submissions); *id.* art. 26(1)-(2) (submission of evidence); *id.* art. 26(3) (discovery as permitted by the tribunal); *id.* art. 27 (hearings); *id.* art. 28(1)-(2) (witness testimony); *id.* art. 28(3) (right to cross-examine adverse witnesses).

The parties took full advantage of those procedures.  Both sides were represented by counsel.  Rabij Decl. Ex. A ¶¶ 1-2, 112.  The tribunal considered and ruled on numerous requests before the merits hearing, *id.* ¶¶ 66, 72, 73-75, 78-80, 105-111, and reviewed witness statements and expert reports submitted by the parties, *id.* ¶¶ 101-04.  The hearing itself took place over four days, and the tribunal heard fifteen fact and expert witnesses.  *Id.* ¶ 112.  Both the parties and the tribunal had the opportunity to examine witnesses at the hearing.  *See, e.g., id.* ¶¶ 184, 192-193,

197, 201.  After the hearing, the tribunal considered two rounds of post-hearing briefs, *id.* ¶¶ 115, 121, and twice allowed Ukrnafta to submit additional documents, *id.* ¶¶ 116-121, 132-136.  Those efforts culminated in a 117-page written award setting forth in detail the reasons for the decision.  Rabij Decl. Ex. A.

Those proceedings plainly afforded "basic elements of adjudicatory procedure."  *Grimes*, 746 F.3d at 188.  A large-scale international commercial arbitration like this one affords more process than many ***judicial*** proceedings.  In *Grimes*, the Fifth Circuit indicated that an arbitral award would be entitled to preclusive effects so long as "both parties had been represented by counsel, made opening and closing arguments, and were permitted to examine and cross-examine witnesses and to present relevant evidence."  *Id.*  Those minimal requirements were far exceeded here.  Ukrnafta had due process galore.

In fact, this Court already effectively resolved this issue by confirming the Award over Ukrnafta's Article V objections.  The Court considered and rejected Ukrnafta's claim that "the arbitration tribunal did not allow Ukrnafta to present key evidence and arguments on multiple issues."  Dkt. 53 at 22.  Applying "U.S. due process standards," the Court carefully examined whether Ukrnafta "ha[d] an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.*  The Court found that Ukrnafta was "afforded due process" and "had ample opportunity to present evidence."  *Id.* at 27, 29.  Having rejected Ukrnafta's procedural objections in confirming the Award, the Court should reach the same result here.  Indeed, the whole point of confirmation is to resolve any challenges to the integrity of the Award.

Finally, there is no other basis for denying preclusion.  To be sure, *Universal American Barge* refers to a court's "broad discretion" over preclusion and the possibility of "special circumstances . . . render[ing] preclusion inappropriate or unfair."  946 F.2d at 1136-37.  But the Fifth Circuit clarified in later cases that that language applies only to the particular type of

preclusion at issue in that case – ***non-mutual, offensive*** collateral estoppel, a type of preclusion that raises unique concerns.  *See Murchison Capital*, 625 F. App'x at 622 (limiting *Universal American Barge*'s "discretion" language to "offensive collateral estoppel"); *In re Swate*, 99 F.3d 1282, 1290 (5th Cir. 1996) (limiting *Universal American Barge*'s "fairness" requirement to offensive, non-mutual collateral estoppel and holding that "an inquiry into special circumstances is unnecessary" for "mutual estoppel"); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 n.12 (5th Cir. 1995) (similar); *cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) (justifying "broad discretion" based on "problems . . . of offensive collateral estoppel").

Those standards are inapplicable here.  Carpatsky is not claiming the benefit of preclusion from another case to which it was not a party; it seeks only to prevent Ukrnafta from relitigating issues decided in an earlier proceeding between the ***same*** parties.  And Carpatsky is not seeking to use estoppel offensively; it seeks only to ***defend*** itself from serial litigation.  This case thus involves defensive, mutual estoppel – not offensive, non-mutual collateral estoppel. The Court's "case-by-case" inquiry should be limited to ensuring that due process was satisfied and that no important statutory or constitutional policies are in peril.  Because no such concerns are remotely present, the Court should grant the Award full preclusive effect.

## II.   UKRNAFTA'S CLAIMS ARE BARRED BY ISSUE PRECLUSION

Applying ordinary preclusion principles, all of Ukrnafta's claims are barred by issue preclusion.  Issue preclusion prevents a party from relitigating particular issues already decided in a prior proceeding.  The requirements are: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."  *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005); *see, e.g.*, *Tremont LLC v. Halliburton Energy Servs.*, 696 F. Supp. 2d 741, 751 (S.D. Tex. 2010) (applying standard to arbitral award).  Where the prior decision rests on unappealed alternative holdings, a finding is

considered "necessary to the decision" for purposes of defensive collateral estoppel so long as it is necessary to at least one of those alternative holdings. *See Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-cv-17, 2015 WL 12696219, at *3 (E.D. Tex. Sept. 29, 2015) (applying issue preclusion to prior order "based on alternative grounds"); *cf. Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. 1981). That rule applies with particular force to arbitral awards, where the tribunal is meant to have the last word. *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 285 (5th Cir. 2007) ("finality" one of the "most attractive features" of arbitration); Rabij Decl. Ex. A ¶ 54 (disputes to be "finally settled" by arbitration).

Issue preclusion forecloses Ukrnafta's claims for multiple reasons. The tribunal's finding that Ukrnafta knew or could have known about Carpatsky's change of domicile by no later than 2000 precludes Ukrnafta from satisfying the statute of limitations. And the tribunal's remaining findings preclude Ukrnafta from establishing one or more elements of its claims on the merits.

## A.     Each of Ukrnafta's Claims Is Precluded as Untimely Based on the Award's Findings

The tribunal found that Ukrnafta knew or could have known about Carpatsky's change of domicile by no later than 2000. That finding renders all of Ukrnafta's claims untimely.

Texas statutes of limitations apply to each of Ukrnafta's claims. *See Johansen v. E.I. Du Pont de Nemours & Co.*, 810 F.2d 1377, 1381 (5th Cir. 1987) (forum law governs). Under Texas law, a two-year limitations period applies to claims for negligent misrepresentation, tortious interference, and unjust enrichment. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007); *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998); *Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 776 (Tex. App. Dallas 2005, writ denied). Trade secret claims are subject to a three-year period, Tex. Civ. Prac. & Rem. Code § 16.010(a), and fraud claims to a four-year period, *id.* § 16.004(a)(4).

14

Under the "discovery rule," the limitations period commences – at the latest – when an injury "could have reasonably been discovered." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929-30 (Tex. 2011); *see also BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 63 (Tex. 2011) (claim untimely where it "could have been discovered with reasonable diligence before limitations expired").

The arbitral tribunal expressly found that Leslie Texas, Carpatsky's former president, "informed Mr. Kusch, the deputy head of Ukrnafta's board of foreign economic relations," about the change in Carpatsky's corporate structure by no later than 2000, the year Mr. Kusch died. Rabij Decl. Ex. A ¶¶ 192, 195; *see also id.* ¶ 192 (quoting Mr. Texas's testimony that he "clearly explained to, at that time, the foreign relationship department chief, Mr. Kusch, that we changed the corporate structure just simply because of these advantages [of] what the Delaware set-up means"). The tribunal's decision to credit that testimony was unequivocal: It found "no reason to doubt Mr. Texas' testimony or even suspect that he was not telling the truth." *Id.* ¶ 195. That testimony was the basis for the tribunal's finding that Ukrnafta "knew, and in any event could have known, about the change of CPC's place of registration." *Id.* ¶ 196.

Those findings preclude Ukrnafta from establishing its compliance with the statute of limitations. Each of Ukrnafta's claims stems from injuries Ukrnafta allegedly suffered as a result of its misimpression that it was dealing with CPC-TX rather than CPC-DE. *See, e.g.*, Compl. ¶¶ 20, 21, 26, 27 (describing purported injuries). According to the tribunal's findings, however, Ukrnafta knew or could have known about those facts no later than 2000: Mr. Texas ***specifically told*** Ukrnafta about the change in domicile by that year. Under the discovery rule, therefore, Ukrnafta's claims all accrued by that date – that is when Ukrnafta knew or could have known about the basis for its claims. Yet Ukrnafta did not file its Complaint until February 23, 2009 – more than ***eight years*** later. Compl. at 1.

15

Each of the three requirements for issue preclusion is satisfied. *First*, the issue decided by the tribunal is identical to the one relevant to the statute of limitations. The tribunal decided when Ukrnafta "knew, and in any event could have known," about the merger. Rabij Decl. Ex. A ¶ 196. That is the same issue that matters for the statute of limitations – when Ukrnafta's claims "could reasonably have been discovered." *Shell Oil*, 356 S.W.3d at 929-30.

*Second*, the issue of when Ukrnafta knew or could have known about the merger was actually litigated in the arbitration. Ukrnafta put its awareness of the merger (or lack thereof) directly at issue by claiming that Carpatsky was required to provide notice of its change of domicile but never did so. Rabij Decl. Ex. A ¶ 186. Carpatsky insisted, to the contrary, that it had informed Ukrnafta about the change. *Id.* ¶¶ 162, 165. The panel considered and resolved that issue in Carpatsky's favor. *Id.* ¶¶ 192-196.

*Third*, those findings were necessary to the decision. The tribunal's finding that Ukrnafta knew or could have known about the merger by no later than 2000 was one of the grounds on which it relied to reject Ukrnafta's argument that CPC-DE did not validly succeed to CPC-TX's rights because it never provided notice of the merger. Rabij Decl. Ex. A ¶¶ 192-202. To be sure, that was an alternative holding; the tribunal also held that Carpatsky had no duty to provide notice. *Id.* ¶¶ 186-191. But a finding may be "necessary to the decision" even if it supports only an alternative holding. *See Adaptix*, 2015 WL 12696219, at *3.

In short, the tribunal's finding that Mr. Texas informed Ukrnafta about the change in domicile by no later than 2000 precludes Ukrnafta from satisfying the statute of limitations. That alone warrants judgment in Carpatsky's favor.[3]

---

[3] Even apart from Mr. Texas's testimony, the tribunal found that Ukrnafta knew about the merger by no later than March 2005, when Ms. Vasylets – a Ukrnafta executive – prepared and sent a letter to the Ukrainian government discussing "the cooperation with 'Carpatsky Petroleum

B.    Each of Ukrnafta's Claims Is Precluded on the Merits

The tribunal's findings also foreclose each of Ukrnafta's claims for another reason:  They preclude Ukrnafta from proving one or more elements on the merits.

**Negligent Misrepresentation.**  The tribunal's finding that Ukrnafta suffered no harm from Carpatsky's change of domicile precludes Ukrnafta from proving pecuniary loss – a necessary element of negligent misrepresentation.  To prevail on a negligent misrepresentation claim, a plaintiff must show: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation."  *Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 313 (Tex. App. Dallas 2013, no pet.).  The tribunal's findings squarely bar Ukrnafta from showing that last element.

The tribunal specifically found that Ukrnafta suffered no injury as a result of Carpatsky's change in domicile.  The tribunal could "not identif[y] *any . . . possible harm*" that Ukrnafta suffered from the merger.  Rabij Decl. Ex. A ¶204 (emphasis added).  "[S]ince the merger was carried out in 1996, the Parties have actively continued their contractual relationship," and "[n]othing in relation to the way that business was conducted . . . changed."  *Id.* ¶¶204-205.  Moreover, the merger had "no impact on [Ukrnafta] as a creditor" of Carpatsky because Ukrnafta "was still dealing with a contracting partner with the same rights, obligations, liabilities

Co[rpo]ration (Delaware, USA)' " and noting that "*Carpatsky Petroleum Company was re-registered in the sate [sic] of Delaware, USA*."  Rabij Decl. Ex. A ¶201 (emphasis added by tribunal).  That document compels a finding that Ukrnafta's claims accrued no later than March 24, 2005 – a date sufficient to render all the claims other than fraud untimely.

and assets." *Id.* ¶206.  Those findings preclude Ukrnafta from showing the "pecuniary loss" necessary to establish negligent misrepresentation.

Once again, each of the requirements for preclusion is met.  The issue in the two proceedings – the presence or absence of harm – is the same.  That issue was actually litigated in the arbitration and addressed at length in the Award.  Rabij Decl. Ex. A ¶¶204-207.  And the issue was necessary to the decision because it was yet another alternative basis for the Award.

**Fraud.**  Ukrnafta's fraud claim is barred for similar reasons.  "The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001).  The tribunal's findings preclude Ukrnafta from showing at least the third and sixth of those elements.

The tribunal expressly found that Carpatsky had not acted with a culpable state of mind. "Mr. Texas credibly confirmed during the hearing that . . . there was never any intention by [Carpatsky] to deceive [Ukrnafta]."  Rabij Decl. Ex. A ¶197; *see also id.* ¶200 ("[Carpatsky's] conduct is not compatible with the alleged deliberate attempt to hide the facts . . . .").  That finding precludes Ukrnafta from proving scienter.  In addition, as already discussed, the tribunal found that Ukrnafta suffered no injury from Carpatsky's change in domicile.  That absence of injury is equally fatal to the fraud claim.

**Misappropriation of Trade Secrets.**  "Under Texas law, a plaintiff can recover for misappropriation of a trade secret by establishing: (1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or was discovered by improper

18

means; (3) the defendant used the trade secret without the plaintiff's authorization; and (4) the plaintiff suffered damages as a result." *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366-67 (Tex. App. Dallas 2009, writ denied). The tribunal's findings foreclose Ukrnafta from proving any of the last three elements.

The tribunal specifically found that "CPC-DE was the successor of CPC-TX and with the merger acquired all of the latter's rights and obligations." Rabij Decl. Ex. A ¶177. Ukrnafta concedes that CPC-TX was entitled to possess its trade secrets. Compl. ¶26. Under the tribunal's findings, therefore, CPC-DE succeeded to the right to possess those trade secrets. Those facts preclude Ukrnafta from showing either improper acquisition (element two) or improper use (element three). Moreover, once again, the tribunal's finding of no harm precludes Ukrnafta from showing any injury (element four).

**Tortious Interference with Contract.**  "[T]he elements of tortious interference . . . [are]: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). The tribunal's findings preclude Ukrnafta from showing the second and fourth elements.

Ukrnafta alleges that Carpatsky interfered with the JAA by dissolving CPC-TX, Ukrnafta's contractual counterparty. Compl. ¶40. But the tribunal found that "CPC-DE was the successor of CPC-TX and with the merger acquired all of the latter's rights and obligations." Rabij Decl. Ex. A ¶177. Thus, CPC-DE "both became a party to the initial JAA and acquired the legal capacity to enter into the Restated JAA as well as other addenda concluded." *Id.* ¶203. Those findings preclude Ukrnafta from showing any "act of interference" with the JAA (element two). Moreover, the tribunal's finding of no harm is fatal to this claim too (element four).

**Unjust Enrichment.**   "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."   *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). The Award precludes Ukrnafta's theory of unjust enrichment.

Ukrnafta alleges that Carpatsky was unjustly enriched because it "receiv[ed] well over $6 million in money and property . . . from the RC Field" and another "$70 million payment . . . in 2007 from Kuwait Energy, who purported to purchase [Carpatsky's] interest in the RC Field and in the JV."   Compl. ¶¶21-22.   The tribunal, however, found that CPC-DE acquired all of CPC-TX's rights in the merger.   Rabij Decl. Ex. A ¶177.   CPC-DE was therefore entitled to the benefits flowing from CPC-TX's interest in the RC Field and the joint venture, and cannot have been "unjustly" enriched merely because it received or transferred those benefits.

**Declaratory Judgment.**   Ukrnafta seeks a declaratory judgment that "the JAA is void and all of the amendments are void *ab initio*."   Compl. ¶43.   Such a judgment is indisputably precluded by the tribunal's findings that Carpatsky "became a party to the initial JAA and acquired the legal capacity to enter into the Restated JAA as well as other addenda" and "validly concluded the Restated JAA as well as the subsequent addenda **which are not null and void**."   Rabij Decl. Ex. A ¶203 (emphasis added).

**Injunction.**   The claim for an injunction merely seeks to restrain Carpatsky's allegedly improper use of Ukrnafta's trade secrets.   Compl. ¶¶46-47.   Thus, if the trade secret claim fails, the injunction claim necessarily fails as well.

## III.   UKRNAFTA'S CLAIMS ARE BARRED BY CLAIM PRECLUSION

Wholly apart from issue preclusion, each of Ukrnafta's claims is also independently barred by claim preclusion.   All of Ukrnafta's claims relating to the RC Field could and should have been brought in the arbitration – they all arise out of the same nucleus of operative facts as

the claims resolved in the arbitration, and the arbitral tribunal unquestionably had jurisdiction to hear those claims.  To the extent the Complaint seeks to avoid that result by referencing the parties' earlier joint venture to develop the BB Field, those claims fail on other grounds:  They are inadequately pled and, in any event, cannot be resolved in this Court.

### A.    Ukrnafta's Claims Relating to the RC Field Are Precluded Because They Could and Should Have Been Raised in the Arbitration

"Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit."  *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999).  The requirements are:  "(1) The parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."  *Id.*; *see also Murchison Capital*, 625 F. App'x at 621 (applying same elements to arbitral award).  "To determine whether two suits involve the same claim under the fourth element, . . . the critical issue is whether the two actions under consideration are based on 'the same nucleus of operative facts.' "  *Southmark*, 163 F.3d at 934 (emphasis omitted); *see also Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) (courts "ask[ ] whether the facts in the two suits are 'related in time, space, origin, or motivation, whether they form a convenient trial unit,' in short, whether they are based on the 'same nucleus of operative facts' " (citation omitted)).

Each of those requirements is met here.  The relevant parties to the arbitration and the litigation are identical:  Carpatsky and Ukrnafta.  Rabij Decl. Ex. A at 1; Compl. at 1.[4]  The

---

[4] Ukrnafta's Complaint also names as defendants Taurex Resources PLC (Carpatsky's former parent company), Robert Bensh (Taurex's president), and Kuwait Energy Company, K.S.C. (Carpatsky's current parent company).  Compl. ¶¶ 5-7.  Kuwait Energy has never been served in this action.  Moreover, this Court previously held that "each defendant is either a predecessor or

Award was rendered by a tribunal of competent jurisdiction – this Court concluded as much when it compelled Ukrnafta to arbitrate its claims.  Dkt. 11 at 7.  And the tribunal's decision was its "Final Award" on the merits.  Rabij Decl. Ex. A at 1.

The claims that Ukrnafta presses here also arise out of the "same nucleus of operative facts" as those resolved in the arbitration.  One of the key issues in the arbitration was what effect – if any – Carpatsky's change of domicile had on the parties' rights and obligations under the JAA and its amendments.  Rabij Decl. Ex. A ¶¶155-208.  Ukrnafta defended against Carpatsky's claims by arguing that CPC-DE never validly succeeded to CPC-TX's rights – in particular because it never provided notice of its change in domicile.  *Id.* ¶186.  The tribunal analyzed that argument at length, considering whether Carpatsky had any obligation to provide notice of the change in domicile, *id.* ¶¶186-191; whether Carpatsky in fact disclosed the change, *id.* ¶¶192-202; whether Carpatsky intentionally misled Ukrnafta about the change, *id.* ¶¶196-197, 200; and whether Ukrnafta suffered any harm, *id.* ¶¶204-207.  Carpatsky's change in domicile was thus front and center in the arbitration.

All of Ukrnafta's claims in this lawsuit arise out of that same nucleus of operative facts.  Ukrnafta's negligent misrepresentation and fraud claims both rely on the allegation that Carpatsky misled Ukrnafta about its change in domicile.  Compl. ¶¶29, 32.  The trade secret and injunction claims concern whether, as a result of the merger, CPC-DE validly succeeded to CPC-

---

successor in interest to Carpatsky Texas and . . . Ukrnafta must pursue its claims against them in arbitration."  Dkt. 11 at 7 (footnote omitted).  The same logic dictates that these parties are in privity with Carpatsky for preclusion purposes.  *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (successors in interest in privity); *Grynberg v. BP, P.L.C.*, 855 F. Supp. 2d 625, 649 (S.D. Tex. 2012) (finding that the "relationship between a parent company and its wholly owned subsidiary meets the privity requirements for purposes of *res judicata*"), *aff'd*, 527 F. App'x 278 (5th Cir. 2013); *Everhart v. Citibank, N.A.*, No. H-13-2752, 2015 WL 12805172, at *3 (S.D. Tex. Mar. 30, 2015) (similar).  In any event, whether or not Taurex and Bensh are entitled to invoke the *res judicata* effect of Carpatsky's arbitral award, there is no question that Carpatsky itself may do so.

TX's right to possess and use the trade secrets that Ukrnafta provided to CPC-TX. *Id.* ¶¶ 37, 46. The tortious interference claim concerns whether Carpatsky interfered with the JAA by changing its domicile, *id.* ¶ 40; the unjust enrichment claim turns on whether CPC-DE succeeded to CPC-TX's right to derive certain benefits from the JAA, *id.* ¶ 41; and the declaratory judgment claim concerns whether the change in domicile rendered the JAA invalid, *id.* ¶ 43. This Court thus recognized when it granted Carpatsky's motion to stay that this lawsuit "center[s] around the transfer of title from Carpatsky Texas to Carpatsky Delaware and the consequences of that transfer." Dkt. 11 at 7. That is the exact same nucleus of facts at issue in the arbitration.

That Ukrnafta may have invoked different legal theories is beside the point. For purposes of claim preclusion, "the critical issue is not the relief requested or the theory asserted" but whether the two proceedings are based "on the same nucleus of operative facts." *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994). The doctrine thus "bars all claims that were or ***could have been*** advanced in support of the cause of action." *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) (en banc). A contrary rule would allow parties to litigate different theories based on the same facts *seriatim*, undermining the core purposes of claim preclusion to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Finally, all of the claims that Ukrnafta now asserts could have been brought in the arbitration, at least to the extent they relate to the JAA or the RC Field. The JAA's arbitration clause is very broad, providing that any "disputes" or "disagreements" shall be referred to arbitration, without any limitation as to the type or subject-matter of the claim. Rabij Decl. Ex. A ¶ 54; Rabij Decl. Ex. F § 20.4-20.5; Rabij Decl. Ex. E § 20.3-20.5. That expansive language covers all the claims that Ukrnafta alleges here. "Where . . . an arbitration provision purports to

cover all disputes 'related to' or 'connected with' the agreement, . . . the provision is 'not limited to claims that literally arise under the contract, but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.'" *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002). All of Ukrnafta's claims have a "significant relationship" to the JAA.

This Court concluded as much when it granted Carpatsky's motion to stay. The Court recognized that the arbitration agreement "'embrace[d] all disputes between the parties having a significant relationship to the contract regardless of the label attached.'" Dkt. 11 at 7. Based on that rule, the Court held that "the claims arising from the transfer of Carpatsky Texas's interest and the alleged dissemination of the related trade secrets fall within the scope of the arbitration clause." *Id.* at 7-8. "[A]lthough Ukrnafta has recast its claims as torts, the alleged dissemination of trade secrets and fraud allegations are based on the contractual relationship between Ukrnafta and Carpatsky." *Id.* at 6. The same reasoning that justified this Court's decision to compel arbitration of those claims establishes that Ukrnafta had the opportunity to arbitrate those claims for purposes of claim preclusion.

## B. Ukrnafta's Claims Relating to the BB Field Should Be Dismissed

In an apparent effort to avoid the broad scope of the JAA's arbitration clause, Ukrnafta's Complaint includes scattered references to the earlier joint venture the parties formed in 1994 to develop a different property, the BB Field. *See, e.g.*, Compl. ¶ 10. But even assuming the Stockholm tribunal lacked jurisdiction to decide claims relating to that separate joint venture, those claims should be dismissed on multiple other grounds.

### 1. The BB Field Claims Are Inadequately Pled

Ukrnafta's allegations with respect to the BB Field should be dismissed because they are so skeletal and conclusory that they do not meet even minimal pleading standards. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Ukrnafta offers nothing more than that.

For example, Ukrnafta's negligent misrepresentation and fraud claims both fail with respect to the BB Field because Ukrnafta does not allege reliance.  "Both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance."  *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).  With respect to the **RC Field**, Ukrnafta alleges that it relied on information Carpatsky provided about its domicile "in proceeding with the RC field project under the auspices of the JAA" and in "continuing to provide CPC-Delaware with trade secrets and confidential information; continuing to approve distributions of joint activity profits to defendants, and continuing to share benefits under the JAA with defendants."  Compl. ¶¶29-30, 33.  Nowhere does the Complaint allege any similar acts of reliance in connection with the **BB Field**.  Carpatsky entered into the joint venture in 1994, years before changing domicile.  Compl. ¶10.  So far as the Complaint alleges, Ukrnafta never did ***anything*** in connection with the BB Field in reliance on Carpatsky's alleged misstatements about its domicile years later, after it moved to Delaware.  That omission is fatal.

The trade secret claim fails because Ukrnafta never alleges that Carpatsky obtained any specific trade secret concerning the BB Field or the joint venture.  The Complaint alleges that, "[p]ursuant to the **terms of the JAA**, Ukrnafta shared with CPC-Texas a wealth of trade secrets and confidential business information, . . . includ[ing] detailed geologic data and surveys, sufficient to give CPC-Texas ***detailed technical knowledge of the RC field***."  Compl. ¶24 (emphasis added).  By contrast, the Complaint is silent concerning any specific trade secrets relating to the BB Field.  And because the claim for an injunction merely seeks to restrain improper possession or use of the trade secrets, it fails for the same reason.  *Id.* ¶¶46-47.

The tortious interference claim alleges that Carpatsky interfered with "the September 1995 JAA." Compl. ¶40. And the declaratory judgment claim alleges that "the JAA is void and all of the amendments are void *ab initio*." *Id.* ¶43. By their terms, those claims relate solely to the JAA and have nothing to do with the earlier joint venture or the BB Field.

That leaves only Ukrnafta's claim for unjust enrichment. That claim is invalid on its face. Under Texas law, "there can be no recovery for unjust enrichment if the same subject is covered by [an] express contract." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (quotation marks and alteration omitted). Here, there are multiple express contracts that cover the dispute – the joint venture agreement and the JAA. Compl. ¶¶10, 11. Accordingly, this claim too should be dismissed.

### 2. The BB Field Claims Are Subject to Arbitration

Even if Ukrnafta had managed to allege a facially valid claim with respect to the BB Field, the claim would still have to be dismissed due to the arbitration clause in the joint venture agreement. That arbitration clause provides that "[a]ny disputes and disagreements[ ] and controversies [ar]ising from or connected with this Agreement" shall be settled by "the International Commercial Arbitration Court with the Chamber of Commerce and Industry of Ukraine." Rabij Decl. Ex. C §18.2. Under both the New York Convention and the Federal Arbitration Act, that provision deprives this Court of authority to adjudicate the claims. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") art. II(3), June 10, 1958, 21 U.S.T. 2517, 2519 (Kry Decl. Ex. B) (where parties have agreed to arbitrate, the court "shall, at the request of one of the parties, refer the parties to arbitration"); 9 U.S.C. §3 (court "shall on application of one of the parties stay the trial of the action until such arbitration has been had"); *id.* §§201, 208. Accordingly, this Court lacks authority to resolve any claims with respect to the joint venture or the BB Field.

In fact, this Court has already decided this precise issue on the motion to stay that Carpatsky filed in 2009.  In that motion, Carpatsky asked this Court to stay Ukrnafta's lawsuit based on both the arbitration clause in the Joint Activity Agreement and the arbitration clause in the joint venture agreement.  Dkt. 6 at 10-13.  This Court granted the motion, noting that "none of the parties dispute[d] that the JV and the JAA were valid," that "both contracts contain an arbitration clause," and that the parties therefore "had a valid agreement to arbitrate."  Dkt. 11 at 6.  Over the nine years since this Court entered that order, the parties arbitrated their dispute with respect to the JAA and the RC Field in Stockholm, the tribunal entered a final award, and Ukrnafta brought various challenges to that award.  Rabij Decl. Ex. A.  But Ukrnafta has never once attempted to arbitrate any disputes in the Ukraine under the joint venture agreement's separate arbitration clause.  Thus, with respect to the joint venture agreement and the BB Field, what this Court held nine years ago remains equally true today:  The Court lacks authority to resolve those claims because the parties agreed to arbitrate them.

At this point, the appropriate course with respect to those claims is to dismiss rather than stay.  Although the Federal Arbitration Act refers to a "stay" pending arbitration, 9 U.S.C. § 3, the Fifth Circuit has made clear that this provision "was not intended to limit dismissal of a case in the proper circumstances."  *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).  In particular, "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."  *Id.*  When "all issues raised in [an] action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose."  *Id.*; *see also Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) ("[W]e are bound by our precedent which states that dismissal is appropriate 'when all of the issues raised in the district court must be submitted to arbitration.' " (emphasis omitted)); *Armstrong v. Assocs. Int'l Holdings*

*Corp.*, 242 F. App'x 955, 959 (5th Cir. 2007) ("[T]he Fifth Circuit encourages district courts to dismiss cases with nothing but arbitrable issues because staying the action serves no purpose.").

Dismissal is plainly appropriate here.  As in *Alford*, **all** the claims remain subject to arbitration (apart from the ones that were or could have been brought in Stockholm).  Retaining jurisdiction would thus serve no purpose.  In addition, there is a compelling factor favoring dismissal that was not present in *Alford*:  This Court has already stayed the claims relating to the BB Field for **nine years**.  Ukrnafta has not done anything to commence arbitration on those claims during that entire period.  In those circumstances, granting a further stay would reward Ukrnafta for its delay.  The Court should accordingly dismiss.  *See, e.g.*, *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999) (no abuse of discretion in dismissing rather than staying where plaintiff "chose to file suit in federal court approximately one year after [the dispute arose] . . . in circumvention of the express provisions" of an arbitration clause); *Sheikh v. Cisco Sys., Inc.*, 472 F. App'x 787, 788 (9th Cir. 2012) (affirming dismissal for failure to prosecute after party failed to act on order compelling arbitration).[5]

*     *     *

Ukrnafta contracted for binding arbitration, participated in that arbitration over several years, and lost.  It now seeks to relitigate the same issues and claims before this Court.  Preclusion doctrines exist precisely to prevent that type of serial, vexatious litigation.  The Court should grant summary judgment in Carpatsky's favor based on the preclusive effects of the arbitral award, or alternatively grant summary judgment to the extent the claims relate to the RC Field and the JAA and otherwise dismiss the claims.

---

[5] Of course, Carpatsky reserves the right to oppose any arbitral proceedings concerning the BB Field on any appropriate ground, including the expiration of the statute of limitations and the preclusive effects of the Stockholm Award.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD ENTER JUDGMENT ON ITS ORDER CONFIRMING THE AWARD UNDER RULE 54(b)

If the Court does not dismiss Ukrnafta's claims in their entirety, it should enter a separate judgment on its order confirming the Award under Federal Rule of Civil Procedure 54(b).  Rule 54(b) provides that, "[w]hen an action presents more than one claim for relief," a court "may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  Rule 54(b) strikes a balance between two policies: the "longstanding federal policy against piecemeal appeals" and the "injustice that might result if judgment on a distinctly separate claim were delayed until adjudication of an entire case was complete."  *Dole v. Phoenix Roofing, Inc.*, 922 F.2d 1202, 1207 (5th Cir. 1991).

"[A] district court deciding whether to certify a judgment under Rule 54(b) must make two determinations."  *Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc.*, 170 F.3d 536, 539 (5th Cir. 1999).  The court must first "determine that it is dealing with a 'final judgment.'"  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980).  For purposes of Rule 54(b), a final judgment is "'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'"  *Id.*  Next, the court must "determine whether there is any just reason for delay."  *Id.* at 8.  Pursuant to that inquiry, "[t]he district court must weigh a variety of factors."  *Ackerman v. FDIC*, 973 F.2d 1221, 1224 (5th Cir. 1992).

Both requirements are met here.

### A.   The Confirmation Order Is a "Final Judgment" for Purposes of Rule 54(b)

This Court's confirmation order is a final judgment for purposes of Rule 54(b) because it represents the Court's "ultimate disposition" of Carpatsky's claim for confirmation of the Award.  *See Curtiss-Wright*, 446 U.S. at 7 (order is "final" if it is "an ultimate disposition of an

individual claim"). Courts have repeatedly found that orders confirming arbitral awards qualify for treatment as "final judgments" under Rule 54(b). *See, e.g.*, *Halliburton Energy Servs., Inc. v. NL Indus.*, No. H-05-4160, 2008 WL 2697345, at *5 (S.D. Tex. July 2, 2008) (order confirming awards was a "final judgment" because it "resolved the claims between [the parties in arbitration] . . . [and] addressed and resolved [the respondent's] objections to the Awards"); *Himark Biogas, Inc. v. W. Plains Energy LLC*, No. 14-1070, 2016 WL 3654764, at *1 (D. Kan. July 8, 2016) ("no dispute" that confirmation order "constitutes a final judgment"). The first requirement for Rule 54(b) certification is thus met.

### B.   There Is No Just Reason for Delay in Enforcing the Award

Nor is there any just reason for delay. Orders confirming arbitral awards present unusually compelling candidates for Rule 54(b) certification. The whole point of the New York Convention is to provide an expedited mechanism by which prevailing parties in arbitration can seek prompt recognition and enforcement of their awards. Delaying enforcement pending the adjudication of other claims would frustrate that regime.

### 1.   *The Fundamental Purposes of the New York Convention Weigh Strongly in Favor of Entering a Separate Judgment*

One of the driving goals of arbitration is to provide a cheaper, faster alternative to litigation. *See Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1022 (5th Cir. 1990) (important "advantage[] of arbitration" is "speed"); *Roberts v. A.G. Edwards & Sons, Inc.*, No. B-06-17, 2007 WL 597371, at *7 (S.D. Tex. Feb. 21, 2007) (purpose of arbitration is "to promote speed and efficiency"). Consistent with that overarching goal, the New York Convention provides a streamlined mechanism for enforcing awards in other countries, subject only to the narrow exceptions in Article V. Confirmation of an award under the New York Convention is designed to be a "***summary proceeding*** that merely makes what is already a final

arbitration award a judgment of the court." *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 111 (2d Cir. 2016) (emphasis added); *see also Comm'ns Imp. Exp. S.A. v. Republic of Congo*, 757 F.3d 321, 332 (D.C. Cir. 2014) (confirmation a "summary process").

Those principles make Rule 54(b) certification especially appropriate in New York Convention cases.  Forcing a party that has already won an arbitration and obtained an order confirming the award to delay enforcement until the court decides other claims would undermine the Convention's summary confirmation process.  The Convention does not envision a regime in which a party can drag out enforcement of an award indefinitely by litigating other claims.

Courts routinely invoke Rule 54(b) to enter judgments on orders confirming arbitral awards despite the pendency of other claims.  In *Halliburton Energy Services, Inc. v. NL Industries*, No. H-05-4160, 2008 WL 2697345 (S.D. Tex. July 2, 2008), for example, the court entered judgment on a confirmation order even though other claims were still pending.  *Id.* at *5, *15.  As the court explained, "[a]rbitration is intended to be faster than litigation," with only "'the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway.'"  *Id.* at *9.  ***The nature of arbitration and its promise of delivering quick resolution of claims weighs in favor of prompt enforceability of the arbitrated claims while litigation of the nonarbitrable claims proceeds.***  *Id.* (emphasis added).

Similarly, in *HRD Corp. v. Bagherzadeh*, No. H-10-1747, 2011 WL 1157544 (S.D. Tex. Mar. 24, 2011), the court entered a Rule 54(b) judgment on its order confirming an award despite the pendency of other claims.  *Id.* at *9.  Arbitration, the court noted, is supposed to be "'a speedy and informal alternative to litigation,'" and "applications for an order confirming an arbitration award deserve 'streamlined treatment.'"  *Id.*  The court thus found "no just reason for delaying final judgment with respect to the court's Order confirming the arbitration award."  *Id.*;

*see also Wing v. J.C. Bradford & Co.*, 678 F. Supp. 622, 627 (N.D. Miss. 1987) (entering "final judgment on the arbitration award pursuant to Rule 54(b)").

### 2.    *Other Factors Favor Entry of Judgment*

Other considerations also favor the entry of a Rule 54(b) judgment.  One key factor is "the relationship between the adjudicated and unadjudicated claims."  *Halliburton Energy Servs.*, 2008 WL 2697345, at *6.  That factor weighs heavily in favor of Rule 54(b) certification here because the legal issues relevant to whether the Award was properly confirmed are different from those pertinent to the remaining claims.

As this Court previously explained, courts reviewing foreign awards under the New York Convention "'may only refuse enforcement under the specific grounds enumerated in Article V.'"  Dkt. 53 at 6 (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004)).  Those grounds relate to such matters as the integrity of the arbitral process and the validity of the arbitration agreement – ***not*** the underlying merits of the dispute.  *See* New York Convention art. V(1)-(2), 21 U.S.T. at 2520.  By contrast, adjudication of Ukrnafta's remaining claims will involve different legal issues: whether the claims are foreclosed by issue or claim preclusion, and if not, the underlying merits.  Dkt. 53 at 41-42.

By nature, those are distinct inquiries.  As the court noted in *Halliburton Energy Services*, "[t]he issue on appeal with respect to the confirmation of the Awards will be whether this court properly confirmed the Awards, not the merits of the [underlying] disputes."  2008 WL 2697345, at *6.  "'Review of the arbitration award . . . is limited to those circumstances . . . concern[ing] the conduct of the arbitrator and the circumstances under which the award [was] obtained, not the merits of the arbitrator's decision.'"  *Id.* at *7 (emphasis omitted).  "The relationship of the pending claims to the resolved claims weighs in favor of granting certification under Rule 54(b)."  *Id.*; *see also Forest Elec. Corp. v. HCB Contractors*, No. 91-1732, 1995 WL 429141, at

*2 (E.D. Pa. July 20, 1995) (certifying confirmation order because "all of the issues relating to the conduct of the arbitration and the Arbitration Award have been determined" and "[t]he unarbitrated claims are distinct matters that do not affect . . . the confirmation of the Award"); *Fitigues, Inc., LRV v. Varat Enters., Inc.*, 813 F. Supp. 1336, 1339 (N.D. Ill. 1992) (similar).

Other important factors are "whether the issues on appeal could be mooted by future developments in the district court" and "whether the appellate court might be obliged to consider the same issues twice." *Halliburton Energy Servs.*, 2008 WL 2697345, at *7-8. Neither risk is present here. Even if Ukrnafta's remaining claims somehow proceed, they will have no impact on whether this Court properly confirmed the Award. *See id.* at *7 (issues on appeal "unlikely to be mooted" because they concern "whether confirmation was proper given the statutory grounds for relief from an arbitration award"). And there is no risk of the appellate court reviewing the same issue twice, for essentially the same reasons. *See id.* at *8 ("Whether this court properly confirmed the Awards is different from the issues in the remaining claims . . . .").

Finally, practical considerations weigh strongly in favor of an immediate judgment. The prospect that Ukrnafta might recover a judgment on its claims that it could set off against the Award is – to put it charitably – remote. Even if Ukrnafta somehow overcame the preclusive effects of the Award, it would still have to persuade this Court to accept the same hypertechnical, overly formalistic arguments about Carpatsky's change of domicile that the tribunal soundly rejected. Objectively viewed, those claims simply are not substantial. They are a transparent attempt by a contracting party to escape its obligations based on corporate technicalities.

Conversely, Carpatsky would face serious hardship if it were forced to endure still more years of litigation and delay before it could enforce the Award. This case has now been pending for almost **nine years**. For most of that time, the proceedings were stayed without bond while Ukrnafta pursued a variety of meritless legal challenges to the Award in Sweden, including an

attempt to secure extraordinary review by the Supreme Court of Sweden that never had any serious chance of success.  Dkt. 29; Dkt. 40.  Confirmation is supposed to be a "***summary proceeding*** that merely makes what is already a final arbitration award a judgment of the court." *Corporación Mexicana de Mantenimiento Integral*, 832 F.3d at 111 (emphasis added).  Nine years is not "summary" by any stretch.  Delaying enforcement of the Award ***still more years*** while Ukrnafta pursues its baseless claims in this Court would only further frustrate Carpatsky's ability to recover the money it is owed.  For that reason too, the Court should enter an immediate judgment on its confirmation order under Rule 54(b).

## **CONCLUSION**

The Court should grant summary judgment in Carpatsky's favor on all of Ukrnafta's claims, or alternatively grant summary judgment on the claims to the extent they relate to the RC Field and dismiss the claims to the extent they relate to the BB Field.   In the alternative, the Court should enter judgment pursuant to Rule 54(b) on its order confirming the Award.

Dated:    February 2, 2018

Respectfully submitted,

  /s/ Robert K. Kry
Robert K. Kry
D.C. Bar #490545
MOLO LAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Ave., N.W.
Washington, D.C.  20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

Philip Hilder
State Bar No. 09620050
SD Tex. No. 2474
Stephanie McGuire
State Bar No. 11100520
SD Tex. No. 437432
HILDER & ASSOCIATES, P.C.
819 Lovett Blvd.
Houston, Texas  77006
Tel.: (713) 655-9111
Fax: (713) 655-9112
philip@hilderlaw.com
stephanie@hilderlaw.com

Sara E. Margolis
N.Y. Bar #5237508
MOLO LAMKEN LLP
430 Park Avenue, Floor 6
New York, New York  10022
Tel.: (212) 607-8172
Fax: (212) 607-8161
smargolis@mololamken.com

*Attorneys for Defendant Carpatsky Petroleum Corporation*

35