UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OJSC UKRNAFTA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:09-CV-891 |
| | ) | |
| CARPATSKY PETROLEUM | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**UKRNAFTA'S RESPONSE TO DEFENDANT
CARPATSKY PETROLEUM CORPORATION'S
MOTION FOR SUMMARY JUDGMENT,
RENEWED MOTION TO DISMISS,
AND MOTION FOR JUDGMENT UNDER RULE 54(b)**

Of Counsel:

Dori K. Goldman                          R. Paul Yetter
State Bar No. 24041274                   State Bar No. 22154200
Federal I.D. No. 591632                  Federal I.D. No. 3639
Christian J. Ward                        Yetter Coleman LLP
State Bar No. 24033434                   811 Main Street, Suite 4100
Federal I.D. No. 1012974                 Houston, Texas 77010
Elizabeth Wyman                          (713) 632-8000
State Bar No. 24088688                   (713) 632-8002 (Fax)
Federal I.D. No. 2294662
Yetter Coleman LLP                       Attorney-In-Charge
811 Main Street, Suite 4100              Plaintiff OJSC Ukrnafta
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 4

INTRODUCTION ............................................................................................ 6

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 7

STATEMENT OF THE ISSUES ......................................................................... 7

SUMMARY OF THE ARGUMENT ..................................................................... 7

ARGUMENT AND AUTHORITIES ..................................................................... 9

I.      Standard of Review ........................................................................... 9

II.     The Court Has Discretion in Determining Whether Preclusion Applies to Arbitral Findings ........................................................................... 9

        A.    Discretion Applies in Cases of Defensive Preclusion ........................... 9

        B.    This Court Should Exercise Its Discretion Based on Procedural Issues in the Arbitration. .......................................................... 10

III.    Issue Preclusion Does Not Apply to Ukrnafta's Claims ............................. 12

        A.    The Arbitral Tribunal's Alternative Holding Is Insufficient to Preclude Ukrnafta's Claims on Timeliness Grounds ................................ 12

        B.    Ukrnafta's Claims Are Not Precluded on Their Merits. ......................... 16

              1.    Ukrnafta's Injury Has Not Been Arbitrated ............................... 16

              2.    CPC-Delaware's Knowledge or Recklessness Regarding False Representations Has Not Been Arbitrated. ........................ 17

              3.    CPC-Delaware's Improper Acquisition and Use of Trade Secrets Has Not Been Arbitrated ........................................ 18

              4.    Ukrnafta's Request for Permanent Injunction. ........................ 20

IV.     Claim Preclusion Does Not Apply to Ukrnafta's Claims. ........................... 20

V.      The Arguments Regarding the BB Field Are a Red Herring. ....................... 21

VI.     CPC-Delaware's Motion for Certification of the Arbitral Judgment Under Rule 54(b) Must Be Denied. .......................................................... 22

        A.    CPC-Delaware's Argument for Rule 54(b) Certification Conflicts With Its Own Argument for Preclusion. ............................................ 23

        B.    The Potential For a Set-Off Against the Arbitral Award Weighs Against Certification. ...................................................... 24

C.     CPC-Delaware Has Not Demonstrated Any Significant Hardship or Injustice That Could Result From Delay. ............................................................ 25

CONCLUSION AND PRAYER ............................................................................................ 26

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abecassis v. Wyatt*,
H-09-3884, 2010 WL 2671576 (S.D. Tex. June 30, 2010) .........................................23, 24, 25

*Matter of Baudoin*,
981 F.2d 736 (5th Cir. 1993) ....................................................................................................20

*Matter of Braniff Airways, Inc.*,
783 F.2d 1283 (5th Cir. 1986) ..................................................................................................20

*Brown v. Felson*,
442 U.S. 127 (1979)...................................................................................................................21

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980).................................................................................................................23, 25

*Eldredge v. Martin Marietta Corp.*,
207 F.3d 737 (5th Cir. 2000) ..............................................................................................24, 25

*Fontenot v. Upjohn Co.*,
780 F.2d 1190 (5th Cir. 1986) ....................................................................................................9

*Grimes v. BNSF Ry. Co.*,
746 F.3d 184 (5th Cir. 2014) ...................................................................................9, 10, 11, 12

*Halliburton Energy Serv., Inc. v. NL Indus.*,
No. H-05-4160, 2008 WL 2697345 (S.D. Tex. July 2, 2008) ...............................................25

*Hicks v. Quaker Oats*,
662 F.2d 1158 (5th Cir. 1981) ............................................................................................14, 15

*Malacara v. Garber*,
353 F.3d 393 (5th Cir. 2003) ....................................................................................................11

*Nichamoff v. CitiMortgage, Inc.*,
H-12-1039, 2012 WL 6727121 (S.D. Tex. Dec. 27, 2012) ....................................................25

*Pace v. Bogalusa City Sch. Bd.*,
403 F.3d 272 (5th Cir. 2005) .......................................................................................12, 16, 18

*In re Southmark*,
163 F.3d 925 (5th Cir. 1999) ......................................................................................................7

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)..........................................................................................................9

*United States v. Shanbaum*,
  10 F.3d 305 (5th Cir. 1994) ...........................................................................................20

*Universal Am. Barge Corp. v. J-Chem, Inc.*,
  946 F.2d 1131 (5th Cir. 1991) .....................................................................................9, 10

**Rules**

Fed. R. Civ. P. 54(b) ...................................................................................... *passim*

Fed. R. Civ. P. 56(a) ...................................................................................9, 11

Plaintiff OJSC Ukrnafta ("Ukrnafta") responds to Defendant Carpatsky Petroleum Corporation's ("CPC-Delaware") Motion for Summary Judgment, Renewed Motion to Dismiss, and Motion for Judgment Under Rule 54(b), incorporating herein the attached declaration and exhibits, and would respectfully show as follows:

## INTRODUCTION

CPC-Delaware has asked this Court on three previous occasions to dismiss Ukrnafta's claims, and each time the Court has declined to do so. Now, in its fourth attempt, CPC-Delaware continues to fall short of the standard required for summary judgment or dismissal.

CPC-Delaware has taken on the burden of proving that Ukrnafta's claims are precluded based on Swedish arbitral proceedings. It cannot meet this burden. Neither issue preclusion nor claim preclusion apply, as the claims involved in arbitration differed both legally and factually from the claims Ukrnafta has brought in this Court. The arbitration considered whether CPC-Delaware was permitted to "top up" its investment in the exploration of certain Ukrainian oil fields with Ukrnafta, after repeatedly failing to meet its financing obligations under a Joint Activity Agreement ("JAA"). Ukrnafta's claims, on the other hand, are unrelated to this investment issue, and instead allege that CPC-Delaware used fraud and misrepresentation to gain access to Ukrnafta's trade secrets and other benefits.

CPC-Delaware's alternative argument—that this Court should certify the arbitral award as a final judgment under Rule 54(b)—is likewise unpersuasive, as well as inconsistent with its arguments for preclusion. CPC-Delaware contends that the arbitral award precludes Ukrnafta's claims, yet it simultaneously argues that certification is appropriate because the validity of the award is a separate issue from the validity of Ukrnafta's claims. Moreover, CPC-Delaware fails to offer any explanation of the hardship it would suffer should the case take the normal course

through trial and appeal, and therefore the extraordinary step of certifying the award is unwarranted.

## NATURE AND STAGE OF THE PROCEEDINGS

Ukrnafta incorporates by reference its statement of the factual background to this dispute found in Plaintiff's Original Complaint (Dtk. #1 Ex. D), Motion for Preliminary Injunction (Dkt. #3), and Ukrnafta's Response to Defendant Carpatsky Petroleum Corporation's Motion to Confirm Arbitration Award and Dismiss Plaintiff's Claims with Prejudice (Dkt. #22), and related exhibits.

CPC-Delaware has previously moved to dismiss all of Ukrnafta's claims on three occasions. (Dkt. #21, 33, and 43). As to its most recent effort, this Court found the briefing insufficient for a ruling. (Dkt. #53). CPC-Delaware has now filed a renewed motion that seeks to dismiss Ukrnafta's claims based on preclusion, even though the claims have never been litigated nor addressed in arbitration.

## STATEMENT OF THE ISSUES

Ukrnafta's claims, which have been neither litigated nor arbitrated, are not subject to preclusion. *See In re Southmark*, 163 F.3d 925, 932-35 (5th Cir. 1999). Entry of judgment on this Court's order confirming the arbitral award is unwarranted under Federal Rule of Civil Procedure 54(b), as CPC-Delaware cannot show there is "no just reason for delay." FED. R. CIV. P. 54(b).

## SUMMARY OF THE ARGUMENT

The summary judgment standard imposes on CPC-Delaware the obligation to prove each element of its affirmative defenses of issue preclusion and claim preclusion. It cannot satisfy this standard.

There is no issue preclusion because the Arbitral Tribunal did not resolve, or need to resolve, the elements of Ukrnafta's claims. For instance, it did not need to decide when Ukrnafta learned of CPC-Delaware's change in corporate structure; whether Ukrnafta was harmed by this change; whether CPC-Delaware knowingly or recklessly made false representation; or the facts relating to the improper acquisition or use of Ukrnafta's trade secrets. Where it was not necessary for the Tribunal to consider these issues, preclusion does not apply.

Similarly, claim preclusion does not apply, because the Tribunal did not address Ukrnafta's claims. The "nucleus of facts" surrounding CPC-Delaware's failure to invest in the Ukrainian oil fields is separate from the "nucleus of facts" surrounding its wrongful acquisition of trade secrets, profits, and other benefits.

Next, CPC-Delaware's attempt to parse Ukrnafta's claims into the "BB Field claims" and the "RC Field claims"—and to dismiss the alleged "BB Field claims" —misconstrues the facts of the case. Ukrnafta's claims allege a broad misrepresentation as to the parties involved in two joint agreements and amendments. CPC-Delaware's recategorization of the claims between fields ignores this broader pattern of behavior and subsequent harm to Ukrnafta.

Finally, certification of a final judgment as to the arbitral award is inappropriate under Federal Rule of Civil Procedure 54(b). CPC-Delaware's argument for Rule 54(b) certification is inconsistent with its arguments for preclusion. If the arbitral award is the basis for CPC-Delaware's preclusion argument, then the appeal regarding the award could impact the litigation of the preclusion issue, rendering certification inappropriate. In addition, Ukrnafta's claims could result in an award against CPC-Delaware, which would have to be set-off against the arbitral award. The piecemeal approach to appealing these two awards would be inefficient, and it may force Ukrnafta to pay an award, then later try to recoup its own funds. As CPC-Delaware has

demonstrated no hardship supporting certification, the case should follow the standard procedure through trial and appeals.

**ARGUMENT AND AUTHORITIES**

## I.      Standard of Review

A court may grant summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Claim preclusion and issue preclusion are affirmative defenses, and CPC-Delaware bears the burden to establish all necessary elements. *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). Therefore, in asserting these affirmative defenses, CPC-Delaware "must establish beyond peradventure all of the essential elements of the . . . defense[s] to warrant judgment in [its] favor." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986).

## II.     The Court Has Discretion in Determining Whether Preclusion Applies to Arbitral Findings.

### A.      Discretion Applies in Cases of Defensive Preclusion.

The Fifth Circuit has recognized that, although "arbitral proceedings *can* have preclusive effect" in subsequent litigation, "the decision to apply it is within the discretion of the trial court." *Grimes v. BNSF Ry. Co*., 746 F.3d 184, 188 (5th Cir. 2014) (emphasis in original). Further, this discretion is "broad" in the case of "arbitral findings." *Universal Am. Barge Corp. v. J-Chem, Inc*., 946 F.2d 1131, 1137 (5th Cir. 1991).

CPC-Delaware has implied that the court only has discretion in cases of non-mutual, offensive collateral estoppel. Mot. at pp. 12-13. However, *Grimes* reiterated the discretionary standard in a case of *defensive* collateral estoppel. Grimes, a BNSF railroad employee, was fired for lying about an injury he received while working. *Grimes*, 746 F.3d at 186. The termination was reviewed by a Public Law Board, which agreed that Grimes had been dishonest. *Id*. Grimes

later sued BNSF for violating a federal statute by terminating him for a work-related injury, and BNSF asked the court to give preclusive effect to the PLB's arbitral finding of fact that Grimes had been dishonest. *Id*. In this clear case of defensive collateral estoppel, the decision to apply preclusion remained "within the discretion of the trial court." *Id*. at 188.

Therefore, in this case involving defensive preclusion, the Court retains discretion in determining whether preclusion should apply.

### B.    This Court Should Exercise Its Discretion Based on Procedural Issues in the Arbitration.

As *Grimes* further illustrates, preclusion is inappropriate where the arbitration has not provided "the basic procedural protections of a judicial forum." *Id*. at 188. Although the district court decided preclusion was appropriate and granted summary judgment for BNSF, the Fifth Circuit remanded, based on a finding that the arbitral procedures had been inadequate. *Id*. Indeed, as a general matter, the Fifth Circuit has warned that "arbitral findings typically lack the supervisory scrutiny of authoritative review, giving rise to the argument that arbitration risks determinations based on irrelevant or hearsay evidence, or the personal whims of arbitral panel members." *Universal Am. Barge Corp*., 946 F.2d at 1137.

Here, a number of issues prevented the arbitration from providing appropriate procedural protection, including the following:

- Ukrnafta did not have the opportunity to respond to the imposition of damages in excess of the contractual limitation of liability;

- The Tribunal did not permit Ukrnafta to respond to its use of a risk assessment strategy in determining the validity of key gas pricing regulations;

- The Tribunal did not permit Ukrnafta to submit evidence on the issue of Ukrainian gas price regulations;

- The award was beyond the scope of the parties' agreement;

- The arbitration did not take place according to any agreement between the parties.

The Court is familiar with these issues, as Ukrnafta has raised them previously in its Response to Defendant's Supplemental Briefing in Support of its Motion to Confirm Arbitration Award ("Resp. to Supp. Briefing"). (Dkt. #46). In the interest of efficiency, rather than repeating the relevant facts, Ukrnafta incorporates by reference Section III(B), (C), and (D) of that Response, including all related exhibits.

Although Ukrnafta raised the procedural shortcomings of the arbitration in its prior briefing, it was in a different context with a different standard. Previously, this Court was asked to determine whether the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") barred enforcement of the Tribunal's award, based on the arbitration's lack of procedural protections. Resp. to Supp. Briefing at §§III(B)-(D). Although this Court confirmed the arbitration award, it noted that Ukrnafta bore the burden to prove the application of one or more of the grounds for non-enforcement of the award. Mem. Opinion (Dkt. #53) at p.7. Moreover, this Court recognized that "[d]efenses to confirmation are construed narrowly in order to encourage the recognition and enforcement of commercial arbitration agreements in international contracts." *Id.* (citations omitted).

Here, the standard is significantly different. In a motion for summary judgment, the burden is on CPC-Delaware to show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In deciding the motion, a court must draw "all reasonable inferences in the light most favorable to the nonmovant." *Malacara v. Garber*, 353 F.3d 393, 398 (5th Cir. 2003). Therefore, while under the "narrow" construction of the Convention the evidence may not have reached the level necessary for non-enforcement of the award, it may still defeat CPC-Delaware's motion for summary judgment.

In addition, in addressing Ukrnafta's arguments under the Convention, this Court had "secondary jurisdiction," binding it to enforce the arbitral award unless Ukrnafta was able to meet the high standard necessary for non-enforcement. Mem. Opinion (Dkt. #53) at pp. 13-14. Here, however, the Court has discretion in determining whether to apply preclusion. *Grimes*, 746 F.3d at 188. The procedural issues inherent in the arbitration weigh in favor of exercising that discretion to deny preclusion. Moreover, as discussed more fully below, additional factors also support the use of the Court's discretion to deny CPC-Delaware's motion.

**III.    Issue Preclusion Does Not Apply to Ukrnafta's Claims.**

Issue preclusion is only appropriate where: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005). CPC-Delaware cannot meet this exacting standard.

**A.    The Arbitral Tribunal's Alternative Holding Is Insufficient to Preclude Ukrnafta's Claims on Timeliness Grounds.**

CPC-Delaware argues that the Tribunal found Ukrnafta knew of its switch from a Texas to a Delaware corporation by 2000, and therefore all of Ukrnafta's claims are time barred. However, any finding by the Tribunal that Ukrnafta knew of the substitution of the parties was made only in the alternative, and therefore it was not necessary to the Tribunal's decision and offers no basis for issue preclusion.

During arbitration, Ukrnafta raised its lack of knowledge regarding the change in incorporation as a defense. Ukrnafta argued that CPC-Texas executed the JAA, not CPC-Delaware, and CPC-Texas had ceased to exist at the time of execution. Exh. 1 (Final Award) at ¶155-56. Moreover, CPC-Texas was obligated to notify Ukrnafta before substituting parties, and

it did not do so. *Id*. at ¶186. Therefore, CPC-Delaware had no rights under the JAA. *Id*. at ¶155-56.

Ukrnafta first raised this argument as a challenge to the arbitration tribunal's jurisdiction: as CPC-Delaware had no rights under the JAA, it could not avail itself of the arbitration provision contained in that agreement. *Id*. at ¶154. In addressing this issue, the Tribunal made no findings as to whether Ukrnafta knew, or should have known, of the merger at any time prior to arbitration. Rather, it held that Ukrnafta was on notice of the merger at the time CPC-Delaware filed its Request for Arbitration on September 28, 2007, identifying Carpatsky as a Delaware company, and its later challenge to jurisdiction was untimely. Exh. 2 (Decision on Jurisdiction) at ¶¶ 69-76.

Ukrnafta later raised this same issue as a defense to CPC-Delaware's claims, arguing again that CPC-Delaware failed to inform it of the merger and could not bring any claims against Ukrnafta under the JAA. Exh. 1 (Final Award) at ¶155. CPC-Delaware responded that (1) it was not obligated to inform Ukrnafta of the merger, and (2) it had, in any case, informed Ukrnafta of the merger. *Id*. at ¶169. In its Final Award, the Tribunal held, first and foremost, that Carpatsky **had no duty** to provide notice of the change from the Texas to the Delaware corporation. *Id*. at ¶¶186-191. Therefore, CPC-Delaware lawfully succeeded to CPC-Texas' rights under the initial JAA and also acquired the ability to enter into the Restated JAA and amendments. *See id*. at ¶ 203. The Tribunal's consideration of the matter could have ended there.

However, the Tribunal continued to consider, in the alternative, whether Ukrnafta affirmatively received notice of the merger: "***Even if the Arbitral Tribunal had arrived at a different conclusion on this issue***, i.e. found that Claimant was legally required to inform Respondent of its reorganization, the Arbitral Tribunal has serious doubts regarding

Respondent's assertion that it was not notified." *Id.* at ¶192 (emphasis added). Importantly, CPC-Delaware has overstated what the Tribunal said. CPC-Delaware asserts that the Tribunal found that Ukrnafta knew of the change in incorporation by 2000. Mot. at 15. The Tribunal attached no such time frame to its decision, and instead surveyed different testimony and evidence from many different dates up until 2006. *Id.* at ¶¶ 192-203. Moreover, the Tribunal's conclusion demonstrates that any observation regarding Ukrnafta's knowledge of the merger was not only secondary to the finding that no notification was necessary, but it was also equivocal:

> **In conclusion**, the Arbitral Tribunal finds that, governed by the law of Delaware, CPC-TX was merged into CPC-DE and ceased to exist on 22 July 1996. . . . Further, there was no contractual or statutory requirement for CPC to notify Respondent of this reorganisation. In any event, it appears very likely that Respondent was informed about this merger at the time.

*Id.* at ¶203 (emphasis in original).

The Tribunal's language establishes that this second, alternative holding was not necessary for the Tribunal's decision. Rather, its decision could have rested solely on a finding that there was no duty to inform Ukrnafta of the merger. And where a holding was not necessary to the Tribunal's decision, it cannot provide the basis for estoppel.

"[I]t has always been the rule that although an issue was fully litigated and a finding made on the issue in prior litigation, the prior judgment will not act as collateral estoppel as to the issue if the issue was not necessary to the rendering of the prior judgment . . . ." *Hicks v. Quaker Oats*, 662 F.2d 1158, 1168 (5th Cir. 1981). Based on this reasoning, the Fifth Circuit has declined to apply collateral estoppel to an "alternative ground" providing the basis for a prior decision. *Id.* at 1168-70.[1] Even if both grounds have been reviewed on appeal, the Fifth Circuit

---

[1] CPC-Delaware tries to distinguish *Hicks* by arguing its holding applies only to offensive collateral estoppel, but the language of *Hicks* does not support this claim. Rather, *Hicks* notes that the "problems with the 'alternative ground' rule are *heightened* and the arguments against the rule become *even more*

recognized that the appellate court "is less likely to give rigorous consideration" to alternative grounds. *Id.* at 1169.

Although Ukrnafta appealed the Tribunal's Final Award in Swedish court, again raising its lack of knowledge as to Carpatsky's merger and arguing that CPC-Delaware had no rights under the JAA, Exh. 3 (Statement of Claim, Challenge of Arbitral Award, Dec. 23, 2010) at §§2.3, 3.1, the appellate court did not consider or respond to this argument. Exh. 4 (Svea Court of Appeal Judgment, March 26, 2015). In a separate decision addressing only Ukrnafta's jurisdictional challenge, the Swedish district court did consider the argument as it relates to jurisdiction, but it based its conclusion on the finding that CPC-Delaware had no duty to inform Ukrnafta of the merger. It first determined that the merger "cannot be deemed to have had such significance" that it prevented a binding agreement between Ukrnafta and CPC-Delaware, holding "the Statement of Claim is dismissed ***on this basis alone***." Exh. 5 (Stockholm District Court Judgment, Dec. 13, 2011) at p. 26 (emphasis added).   Only then did it remark that Ukrnafta also received notice of the merger in 2002. *Id.* at pp. 26-27. As *Hicks* predicted, this alternative ground was not examined as closely as it may have been if it provided the basis for the Tribunal's decision.

Where the Swedish court decided there was no duty to inform Ukrnafta of the merger, explicitly ruling "on this basis alone," and the alternative ground was not necessary to the Tribunal's decision nor the appellate court's, issue preclusion does not apply.

---

*persuasive*" when considering an offensive collateral estoppel situation, but it does not address whether its holding is limited to those situations. 662 F.2d at 1170 (emphasis added). Moreover, its logic also applies to defensive collateral estoppel.

###### B.    Ukrnafta's Claims Are Not Precluded on Their Merits.

###### 1.    Ukrnafta's Injury Has Not Been Arbitrated.

CPC-Delaware argues that a number of the claims Ukrnafta has brought before this court—specifically negligent misrepresentation, fraud, misappropriation of trade secrets, and tortious interference—require as an element that Ukrnafta has suffered harm. CPC-Delaware further claims that the Tribunal has already decided that Ukrnafta suffered no harm from its actions. This blanket statement is a mischaracterization of the Tribunal's ruling.

In fact, Ukrnafta did not put its harm at issue during arbitration. Rather, it raised certain defenses to Carpatsky's claims, as discussed in Section III(A), *supra*, none of which required that Ukrnafta demonstrate harm. As Ukrnafta only raised its knowledge of the merger, not any harm it suffered as a result, as a defense to the enforcement of the JAA, the three requirements of issue preclusion all fail.

As noted above, issue preclusion requires "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace,* 403 F.3d at 290. Here, the issue of harm was not adjudicated, as it was not raised by either party. As the Tribunal itself noted, "Respondent has not asserted that it suffered harm from the fact that its contractual partner was no longer CPC-TX, but CPC-DE." Exh. 1 (Final Award) at ¶204. Of course, none of Ukrnafta's defenses *required* it to assert it suffered harm, explaining its decision to streamline the arbitration by focusing on its knowledge of the merger. And any discussion about Ukrnafta's *knowledge* of the merger is entirely separate, and not identical, to the *harm* it suffered as a result of the merger.

Second, and closely related to the first requirement for preclusion, the issue was not litigated. Ukrnafta did not present any evidence as to its damages due to, for example, CPC-

Delaware's theft of its trade secrets, as such evidence would be collateral to its defenses. Exh. 1 (Final Award) at ¶204. Nor did CPC-Delaware.

Lastly, any discussion in the Final Award about harm was not necessary to the decision. The Tribunal summarized its finding regarding the merger as follows:

> **In conclusion**, the Arbitral Tribunal finds that, governed by the law of Delaware, CPC-TX was merged into CPC-DE . . . With that merger CPC-DE succeeded into all rights and obligations of CPC-TX and thus both became a party to the initial JAA and acquired the legal capacity to enter into the Restated JAA as well as other addenda concluded with Respondent. . . . Further, there was no contractual or statutory requirement for CPC to notify Respondent of this reorganization. . . . Consequently, Claimant validly concluded the Restated JAA as well as the subsequent addenda which are not null and void.

Exh. 1 (Final Award) at ¶203 (emphasis in original). There is no suggestion that Delaware law regarding mergers takes into account the potential harm to a counterparty to an agreement. Even though CPC-Delaware relies on the Tribunal's unsolicited statement that it failed to identify any "possible harm" from the merger, this statement is unnecessary to the Tribunal's holding and irrelevant to its determination of the claims in arbitration. No court has ever held that dicta regarding irrelevant matters can form the basis for issue preclusion.

As to Ukrnafta's claims for negligent misrepresentation, fraud, misappropriation of trade secrets, and tortious interference with contract, the issue of harm has not been precluded.

### 2.    CPC-Delaware's Knowledge or Recklessness Regarding False Representations Has Not Been Arbitrated.

CPC-Delaware argues that the Tribunal's rulings preclude Ukrnafta from showing that CPC-Delaware knowingly or recklessly made false representations, an essential element of fraud. Mot. at p. 18. CPC-Delaware misstates the Tribunal's findings of scienter. In fact, CPC-Delaware's intent regarding its false representations was not previously arbitrated, and any comment by the Tribunal as to CPC-Delaware's knowledge was not necessary to the decision.

Although the Tribunal discussed one specific individual's (Mr. Leslie Texas) intent, or lack thereof, to deceive Ukrnafta, it went on to clarify, "[W]hether Mr. Texas considered everything to remain the same, and whether he thought it was important to use a new company seal or not, *is not decisive* for our finding relating to the issue of corporate identity." Exh. 1 (Final Award) at ¶197 (emphasis added). Further, the Tribunal explained that "no relevant conclusion depends on a finding of misleading" Ukrnafta as to the changes CPC-Texas underwent. *Id*. at ¶203. An observation about one individual's state of mind which is "not decisive" to the Tribunal's ruling, and on which "no relevant conclusion depends" cannot form the basis for issue preclusion. *Pace,* 403 F.3d at 290.

Moreover, the issue is not identical to the question of whether CPC-Delaware knowingly or recklessly made false representations. Mr. Texas's state of mind is not identical to the state of mind of CPC-Delaware. The Tribunal did not consider whether any other individual knowingly made false representations, nor did it consider Mr. Texas's, or any other individual's, potential recklessness in make false representations. Where the issues are not identical, issue preclusion cannot apply. *Pace,* 403 F.3d at 290. Therefore, Ukrnafta's fraud claim must proceed.

### 3.  CPC-Delaware's Improper Acquisition and Use of Trade Secrets Has Not Been Arbitrated.

CPC-Delaware argues that Ukrnafta's claim for misappropriation of trade secrets is precluded, as the Tribunal ruled that CPC-Delaware succeeded to CPC-TX's rights. Therefore, CPC-Delaware claims that Ukrnafta is precluded from showing (1) the trade secret was acquired through improper means; and (2) the trade secret was used with Ukrnafta's authorization. Mot. at p. 19. However, these issues are not identical to anything the Tribunal has decided. Even if the merger was valid, and CPC-Delaware acquired certain rights under the JAA, these rights may not extend to the acquisition of all the relevant trade secrets.

Two agreements and addenda governed the development of two oil fields. Exh. 6 (Joint Activity Agreement, Sept. 14, 1995); Exh. 7 (Amendments to Joint Activity Agreement, Oct. 15, 1996); Exh. 8 (Amendments to Joint Activity Agreement, Aug. 26, 1998); Exh. 9 (Foundation Agreement, Aug. 18, 1994); Decl. of I. Sierov at ¶3. Ukrnafta and CPC-Texas created a joint venture, which became the licensee for the development of the Bytkiv-Babchynske oil field ("the BB Field"). Exh. 9 (Foundation Agreement, Aug. 18, 1994); Decl. of I. Sierov at ¶3. In addition, Ukrnafta and CPC-Texas signed the JAA to develop the Rudivsky-Chervonozavodsky field ("the RC Field"). Exh. 6 (Joint Activity Agreement, Sept. 14, 1995); Decl. of I. Sierov at ¶3. Believing it was fulfilling its contractual obligations, Ukrnafta unwittingly disclosed its trade secrets to CPC-Delaware, under the impression it was communicating instead with CPC-Texas. Decl. of I. Sierov at ¶3. CPC-Delaware took no steps to properly participate in these agreements under Ukrainian law, which would permit it to receive or use these trade secrets. *Id*. at ¶3. Although the Tribunal has determined that CPC-Delaware has certain rights under the JAA, it did not consider whether this included the broader right to receive trade secrets from Ukrnafta under the appropriate legal standard. As a result, the issues the Tribunal ruled on were not identical to the issues raised in Ukrnafta's trade secret claims.

By this same standard, Ukrnafta's claim for unjust enrichment cannot be precluded. The unjust enrichment cause of action alleges that CPC-Delaware wrongly received "Ukrnafta's valuable trade secrets" along with other economic benefits. Pet. at ¶41. Where the Tribunal has not addressed CPC-Delaware's right to specific trade secrets, nor heard any evidence as to the substance or extent of those secrets, nor considered CPC-Delaware's use of those secrets for its own gain, the issue has not been arbitrated and preclusion does not apply.

### 4.      Ukrnafta's Request for Permanent Injunction.

Ukrnafta has requested a permanent injunction preventing defendants from using or disseminating Ukrnafta's trade secrets, as well as returning any trade secrets in their possession. CPC-Delaware has argued that this claim fails if the claim for misappropriation of trade secrets fails. Mot. at p. 20. As discussed *supra*, Ukrnafta's trade secret claim has not been precluded. Therefore both the trade secret claim and the related request for a permanent injunction should be permitted to proceed in this court.

### IV.    Claim Preclusion Does Not Apply to Ukrnafta's Claims.

CPC-Delaware has argued that Ukrnafta's claims are barred by claim preclusion, as Ukrnafta should have raised them in arbitration. Claim preclusion only applies if four criteria are met: (1) the parties in the two actions must be identical; (2) the judgment must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits. *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994). In determining whether two cases involve the same cause of action, courts consider whether they are based "on the same nucleus of operative facts." *Matter of Baudoin*, 981 F.2d 736, 743 (5th Cir. 1993).

The party seeking the application of claim preclusion, or res judicata, bears the burden of proving that preclusion is appropriate. *Matter of Braniff Airways, Inc*., 783 F.2d 1283, 1289 (5th Cir. 1986). Where "reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied." *Id*. Courts should be cautious about applying this type of preclusion:

> Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry.

*Brown v. Felson*, 442 U.S. 127, 132 (1979).

Here, claim preclusion does not apply, because Ukrnafta's claims are not based on the same nucleus of operative facts at issue in arbitration. As the Tribunal noted, the arbitration focused on CPC-Delaware's failure to make certain investments in the development of the RC Field in accordance with the JAA, and the appropriate division of the parties' interests in the field based on their investments. Exh. 1 (Final Award) at ¶¶7-53. As discussed *supra*, Section III(A), Ukrnafta raised Carpatsky's surreptitious change in corporate structure as a jurisdictional issue and as a defense to CPC-Delaware's claims, not as an affirmative claim in the arbitration. Indeed, while the status of CPC-Delaware was important to determine whether it possessed any rights under the JAA, once that issue was decided by the Tribunal, it was not relevant to the status of CPC-Delaware's investments.

Conversely, the arbitration did not address any issues that are central to Ukrnafta's claims, such as the nature of Ukrnafta's trade secrets, the relevant law governing their dissemination, and the unauthorized use of those secrets.  A large gap exists between the nucleus of facts relevant to the parties' investments in the development of certain oil fields, and the nucleus of facts relating to Ukrnafta's unwitting provision of trade secrets to another entity.

Considering the inherent factual differences between Ukrnafta's claims and the claims determined in arbitration, this Court should exercise its discretion in denying preclusion and allow Ukrnafta's claims to proceed.

## V.  The Arguments Regarding the BB Field Are a Red Herring.

CPC-Delaware's motion implies that Ukrnafta has raised two separate sets of claims, each relating to a different Ukrainian oil field. This is not an accurate summary of Ukrnafta's claims.

As Ukrnafta has thoroughly explained in its petition, Ukrnafta and CPC-Texas had a working relationship that extended through two joint venture agreements and related addenda, covering the BB Field and the RC Field. Pet. at ¶¶10-12. CPC-Texas's conversion into a Delaware entity, unbeknownst to Ukrnafta, affected all of the agreements by substituting a party without Ukrnafta's consent. Pet. at ¶¶14-18.

Any attempt by CPC-Delaware to break down its subterfuge by oil field misses the point: Ukrnafta was not aware of change in parties as to *any* agreement, and as a result, Ukrnafta continued in its obligations, ultimately suffering harm by sharing benefits such as profits and trade secrets with CPC-Delaware. Pet. at ¶¶18-27. In short, there are no separate "BB Field claims," as CPC-Delaware characterizes them. Rather, CPC-Delaware's failure to inform Ukrnafta as to the change in parties as to *any* outstanding agreement led Ukrnafta to suffer injury. Had CPC-Delaware informed Ukrnafta that the party to the joint venture agreement covering the BB Field had changed, Ukrnafta would have been on notice that the JAA covering the RC Field would have been affected as well. By failing to inform Ukrnafta of any change in party for any agreement, CPC-Delaware continued to mislead Ukrnafta.

As the facts underlying Ukrnafta's claims are not neatly severable between oil fields, but relate to the substitution of parties in two agreements and related addenda, CPC-Delaware's motion to dismiss the alleged "BB Field claims" should be denied.

## VI. CPC-Delaware's Motion for Certification of the Arbitral Judgment Under Rule 54(b) Must Be Denied.

CPC-Delaware has asked this Court to enter judgment on its order confirming the arbitral award. Under Federal Rule of Civil Procedure 54(b), "[w]hen an action presents more than one claim for relief," a court "may direct entry of a final judgment as to one or more, but fewer than all, claims . . . *only* if the court expressly determines that there is no just reason for delay." FED.

R. CIV. P. 54(b) (emphasis added). There is a "historic federal policy against piecemeal appeals," and "a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). The court should consider a number of factors, including "the relationship between the adjudicated and the unadjudicated claims," "the possibility that the reviewing court might be obliged to consider the same issue a second time," and "the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final." *Abecassis v. Wyatt*, H-09-3884, 2010 WL 2671576 at *2 (S.D. Tex. June 30, 2010).

### A.     CPC-Delaware's Argument for Rule 54(b) Certification Conflicts With Its Own Argument for Preclusion.

CPC-Delaware's argument for Rule 54(b) certification is inconsistent with its arguments for preclusion. On the one hand, according to CPC-Delaware, Rule 54(b) certification is appropriate because the validity of the arbitration award is a different and separate issue from the validity of Ukrnafta's claims. Mot. at 32. On the other hand, CPC-Delaware asserts that the award itself precludes Ukrnafta's claims. Mot. at 9. CPC-Delaware cannot have it both ways.

It is inherently contradictory for CPC-Delaware to rely on the confirmation of the arbitration award as a basis for finding Ukrnafta's claims are precluded, and then assert that the confirmation order is so distinct from the remaining claims that it can be appealed separately, with no effect on how the remaining claims proceed. Underscoring this point, CPC-Delaware indicates that even if this Court denies its Motion for Summary Judgment, it will continue to argue that Ukrnafta's claims are precluded. Mot. at 32. Yet if preclusion remains an issue as to Ukrnafta's claims, based on the arbitral award, any appeal of that award threatens to yield a result inconsistent with the continued litigation of Ukrnafta's claims.

The court must consider a number of factors in deciding whether certification under Rule 54(b) is appropriate, balancing "the danger of hardship or injustice through delay which would be alleviated by immediate appeal and avoiding piecemeal appeals." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000). The first factor a court should consider in weighing certification is "the relationship between the adjudicated and the unadjudicated claims." *Abecassis*, 2010 WL 2671576 at *2. Here, by CPC-Delaware's own argument, the arbitral award and the issue of preclusion as it relates to Ukrnafta's claims are related: if the award is overturned, it cannot preclude Ukrnafta's claims. By recognizing this relationship, Ukrnafta does not agree that the substantive ***claims*** of either party are intertwined. Rather, for preclusion purposes, Ukrnafta's claims are based on different fact and legal standards than CPC-Delaware's, as explained in Sections III and IV, *supra*. However, the validity of the ***award***—the issue CPC-Delaware seeks to certify—is, in fact, inextricably tied to CPC-Delaware's assertion of preclusion.

Moreover, continued litigation regarding preclusion, with simultaneous appellate review of an issue central to preclusion, risks "the possibility that the reviewing court might be obliged to consider the same issue a second time." *Id.* at *2. This piecemeal process is inappropriate under the test for certification.

Put simply, if an appellate court overturns the arbitral award, there could be no preclusion based on the award, and CPC-Delaware's preclusion argument must fail. This Court should reject CPC-Delaware's request for certification.

### B.     The Potential For a Set-Off Against the Arbitral Award Weighs Against Certification.

One key consideration in the balancing test for certification under Rule 54(b) is "the presence or absence of a claim or counterclaim which could result in a set-off against the

judgment sought to be made final." *Abecassis*, 2010 WL 2671576 at *2; *Halliburton Energy Serv., Inc. v. NL Indus.*, No. H-05-4160, 2008 WL 2697345 at *8 (S.D. Tex. July 2, 2008). Logically, where a set-off may later occur, the "piecemeal" approach to appeals would be both inefficient and unjust.

In this case, Ukrnafta has live claims against CPC-Delaware, for which it seeks a significant sum of damages. *See, e.g.,* Pet. at ¶22. Should this court certify the arbitral award, it risks a scenario in which Ukrnafta must pay the award in full, and then later, when it receives a judgment against CPC-Delaware, it must go through the process of recovering its own funds. This approach is inconsistent with "judicial administrative interests as well as the equities involved" in certification. *Curtiss-Wright Corp.*, 446 U.S. at 8. The potential for a set-off weighs against certification.

### C.     CPC-Delaware Has Not Demonstrated Any Significant Hardship or Injustice That Could Result From Delay.

Another important consideration is whether CPC-Delaware has "shown the existence of any hardship or injustice that could result from delay." *Eldredge*, 207 F.3d at 740. CPC-Delaware does not come close to reaching this standard. Rather, it only argues that delaying enforcement of the award will "frustrate" its ability to recover the award. Mot. at 34. It fails to specify how it will be "frustrated" apart from the delay inherent in any trial or appellate proceeding.

The mere fact that "certification will provide the quickest resolution" of a matter is insufficient to show any hardship. *Nichamoff v. CitiMortgage, Inc*., H-12-1039, 2012 WL 6727121 at *2 (S.D. Tex. Dec. 27, 2012). Certifying a final judgment under Rule 54(b) is an "extraordinary procedure," not to be granted lightly. *Id*. Without any evidence of hardship or

injustice, "the efficiency of having a single appeal at the conclusion of the entire lawsuit" outweighs CPC-Delaware's desire for a faster resolution of one segment of this case. *Id.*

### CONCLUSION AND PRAYER

For the foregoing reasons, Ukrnafta respectfully requests that this Court deny CPC-Delaware's Motion for Summary Judgment, Renewed Motion to Dismiss, and Motion for Judgment Under Rule 54(b).

Dated: March 9, 2018                          Respectfully submitted,

                                              */s/ R. Paul Yetter*
                                              R. Paul Yetter
                                              State Bar No. 22154200
                                              Federal I.D. No. 3639
                                              Dori Kornfeld Goldman
                                              State Bar No. 24041274
                                              Federal I.D. No. 591632
                                              Christian J. Ward
                                              State Bar No. 24033434
                                              Federal I.D. No. 1012974
                                              Elizabeth Wyman
                                              State Bar No. 24088688
                                              Federal I.D. No. 2294662
                                              S.D. Tex. Bar No. 591632

YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77010
(713) 632-8000
(713) 632-8002 (Fax)

pyetter@yettercoleman.com
dgoldman@yettercoleman.com
cward@yettercoleman.com
ewyman@yettercoleman.com

Attorneys for
Plaintiff OJSC Ukrnafta

## Certificate of Service

I certify that on March 9, 2018, a copy of this document was served on all counsel of record using the Court's e-filing system.

*/s/ Elizabeth Wyman*
Elizabeth Wyman