# EXHIBIT 2

Arbitration Institute
of the Stockholm Chamber of Commerce
SCC V (124/2007)
———————————————

**ARBITRATION**

BETWEEN:

**CARPATSKY PETROLEUM CORPORATION (DELAWARE, USA)**

Claimant

AND:

**OJSC UKRNAFTA (UKRAINE)**

Respondent

———————————————

**DECISION ON JURISDICTION**

———————————————

<u>Arbitral Tribunal</u>

Sigvard Jarvin (arbitrator)
Per Runeland (arbitrator)
Wolfgang Peter (chairman)

## TABLE OF CONTENT

A.    NAMES AND DESCRIPTIONS OF THE PARTIES ....................................................3

B.    THE ARBITRAL TRIBUNAL................................................................................4

C.    FACTUAL BACKGROUND .................................................................................5

D.    THE ARBITRATION CLAUSE.............................................................................6

E.    PROCEDURAL BACKGROUND............................................................................7

F.    RELIEF SOUGHT ...........................................................................................14

    a)    Respondent's Prayers for Relief..............................................................14

    b)    Claimant's Prayers for Relief ................................................................16

G.    RESPONDENT'S POSITION .............................................................................17

H.    CLAIMANT'S POSITION.................................................................................19

I.    THE REASONS FOR THE TRIBUNAL'S DECISION ...........................................23

J.    RESPONDENT'S REQUEST FOR PRODUCTION OF DOCUMENTS CONCERNING

    JURISDICTION ..............................................................................................24

L.    DECISIONS...................................................................................................27

2

## A.     NAMES AND DESCRIPTIONS OF THE PARTIES

1.     Claimant is:

Carpatsky Petroleum Corporation
808 Travis Street, Suite 1040
Houston, Texas 77002
USA

a corporation incorporated in Delaware with the above-mentioned address in Houston, Texas,

hereinafter referred to as "CPC-Delaware" or "Claimant",

represented in this arbitration by:

Ms. Brenda Horrigan
Salans
5 boulevard Malesherbes,
75008 Paris
France
Tel:     0033 (0) 142 68 48 00
Fax:     0033 (0) 142 68 15 45
Email:  bhorrigan@salans.com

2.     Respondent is:

OJSC Ukrnafta
Nestorivsky by-str. 3-5
Kyiv, 04053
Ukraine

a corporation incorporated in Ukraine,

hereinafter referred to as "Ukrnafta" or "Respondent",

represented in this arbitration by:

Mr. Jonas Benedictsson
Ms. Svitlana Romanova
Baker & McKenzie
Linnégatan 18
P.O. Box 5719
114 87 Stockholm
Sweden
Tel:     0046 8 566 177 00

3

Fax:    0046 8 566 177 99
Email: jonas.benedictsson@bakernet.com
and - as of 24 February 2009 -

Mr. Kaj Hobér
Mannheimer Swartling
Norrmalmstorg 4
P.O. Box 1711
111 87 Stockholm
Sweden
Tel:    0046 8 505 765 00
Fax:    0046 8 505 765 01
Email: kho@msa.se


**B.     THE ARBITRAL TRIBUNAL**


3.     The Arbitral Tribunal is composed as follows:

Mr. Sigvard Jarvin
Jones Day
120, rue du Faubourg Saint-Honoré
75008 Paris
France
Tel:    0033 (0)1 56 59 39 39
Fax:    0033 (0)1 56 59 39 38
Email: sjarvin@jonesday.com

nominated by Claimant,

Mr. Per Runeland
SJ Berwin LLP
10 Queen Street Place
London EC4R 1BE
United Kingdom
Tel:    0044 (0)20 7111 2222
Fax:    0044 (0)20 7111 2000
Email: per.runeland@sjberwin.com

nominated by Respondent,

Dr. Wolfgang Peter
Python & Peter
9 rue Massot
1206 Geneva
Switzerland
Tel:    0041 22 702 1515
Fax:    0041 22 702 1414
Email: wpeter@pplex.ch

jointly appointed as chairman by Messrs. Jarvin and Runeland.

4.    On 28 February 2008, the Arbitral Tribunal wrote to the Arbitration Institute of the Stockholm Chamber of Commerce (hereinafter the "SCC") to request the agreement of the Parties to the appointment of Ms. Anne K. Hoffmann, LL.M. as Administrative Secretary to the Tribunal.

5.    On 12 March 2008, the SCC informed the Arbitral Tribunal that the Parties had raised no objections to the appointment of Ms. Hoffmann as Secretary to the Tribunal and that thus the Tribunal was at liberty to retain her.

6.    Thereupon, on 14 March 2008, the Arbitral Tribunal confirmed the appointment of Ms. Hoffmann as Administrative Secretary. Her contact details are as follows:

Ms. Anne K. Hoffmann, LL.M.
Python & Peter
9 rue Massot
1206 Geneva
Switzerland
Tel:    0041 22 702 1515
Fax:    0041 22 702 1414
Email:  akhoffmann@pplex.ch

## C.    FACTUAL BACKGROUND

7.    Herebelow, the Arbitral Tribunal sets out the factual background as far as it is relevant to its decision on jurisdiction, however, it will not state the facts in such detail as would be necessary for a decision on the merits of the dispute.

8.    On 14 September 1995, CPC, a company incorporated in Texas (hereinafter "CPC-Texas"), and SE Poltavanaftogaz ("PNG") entered into Agreement # 410/95, a Joint Activity Agreement (hereinafter "the JAA"). This Agreement provided for the joint exploration and development by both Parties of the Rudivsky-Chervonozavodsky gas condensate field in Ukraine. In Arts. 14.3 and 14.4, the JAA contains a dispute resolution clause providing for arbitration under the auspices of the International Commercial Arbitration Court of the Chamber of Commerce and Industry of Ukraine in Kyiv.

9.    On 18 July 1996, CPC-Delaware was incorporated in Delaware and CPC-Texas was merged into CPC-Delaware. Thereupon, on 22 July 1996, CPC-Texas ceased to exist.

10.    On 15 October 1996, PNG and a company designated as "Carpatsky Petroleum Corporation, USA" entered into an additional and amended JAA (hereinafter the "Restated JAA") with reference to *"amendments and supplements to agreement No. 410/95"* made by and between them on 14 September 1995. The Restated JAA contained in paras. 20.4 and 20.5 a dispute resolution clause providing for arbitration under the auspices of the International Commercial Arbitration Court at the Chamber of Commerce and Industry of Ukraine.

11.    On 26 August 1998, a company designated as "Carpatsky Petroleum Corporation, USA" and Respondent executed an Addendum of the JAA (hereinafter the "Addendum"). This Addendum set forth *"changes and amendments to Joint Investment and Production Activity Agreement No. 410/95 as of September 14, 1995, for Exploration and Development of the Rudivsko-Chervonozavodske Field, as restated on October 15, 1996, in Consideration of Changes and Amendments as of December 25, 1997*[1]. Pursuant to this Addendum, Ukrnafta replaced PNG in the JAA. This Addendum contained in paras. 20.3 - 20.5 a dispute resolution clause providing for disputes to be referred to the Arbitration Institute of the Stockholm Chamber of Commerce for arbitration to be conducted pursuant to the provisions of the UNCITRAL Arbitration Rules in Stockholm.

D.    THE ARBITRATION CLAUSE

12.    Claimant commenced these proceedings based upon the arbitration agreement contained in paras. 20.3 - 20.5 of the consolidated version of the JAA.[2] The consolidated version of the JAA is a version of the agreement which comprises all final changes made to the initial JAA by way of the Restated JAA and the Addendum. Thus, the arbitration agreement of this consolidated version is the same as the one in the Addendum. This clause is identical to the clause mentioned in para. 11 above and reads as follows:

---

[1] See Exh. R-3 to Respondent's Submission dated 19 December 2008.
[2] See Request for Arbitration of 28 September 2007, para. 10.

*"20.3   The Participants have agreed to take all actions to settle any disagreements between them by means of negotiation.*

*20.4   Should the Participants reach no consent on disputable issues by means of negotiations within 60 (sixty) days from the day of providing notice of the dispute by one of the Participants to the other Participant, such dispute shall be transferred for resolution to and finally settled by the Arbitration Institute of the Stockholm Chamber of Commerce. The Participants have agreed that the arbitration shall be performed according to the UNCITRAL Rules of Arbitration. The place of arbitration shall be Stockholm, Sweden. The resolution of disputes shall be governed by the substantive laws of Ukraine - the country, where the performance of this Agreement takes place. Arbitration proceedings may be conducted in the Ukrainian and English languages.*

*20.5   The arbitration shall consist of three arbitrators who shall be appointed as follows: the plaintiff and  defendant shall appoint one arbitrator each and these arbitrators will jointly appoint a third arbitrator. If within 30 days following the notice of commencement of arbitration proceedings, the defendant should fail to appoint the arbitrator, then such arbitrator, upon request of the plaintiff, shall be appointed by the Institute. If two arbitrators should fail to appoint the third arbitrator within 30 days following the appointment of the second arbitrator, then such third arbitrator shall be appointed by the Institute from among three arbitrators offered by the plaintiff."*

## E.   PROCEDURAL BACKGROUND

13.   These proceedings commenced on 28 September 2007 when Claimant filed its Request for Arbitration with the SCC. On 28 November 2007, Respondent filed its Answer in which it informed that

*"Through negotiations between counsels, UKRNAFTA and CPC have agreed to proceed with the arbitration on the following premises.*

*The arbitration may proceed in English only, however, on the condition that all submissions to the arbitrators, the Institute and the other party including exhibits are also simultaneously produced and submitted in the Ukrainian language. However, the arbitrators need not speak Ukrainian and need not communicate or render an award or decisions in the Ukrainian language.*

*The arbitration may proceed under the Rules of the Arbitration Institute of the Stockholm Chamber of Commerce including the Schedule of Costs therein.*

7

> *The party appointed arbitrators are entrusted the task of appointing a third arbitrator as chairman. If they are unable to find a chairman within 30 days from notice by the Institute that they are so requested, they shall report this to the Institute and the Institute shall appoint a chairman.*
>
> *For the avoidance of doubt, the governing law of the contract is the substantive laws of Ukraine."*[3]

14.    Subsequently, an Arbitral Tribunal was constituted, a procedural timetable established and Claimant submitted its Statement of Claim dated 13 May 2008 followed by Respondent's Statement of Defence and Counterclaim dated 23 June 2008. On 25 November 2008, Claimant submitted its Reply to the Statement of Defence and Answer to the Counterclaim.

15.    On 19 December 2008, Respondent submitted objections to the jurisdiction of the Arbitral Tribunal in this arbitration.

16.    On 12 January 2009, Claimant responded to these objections pursuant to the invitation of the Tribunal.

17.    On 13 January 2009, Respondent stated in an email as follows:

> *"CPC's defence against UKRNAFTA's objections is inadequate. CPC is confusing the chronology and seems to rely on the normal consequences of a merger and the assertion that Leslie Texas was authorised to represent the surviving entity.*
>
> *This is, however, beside the point.*
>
> *The point is that the surviving entity neither entered the Restated Agreement in October 1996, nor the agreement in 1998 under which UKRNAFTA became a party to the JAA. Instead, both those agreement were executed by the entity that did not survive, CPC TX, which legal entity at that time had ceased to exist and operate as a legal entity and hence lacked the powers to contract. This fact is - for obvious reasons - not commented on by CPC.*
>
> *UKRNAFTA reiterates and maintains all what is stated in the objection. UKRNAFTA is especially maintaining the assertion that the merger and the effects of the merger were news to UKRNAFTA in late November of*

---

[3] Respondent's Answer to the Request for Arbitration dated 28 November 2007, p. 1.

> *2008 and that CPC has willfully tried to hide the true facts from UKRNAFTA. Evidence to this end will be provided.*
>
> *UKRNAFTA will revert before COB this Friday with elaborated comments on CPC's defence."*

18.    Thereupon, on 14 January 2009, the Arbitral Tribunal sent a letter to the Parties in which it invited Respondent to submit its comments by 16 January 2009 and Claimant to submit a response thereto by 21 January 2009. It also clarified that no further submissions on this issue were to be filed by either Party thereafter.

19.    On 16 January 2009, at 7.03 p.m., Respondent informed the Arbitral Tribunal per email that due to an interruption of the electricity supply in the Kyiv office of Baker & McKenzie, it needed more time to complete its submissions and requested an extension until 19 January 2009.

20.    On 19 January 2009, the Arbitral Tribunal confirmed that it had taken note of Respondent's email and that it looked forward to receiving Respondent's submission on the same day. Thus, the Arbitral Tribunal granted the extension requested by Respondent.

21.    Later that same day, Respondent filed comments on Claimant's response of 12 January 2009. It also filed a submission which explicitly did *"not constitute UKRNAFTA's Rejoinder"* due on this date, since it contended that *"before ordering the parties to proceed with the merits of the case, the Tribunal must resolve the issue of jurisdiction".*[4] In this submission, Respondent nevertheless withdrew its counterclaim and addressed both liability and quantum of the matter.

22.    On 20 January 2009, Claimant, in light of the extension granted to Respondent, applied for a short extension of the initial deadline of 21 January 2009 for filing its comments until 23 January 2009. In its letter of 21 January 2009, the Tribunal granted this extension. Thereupon, Claimant responded to Respondent's comments regarding jurisdiction on 23 January 2009.

---

[4] Respondent's Submission regarding Rejoinder on Claimant's Reply and Defense to the Counterclaim dated 19 January 2009, pp. 1,2.

23.    On 29 January 2009, the Arbitral Tribunal issued Procedural Order N° 5 in which it decided, *inter alia,* to continue the proceedings concerning the issue of jurisdiction and the merits in parallel and that consequently the hearing scheduled to commence on 2 March 2009 in Stockholm would allow for the Parties to address both jurisdiction and merits of the arbitration. In preparation of this hearing, the Tribunal also invited both Parties to specifically take position on the principles of the autonomy and separability of the arbitration clause, as well as the law governing the latter, by 20 February 2009.

24.    On 18 February 2009, Respondent submitted a further submission on jurisdiction which included two fact witness statements. On the same day, Respondent filed a challenge against the Chairman of the Arbitral Tribunal with the SCC, alleging bias and a lack of impartiality towards Respondent.

25.    On 19 February 2009, the SCC invited Claimant and the Chairman to comment on the challenge by 26 February 2009.

26.    On 20 February 2009, Claimant filed its comments on the law governing the arbitration agreement as requested by the Arbitral Tribunal.

27.    On 24 February 2009, Respondent filed a further submission on the issue of the alleged lack of jurisdiction of the Arbitral Tribunal, including a request for production of documents as well as a request for the stay of these arbitration proceedings due to a court action filed against Claimant in Texas. Claimant also submitted a further fact witness statement.

28.    In the email covering the above-mentioned submission, Counsel for Claimant, Mr. Benedictsson, announced that Mr. Kaj Hobér had joined as counsel. By letter of the same day, Mr. Hobér confirmed that he had been retained as co-counsel. He submitted a Power of Attorney on 11 March 2009.

29.    On 25 February 2009, the Arbitral Tribunal invited Claimant to address Respondent's latest submission by 27 February 2009. It furthermore announced that in light of the circumstances and Respondent's submission, the Tribunal had decided to hear the Parties only on jurisdiction during the upcoming hearing in Stockholm, re-scheduled to

commence on Wednesday, 4 March 2009 instead of Monday, 2 March 2009 and to last two days, i.e. 4 and 5 March 2009.

30.   On 26 February 2009, both Claimant and the Chairman submitted their respective comments on Respondent's challenge to the SCC.

31.   On the same day, Respondent replied to the Tribunal's letter dated 25 February 2009 by stating that it had understood this letter to reject Respondent's request both for production of documents and stay of the proceedings. It further stated that this dismissal of further production of documents would prevent Respondent from adequately presenting its defence with regard to the issue of jurisdiction and that therefore Respondent had "*decided not to attend the hearing and not to participate further in the arbitration*".

32.   Also on 26 February 2009, Claimant sent a letter to the Arbitral Tribunal in which it, *inter alia*, objected to Respondent's requests for the production of documents as set out in the latter's submission of 24 February 2009 and submitted two fact witness statements.

33.   On 27 February 2009, the Arbitral Tribunal replied to Respondent's 26 February 2009 letter, pointing out that in its letter dated 25 February 2009, it had invited Claimant to take position on all points raised by Respondent in its submission dated 24 February 2009, including the requests for production of documents, and that thus it had not yet taken any decision in this regard. It also clarified that it intended to hold a hearing on jurisdiction as scheduled, during which it would discuss with the Parties all outstanding issues concerning jurisdiction, including the requests for production of documents and that it furthermore was willing to consider the possibility of a further hearing on jurisdiction, if necessary. The Arbitral Tribunal ordered both Parties to appear at that hearing and requested the Parties to confirm their presence by 6 p.m. of the same day.

34.   By letter of the same day, Claimant confirmed its presence at the hearing on jurisdiction.

35.   On 2 March 2009, Respondent stated that the approach of the Tribunal consisting in first hearing witnesses before discussing Respondent's request for production of documents and for a stay of the arbitration was unacceptable to it. More generally, Respondent indicated that  hearing witnesses before the production of documents had taken place

11

with regard to the issue of jurisdiction undermined Respondent's ability to defend its case. It stated again that it would not attend the hearing. Furthermore, it reiterated *"its requests for production of documents and for a stay of the proceedings as set out in its letter to the Arbitral Tribunal dated 24 February 2009."* At the same time, Respondent informed the Arbitral Tribunal that on the same day, it had filed an application with the Stockholm District Court requesting a declaratory judgement confirming that the Arbitral Tribunal lacks jurisdiction to decide the present dispute.

36.    On the same day, the Arbitral Tribunal wrote to the Parties stating that it considered that hearing the witnesses on jurisdiction would, *inter alia,* be useful in order to decide Respondent's requests for the production of documents and that the Tribunal's previous letter did not fix the order in which it intended to conduct the hearing, i.e. it did not stipulate that witness testimony had to occur prior to the discussion of the request for production of documents. In particular, the Arbitral Tribunal wrote:

> *"As previously indicated, the Arbitral Tribunal intends to hear the Parties and their witnesses on the issue of jurisdiction during this week's hearing. The issue of Respondent's requests for production of documents dated 24 February 2009 will also be discussed. The Arbitral Tribunal has taken note of Claimant's position to reject the requests for document production. The Tribunal will give the Parties the opportunity to address this issue with regard to both admissibility and content of the production requests as well as the issue of a stay of these proceedings as requested by Respondent.*
>
> *With respect to Respondent's email message of today, the Tribunal again notices a misunderstanding on Respondent's side. The hearing of the witnesses this week is independent of Respondent's application regarding the production of documents. The hearing of the witnesses will ensure that the Tribunal is well informed when it proceeds to decide whether or not to order the production of the documents requested. The hearing of the witnesses does therefore not "undermine the Respondent's ability adequately to prepare and articulate its defence with respect to the jurisdiction" (Respondent's email, page 2). Hence, the Tribunal wants to hear Respondent's witnesses and reiterates its Order of 27 February 2009 pursuant to which both Parties shall appear at the forthcoming hearing. Furthermore, and for the avoidance of doubt, the Arbitral Tribunal did not fix a sequence of events whereby it will first hear the witnesses and then have a discussion concerning Respondent's requests for the production of documents. The Tribunal simply informed the Parties about the items which form part of the agenda of this hearing."*

12

37.   In replying to the foregoing on the same day, Respondent confirmed that despite the clarifications of the Arbitral Tribunal in its previous letters concerning the hearing on jurisdiction, it would not attend this hearing. In this communication Respondent did not submit any reasons in support of its decision.

38.   Also on 2 March 2009, the Arbitration Institute at the SCC invited both co-arbitrators to submit comments on the challenge to the Chairman as well as the responses received thereto both from Claimant and the Chairman. The co-arbitrators commented on 2 and 9 March 2009, respectively, stating that they were in agreement with the Chairman's response to the challenge.

39.   On 4 March 2009, a hearing on jurisdiction took place in Stockholm. Claimant was represented by Ms. Brenda Horrigan and Ms. Alison Pearsall of Salans. Mr. Vladimir Zakhvatayev, attorney from Salans Kyiv, also attended the hearing along with Mr. Ray Leonard, Vice President of Kuwait Energy and Mr. Daniel White, General Counsel of Kuwait Energy. Respondent did not participate. The witnesses Robert Bensh and Zoya Frolova were heard.

40.   On 19 March 2009, the Arbitral Tribunal issued Procedural Order N° 6 providing both Parties with the transcript of the hearing on jurisdiction. It set out the Procedural Timetable to be adopted in case the Tribunal should confirm its jurisdiction and confirmed that the Arbitral Tribunal did not intend to stay these proceedings. The Order did not address the issue of document production.

41.   Thereupon, on 24 March 2009, Respondent sent a letter to the Arbitral Tribunal in which it confirmed that it had taken note of the Tribunal's latest Order and stated that

> "as far as we understand the above-mentioned procedural order, the Arbitral Tribunal has rejected the Respondent's request for the production of documents concerning the jurisdiction of the Arbitral Tribunal. This means that not only that the Respondent has not had the benefit of these documents when preparing and articulating its case on jurisdiction, but also that the Respondent has not been given an opportunity to cross-examine the Claimant's witnesses on the basis of such documents. Consequently, the Respondent has not been given the opportunity adequately to prepare and articulate its case with respect to the jurisdiction of the Arbitral Tribunal. The Respondent reserves all rights in this respect."

42.    On 25 March 2009, the SCC informed the Arbitral Tribunal as well as the Parties that no ground for the disqualification of the Chairman had been found and that consequently Respondent's challenge was dismissed.

## F.    RELIEF SOUGHT

### a)    Respondent's Prayers for Relief

43.    In its submission of 19 December 2008,

> *"65.    UKRNAFTA requests a separate, partial or final award on jurisdiction and a finding that the arbitrators lack jurisdiction and that the arbitration is dismissed with prejudice. UKRNAFTA's request for cost and that CPC, as between the parties, is held solely responsible for all costs for the proceedings, is maintained.*
>
> *66.    In addition, UKRNAFTA also requests a formal suspension of the current schedule so as to avoid adverse consequences, such as unnecessary spending of resources by both Parties, disclosure of commercially sensitive and other confidential information to a person which in fact is not a counterparty under contract with UKRNAFTA in respect of the JA, and other consequences that may arise as a result of taking actions as provided for in the schedule, before and until the issue of jurisdiction has been properly dealt with and adjudicated.*
>
> *67.    In the circumstances as described in this submission, a suspension of the schedule is reasonable. The need of such a suspension is apparent both from the point of cost and in the interest of due process.*
>
> *68.    UKRNAFTA reserves all rights and in particular the right to submit and rely on any evidence needed to support the assertions made in this submission."*

44.    In its submission dated 19 January 2009, Respondent stated

> *"151.    There can be no other finding than the finding that there is no proper foundation for this arbitration, whether materially or procedurally."*

45.    Respondent's submission of 18 February 2009 does not contain any prayers for relief.

14

46.     In its submission dated 24 February 2009, Respondent requested the Tribunal to

"(a)     ORDER the Claimant to produce the following documents or category of documents

(i)     documents related to communications in the period June 1996 up to and including August 1996 between CPC-DE/Carpatsky Petroleum Corporation, Texas ("CPC-TX") and the Representative Office in the Ukraine under the name of CPC-TX concerning the merger between CPC-DE and CPC-TX;

(ii)     documents related to communications in the period September 1996 up to and including October 1996 between CPC-DE and the Representative Office in the Ukraine under the name of CPC-TX concerning the Additional Agreement dated 15 October 1996 (the "Restated Agreement");

(iii)     documents related to communications in the period August 1998 up to and including September 1998 between CPC-DE and the Representative Office in the Ukraine under the name of CPC-TX concerning the Addendum dated 28 August 1998 (the "Addendum");

(iv)     documents related to communications in the period February 28 2006 up to and including March 2006 between CPC-DE and the Representative Office in the Ukraine under the names of CPC-TX pertaining to UKRNAFTA's request for information on 28 February 2006 (Exhibit R3 to UKRNAFTA's Submission on Jurisdiction dated 19 January 2009);

(v)     documents related to communications in the period 19 September 2006 up to and including November 2006 between CPC-DE and the Representative Office in the Ukraine under the name of CPC-TX pertaining to UKRNAFTA's request for information on 19 September 2006 (Exh. R6 to UKRNAFTA's Submission on Jurisdiction dated 19 January 2009);

(vi)     documents related to communications in the period June 1996 up to and including August 1996 within and/or between CPC-DE and CPC-TX concerning the merger between CPC-DE and CPC-TX; and

(vii)     documents related to communications in the period October 1999 to January 2000 between Bellwether Exploration Company and CPC-DE in connection with Bellwether Exploration Company's acquisition of the controlling interest in CPC-DE such as Bellwether

> *Exploration Company's due diligence documentation in respect of CPC-DE.*
>
> (b)     *POSTPONE the hearing scheduled to take place between 2 and 6 March 2009."* [emphasis omitted]

47.     It furthermore stated on page 7 of this submission as follows:

> *"Yesterday, UKRNAFTA initiated court proceedings against CPC-DE in Texas (a copy of UKRNAFTA's Petition is submitted as Exhibit R3). In these proceedings, UKRNAFTA has requested a significant amount in damages resulting from CPC-DE's misrepresentations vis-à-vis UKRNAFTA. UKRNAFTA will also request that CPC-DE be ordered to produce documents under general discovery. Such request will most likely result in the production of documents relevant also to the issue whether the Arbitration Tribunal has jurisdiction to try this dispute. UKRNAFTA will submit any documents produced in the Texas proceedings in this arbitration and rely on them as evidence in support of its jurisdictional objection. Against this background, the Arbitral Tribunal should stay these proceedings and await the production of documents in the proceedings in Texas."*

48.     In its letter dated 2 March 2009, Respondent

> *"reiterates its requests for production of documents and for a stay of the proceedings as set out in its letter to the Arbitral Tribunal dated 24 February 2009."*

## b)     Claimant's Prayers for Relief

49.     In its submission of 12 January 2009, Claimant

> *"respectfully requests the Tribunal to deny the jurisdictional objections raised by Ukrnafta in its submission of January 19, 2008."*

50.     In its submission dated 23 January 2009, Claimant reiterated this request for relief.

51.     In its letter dated 26 February 2009, Claimant

> *"objects to Respondent's demands for the production of documents as enumerated in its submission of 24 February 2007 [sic], as such request is neither timely nor necessary, and objects to any of the other delays or requests for relief enumerated by Respondent in such letter."*

## G.   RESPONDENT'S POSITION

52.   Respondent bases its challenge to the jurisdiction of the Arbitral Tribunal on the perceived lack of an arbitration agreement between the Parties. Respondent considers that during the period from 1992 until 2008, at least two companies with the same name but different places of incorporation existed.[5] Moreover Respondent states that, in July 1996, CPC-Texas was merged into CPC-Delaware and consequently ceased to exist.[6]

53.   Respondent asserts that the JAA was initially concluded between CPC-Texas and PNG.[7] However, although CPC-Texas ceased to exist in July 1996, PNG, respectively Respondent, does not have any contractual relations with CPC-Delaware.[8] Respondent contends that not only the initial JAA, but also the Restated JAA was entered into by CPC-Texas.[9] Respondent contends further that at the time when both the initial JAA and the Restated JAA were entered into, CPC-Texas had ceased to exist and thus did not have the legal capacity to do so. Nevertheless, the Restated JAA was signed and executed by CPC-Texas as it carries the seal as well as the charter number of the latter.[10] Furthermore, Respondent states that also the Addendum was entered into by CPC-Texas, two years after it had ceased to exist.[11]

54.   Respondent contends that it was also CPC-Texas which entered into the arbitration agreement between the Parties contained in the 1998 Addendum to the JAA. Thus, no arbitration agreement exists between CPC-Delaware and Respondent.[12] Moreover, so Respondent contends, at the time of the merger neither the Restated JAA nor the Addendum existed and there was no arbitration agreement to succeed into. The arbitration clause Claimant relies upon was concluded in 1998. Through the merger CPC-

---

[5] See Respondent's Submission dated 19 December 2008, para. 6.
[6] Ibid., para. 9; [6] Legal Opinion prepared by Baker & McKenzie, Dallas, Texas dated 9 December 2008, Exh. 2 to Respondent's Submission dated 19 December 2008, p. 2.
[7] Ibid., para. 1.
[8] Ibid., para. 11.
[9] Ibid., para. 19.
[10] Ibid., para. 19.
[11] Ibid., para. 20.
[12] Ibid., paras. 53 et seq..

17

Delaware could only acquire rights and obligations which existed at the time of that merger.[13]

55.    Respondent also asserts that there is no legal document granting CPC-Delaware any powers as a successor in either the initial JAA, the Restated JAA or the Addendum.[14]

56.    Moreover, Respondent contends that CPC-Delaware deliberately did not inform its counterpart about the change as it had the intention to mislead it in that regard and engaged in wilful fraudulent actions. It did so by using the stamp and registration number as well as official documents of CPC-Texas rather than CPC-Delaware.[15]

57.    Respondent contends that under the JAA, as under any other contract, CPC was obliged to inform its counterpart of any significant change. By not disclosing the fact that CPC-Texas had ceased to exist, Respondent considers that Claimant also breached relevant provisions of Ukrainian law. It refers in particular to Arts. 512 et seq. of the Ukrainian Civil Code of 2003 and Arts. 197 et seq. of the Ukrainian Civil Code of 1963. Under Ukrainian law, the effects of a merger are not "automatic" towards a third party, but the new entity needs to notify the third party and the change in legal person under any contract must be documented. Also, consent of the counterparty is required for the right of succession into certain contracts such as the JAA. Respondent asserts that until CPC-Delaware has officially notified Ukrnafta that it is a new legal person which has replaced CPC-Texas, until the necessary documents are drawn up and executed, CPC-Delaware cannot exercise any rights under the JAA or any subsequent agreement.[16]

58.    Respondent also asserts that its objection to the Tribunal's jurisdiction was not belated. It contends that in November 2008, as soon as it became aware of the facts and circumstances forming the basis for this objection, it raised the matter. Moreover, Respondent pointed out that in its Statement of Defence of 23 June 2008, Respondent still believed that Claimant in these proceedings was CPC-Texas.[17]

---

[13] See Respondent's Submission dated 19 January 2009, paras. 2, 7, 16,
[14] Ibid., para. 7. 82.
[15] Ibid., paras. 22 et seq., Respondent's Submission dated 19 December 2008, paras. 12 et seq.; Respondent's Submission dated 18 February 2009, para. 54.
[16] See Respondent's Submission dated 19 January 2009, paras. 81 et seq..
[17] See Respondent's Submission dated 19 December 2008, paras. 24 et seq., Submission dated 19 January 2009, paras. 126 et seq..

## H.    CLAIMANT'S POSITION

59.    Claimant contends that the facts of the merger are not disputed and that the merger had the effect that the entity CPC-Delaware succeeded to all of CPC-Texas' prior existing rights and obligations, including those under the JAA executed by CPC-Texas prior to the merger. Therefore, subsequent to the merger, the surviving CPC entity, registered in Delaware, has been Respondent's counterparty under the JAA and the arbitration agreement contained therein.[18]

60.    In particular, Claimant asserts that the effect of the merger was simply to change the status of incorporation of CPC, however, it had no effect on the outstanding rights and obligations of CPC vis-à-vis contractual counterparties. Article 259 of the applicable Delaware General Corporation Law specifically provides that upon adoption of the Agreement of Merger by the constituent corporation, the surviving corporation succeeds to all rights, privileges, powers, debts and duties of the constituent corporation and that such debts, liabilities and duties shall attach to the surviving corporation. Thus, CPC-Delaware became party to the JAA automatically from the effective date of the merger since under both Texas and Delaware law, acquisition by the corporation surviving the merger of all the rights and obligations of the corporations merged into it is automatic and without requirement of notice as a matter of law. [19]

61.    Moreover, Claimant contends that Delaware law, under which CPC was operating as from July 1996, provides that the signature of an authorized officer of the corporation is sufficient to bind the corporation. In particular, Sections 103(a)(2)(a) and (b)(2) of the General Corporation Law of the State of Delaware provide that such an authorized signature *"shall constitute the affirmation or acknowledgement of the signatory under penalty of perjury that the instrument is [...] act and deed of the corporation, and that the facts stated therein are true."* Therefore, all that is necessary for a document to be valid and enforceable is *"the signature, without more, of the person signing the instrument".* Hence, Claimant contends that the presence or absence of a corporate seal on an agreement, or the use of an old seal is irrelevant to the agreement's enforceability as a

---

[18] See in particular Claimant's submission dated 12 January 2009, p. 3 with reference to Legal analysis submitted as Exh. R-1, para. 1, to Respondent's submission dated 19 December 2008.
[19] Ibid, pp. 2-3.

matter of Delaware law.[20] A party's legal capacity to contract is determined by its certificate and articles of incorporation. The requirement of a seal is limited to the execution of a very limited number of specialised contracts, such as mortgages. Other agreements, such as commercial contracts, do not require affixation of a seal to be valid and binding. Claimant relies in this regard on the following statement in the decision *Crowley v. Genesee Mining Co.*, 55 Cal. 273 (1880): *"[t]he common-law rule, that a corporation has no capacity to act or to make a contract, except under its common seal, has been long since exploded in this country... In the United States, nothing more is requisite than to show the authority to contract. That authority maybe conferred by the corporation at a regular meeting of the directors, or by their separate assent, or by any other mode of their doing such acts."*[21]

62.     Furthermore, Claimant asserts that even in circumstances where a seal is required, the use of the wrong seal or a different seal than that normally used by the company does not invalidate an agreement. To the contrary: *"[i]t's now the prevailing doctrine, even in states that once held otherwise, that a corporation having a corporate seal may adopt pro hac vice, for the particular transaction, any other seal or any other device bearing semblance to a seal as its own corporate seal."* see *Rabinovich v. Liberty Morrocco Co.*, 125 A. 346 (Del. 1924). Consequently, Mr. Texas' ability to bind CPC-Delaware is not affected, so Claimant contends, by the affixing of a purportedly "wrong" seal.[22]

63.     Moreover, Claimant points out that pursuant to Article 8.01 of the Bylaws of CPC, the President of CPC has the authority to execute contracts on behalf of the company. Since both the 1996 amendments to the JAA and subsequent amendments to the JAA in 1997 through 1999, including the 1998 Addendum containing the arbitration provision, were signed by Mr. Leslie Texas as President of CPC, such amendments are valid and legally binding on both CPC and Ukrnafta.[23]

64.     Claimant also contends that it has always been open about the fact of the merger and the effect thereof. It did not intend to conceal the succession of CPC-Delaware. Moreover, CPC's Certificate of Incorporation, Certificate of Merger and Articles of Merger are all

---

[20] See Claimant's Submission dated 12 January 2009, p. 4.
[21] See Claimant's Submission dated 23 January 2009, p. 13 with reference to Exh. C-16 thereto.
[22] Ibid., p. 8 with reference to Exh. C-20.
[23] See Claimant's Submission dated 12 January 2009, p. 4-5.

publically available documents which are part of the public record.[24] In that regard, Claimant points out that at least since the year 2000, Respondent knew about the succession as for example almost all of the protocols of the management committee meetings of the JAA from that year onward were sealed with an embossed seal that clearly identifies CPC as a Delaware corporation. While such a seal was not necessary to validate the execution by CPC of the protocols, Claimant asserts that its use put Respondent on notice regarding CPC's corporate status.[25]

65.    Moreover, Claimant asserts that when Respondent raised questions in 2006 about the acquisition of CPC by Cardinal Resources, CPC provided Respondent with, *inter alia*, a notarized copy of CPC's certificate and articles of incorporation showing its incorporation in Delaware as well as a copy of the resolution of the Board of Directors appointing Robert Bensh as President of CPC-Delaware and enumerating the powers given to him.[26] Similarly, support letters for visa for Ukrnafta's management were issued in 2001 for the purpose of visiting the *"offices of Carpatsky Petroleum Corporation (CPC, incorporated in Delaware, USA) [...]".*[27] Based on the aforesaid, Claimant contends that Respondent cannot legitimately argue that it was unaware of CPC-Delaware's succession to rights and obligations under the JAA and is therefore estopped from now challenging CPC-Delaware's status as a party thereunder.

66.    Claimant also contends that the jurisdictional objection raised by Respondent is not timely. Further, and as noted by Respondent itself, Claimant's expert report of Brent Kaczmarek described CPC's corporate history including the merger. Therefore, Claimant cannot be accused of having attempted to conceal these facts. Furthermore, in response to Respondent's requests for production of documents, CPC provided a number of corporate documents on 14 August 2008, including the Certificate of Incorporation for CPC in Delaware as well as a copy of the Certificate of Merger filed by CPC.[28] In light of these factors, so Claimant contends, there is no justification for Respondent's waiting until 19 December 2008 to raise its jurisdictional objection. Claimant points specifically to Arts. 5, 24 and 25 of the SCC Rules whereby any objections as to the "existence, validity or applicability of the arbitration agreement" have to be made at the latest in the

---

[24] See Claimant's Submission dated 12 January 2009, p. 5.
[25] Ibid..
[26] Ibid..
[27] See Claimant's Submission dated 23 January 2009, p. 12.
[28] See Claimant's Submission dated 12 January 2009, p. 6-7.

Statement of Defence and any modifications or amendments thereafter may be rejected by the Arbitral Tribunal if it *"considers it inappropriate to allow such amendment or supplement having regard to the delay in making it, the prejudice to the other party or any other circumstances."* Claimant contends that Respondent's objection could be rejected by the Tribunal on this basis alone.[29]

67.     In relation to the provisions of Ukrainian law which Respondent invoked, asserting that they prevent CPC-Delaware from simply succeeding to CPC's rights and obligations, Claimant contends that Respondent was not entitled to rely upon those selected provisions of the Ukrainian Civil Code, which only entered into force in 2004, for a merger that took place in 1996. Instead reference must be made to the Civil Code in force at that time (hereinafter "the Old Civil Code"). Claimant refers to Art. 37 of the Old Civil Code which reads

> *"In the event of the merger and splitting up of legal entities, the property (rights and obligations) shall pass on to the newly emerged entities. In the event where a legal entity joins another legal entity, its property (rights and obligations) shall pass to the latter. The property shall pass as of the day when the transfer balance sheet is signed, unless a law or the resolution, providing for reorganization, envisages otherwise."*[30]

68.     Therefore, so Claimant contends, reliance upon Arts. 197, 201 and 202 of the Old Civil Code is misplaced as those articles are contained in the chapter of the Code entitled *"Assignment of Claim and Transfer of Debt"* and are not related to the issue of legal succession.[31] Similarly, Respondent did not refer to any provision in the JAA which would set out a requirement of notice to or consent from Ukrnafta in order for the succession to be effective.[32] Finally the execution of the 1998 amendments cannot be used as point of reference for the objection on jurisdiction as in that situation there was a change in the name of the party to the JAA which made it necessary to clarify the amendments.[33]

---

[29] Ibid..
[30] See Claimant's Submission dated 23 January 2009, p. 2-3.
[31] Ibid., p.3..
[32] Ibid., p.3.
[33] Ibid., p. 3-4.

I.    THE REASONS FOR THE TRIBUNAL'S DECISION

69.    The Arbitral Tribunal has carefully considered both sides' arguments. On the basis of these arguments, it has reached the conclusion that it has jurisdiction to decide the dispute between the Parties which is the subject matter of this arbitration. The reasons for this conclusion are the following.

70.    The Tribunal rejects the Respondent's argument that it was only when the arbitration was well under way, in particular through an expert report of November 2008, that it discovered that Claimant was not CPC-Texas but CPC-Delaware. The Arbitral Tribunal notes that documents received by Respondent over a period up to November 2008 have indicated that Claimant is a Delaware company. Most significantly, Claimant's identity is clearly stated in the Request for Arbitration dated 28 September 2007 which shows on its cover that Claimant is a Delaware company, with more detail given on page 2. Thus, Respondent must have been aware of Claimant's identity, at the start of this arbitration, when Respondent was moreover assisted by experienced counsel who could not overlook the fact that a Delaware company had initiated the arbitration against Respondent.

71.    On 28 November 2007, Respondent filed an Answer to the Request for Arbitration in which it also nominated an arbitrator. This Answer did not contain any reservations concerning jurisdiction.

72.    Claimant's Statement of Claim is dated 13 May 2008 and identifies Claimant as "Carpatsky Petroleum Corporation (Delaware, United States)". It "reiterates" the Request for Arbitration and goes on to describe the joint activity and the dispute.

73.    Respondent's Statement of Defence is dated 23 June 2008. It opposes the relief claimed by Claimant in substance and contains counterclaims. It does not object to the Arbitral Tribunal's jurisdiction, nor does it contain any reservations in respect of the Tribunal's jurisdiction.

23

74.    The Arbitral Tribunal holds that by engaging in the arbitration without reservation, Respondent has entered into an arbitration agreement with Claimant, CPC-Delaware. This occurred at the latest when Respondent submitted its Statement of Defence. This arbitration agreement can be qualified as an independent basis for the jurisdiction of this Arbitral Tribunal.

75.    In any event, Respondent's jurisdictional objection is untimely. Art. 24(2) of the SCC Rules reads in pertinent part:

> *"The Respondent shall, within the period of time determined by the Arbitral Tribunal, submit a Statement of Defence which shall include, unless previously submitted: [...]; (ii) any objections concerning the existence, validity or applicability of the arbitration agreement."*

Respondent's Statement of Defence was made on 23 June 2008. It does not include any challenge of the Tribunal's jurisdiction. Consequently, the jurisdictional objection, made on 19 December 2008, was untimely in the light of Art. 24(2)(ii) SCC Rules, as Respondent missed the deadline set by this provision. Respondent's objection against the existence, validity and applicability of the arbitration agreement has consequently been made too late to be successful.

76.    Having found, on the grounds stated above, that it is competent to try the dispute between Claimant and Respondent, the Arbitral Tribunal does not find it necessary or appropriate at this stage to address Respondent's further jurisdictional objections, based on the alleged absence of any arbitration agreement with Claimant.

## J.    RESPONDENT'S REQUEST FOR PRODUCTION OF DOCUMENTS CONCERNING JURISDICTION

77.    On 24 February 2009, less than a week before the main hearing, Respondent submitted a request for production of documents in order to gather evidence showing that *"as a matter of Swedish law there is no arbitration agreement between UKRNAFTA and CPC-DE"*. Respondent also requested a stay of the proceedings.

78.    On 26 February 2009, Claimant objected to this request, considering that it was *"... neither timely nor necessary ..."*.

24

79.  The procedural events between 24 February 2009 and the hearing of 4 March 2009 are described in paragraphs 28 - 37 here-above and need not be restated.

80.  In its letters of 27 February 2009 and 2 March 2009, the Arbitral Tribunal made it clear that it intended not only to hear the witnesses called by the Parties in relation to the issue of jurisdiction, but also to discuss the requests for production of documents and for a stay of the proceedings. Consequently, the Arbitral Tribunal indicated that it was open to ordering further document production subject to the result of the hearing on jurisdiction, in particular the discussion on admissibility, relevance and materiality. The Arbitral Tribunal further expressly stated that it did not exclude that a further hearing on jurisdiction might become necessary, depending on the results of the March hearing on jurisdiction.

81.  On 2 March 2009, the Arbitral Tribunal reiterated that the March hearing on jurisdiction was necessary in order to assist it in deciding whether or not to order the production of documents. This was indeed a complex legal issue as Claimant had not only objected generally to the request but disputed its admissibility.

82.  Despite the Tribunal's assurances that it had neither decided on Respondent's request for documents nor dismissed the possibility of a further hearing on jurisdiction or a stay of the proceedings, Respondent decided not to attend the hearing and even not to participate further in the arbitration.

83.  On 24 March 2009, Respondent wrote to the Tribunal indicating its understanding that the Tribunal's decision to render an award on jurisdiction by mid-April meant that the Tribunal had decided to reject Respondent's request for the production of documents concerning the jurisdiction of the Arbitral Tribunal Respondent thus considered that it had not had the benefit of these documents to defend its case on jurisdiction.

84.  Respondent's view about an impairment of its procedural rights is not correct. The Tribunal did not deliberate on the issue of jurisdiction without carefully considering Respondent's request for production of documents. Although Respondent had chosen not to attend the hearing on jurisdiction scheduled for 4 and 5 March 2009, where the Tribunal precisely wanted to discuss with the Parties the issues of relevance materiality and admissibility of the request, the Tribunal was nevertheless in a position to assess Respondent's Request on the basis of Respondent's detailed and reasoned submission dated 24 February 2009.

25

85.    However, for the reasons stated in the main part of this award, the Tribunal has decided its jurisdiction on grounds which are independent of the factual points that Respondent sought to establish through its request for production of documents.

86.    These principal findings vacate any need to order the production of documents requested by Respondent.

L.    DECISIONS

1.    For the reasons set out in this Decision on Jurisdiction, the Arbitral Tribunal:

    (1)    finds that it is competent to determine the dispute that is the subject of this arbitration and, consequently, rejects Respondent's jurisdictional objections based on the alleged absence of an arbitration agreement;

    (2)    declares that a decision of Respondent's Request for Production of Documents dated 24 February 2009 is no longer necessary;

    (3)    will decide on the costs in relation to this jurisdictional challenge in its Final Award.

Place of arbitration: Stockholm, Sweden
22 April 2009

Sigvard Jarvin
Arbitrator

Wolfgang Peter
Chairman

Per Runeland
Arbitrator

27