# EXHIBIT 3

MANNHEIMER SWARTLING

| *Stamp:* | *Stamp:* | *Stamp:* |
|---|---|---|
| *Svea Court of Appeal* | *Inc. to Svea Court of Appeal* | *Svea Court of Appeal* |
| *Sec. 2* | *Registrar Office* | *020106* |
| *Dnr. T 10470-10. 020106* | *2010-12-29* | *Submitted: 2010-12-23* |
| *Ar. 30-12-2010* | | *Case nr: T 10470-10* |
| *Doc. on file 1* | | *Doc. on file: 1* |

Svea Court of Appeal
Box 2290
103 17 Stockholm

## STATEMENT OF CLAIM

**Plaintiff:** OJSC UKRNAFTA, 00135390
Nestorivsky provulok 3-5
04053 Kiev
The Ukraine

**Counsel:** Member of the Swedish Bar Association Kaj Hobér
Mannheimer Swartling Advokatbyrå AB
Box 1711
Tel: 08-595 060 00
Fax: 08-595 061 00
E-mail: kho@msa.se

**Defendant:** Carpatsky Petroleum Corporation, Delaware, 2644163
808 Travis Street, Suite 1040
Houston, Texas 77002
United States of America

**Forum:** Section 43 of the Swedish Arbitration Act (Swedish Code of Statutes 1999:116)

**The matter:** Challenge of Arbitral Award

LEGAL#6475556v1

MANNHEIMER SWARTLING ADVOKATBYRÅ AB • NORRLANDSGATAN 21 • BOX 1711 • 111 87 STOCKHOLM
TEL 08 595 060 00 • FAX 08 595 060 01 • WWW.MANNHEIMERSWARTLING.SE • STYRELSENS SÄTE STOCKHOLM • ORG.NR 556399-4499
DE ALLMÄNNA VILLKOR SOM VI TILLÄMPAR FÖR VÅRA TJÄNSTER FINNS TILLGÄNGLIGA PÅ VÅR HEMSIDA • VI STÅR UNDER TILLSYN AV SVERIGES ADVOKATSAMFUND
STOCKHOLM GÖTEBORG MALMÖ HELSINGBORG FRANKFURT BERLIN MOSKVA S:T PETERSBURG SHANGHAI HONGKONG BRYSSEL NEW YORK



MANNHEIMER SWARTLING

In my capacity as counsel for OJSC UKRNAFTA (hereinafter "**Ukrnafta**") I hereby initiate proceedings against Carpatsky Petroleum Corporation, Delaware, charter no. 2644163 (hereinafter "**Carpatsky II**"), as set forth below.

## 1. Motions

1.1 Ukrnafta moves that the Court of Appeal:

i. set aside the Arbitral Award in accordance with section 34 of the Swedish Arbitration Act (Swedish Code of Statutes 1999:116) (hereinafter the "**SAA**"); and

ii. order Carpatsky II to pay Ukrnafta compensation for its litigation expenses in the Court of Appeal in an amount to be stated at a later time.

## 2. Facts

### 2.1 The parties

2.1.1 Ukrnafta is a limited company registered in the Ukraine.

2.1.2 Carpatsky II is a limited company registered in the State of Delaware in the United States of America.

### 2.2 Contractual history

2.2.1 On 14 September 1995, SE Poltavanaftogaz (hereinafter "**PNG**"), a subsidiary of Ukrnafta, and Carpatsky Petroleum Corporation, Texas, charter no. 01251101 (hereinafter "**Carpatsky I**"), entered into an agreement referred to as *"Joint Activity Agreement No. 410/95"* (hereinafter "**JAA 1995**"), appendix 1[1]). In JAA 1995, PNG and Carpatsky I agreed to jointly survey

[1] The agreement was prepared in Ukrainian. The appendix is an English translation thereof.

LEGAL#6475556v1

and develop the Rudivsky-Chervonozavodsky gas fields in the Ukraine.

2.2.2 JAA 1995 was signed on behalf of Carpatsky I by the company's president, Leslie Texas. In this context, the company's seal was used. The seal stated the company name, Carpatsky Petroleum Corporation, and its American charter no, 01251101, and its American taxpayer identification number, 76–0393576.

2.2.3 Sections 14.3 and 14.4 of JAA 1995 contained an arbitration clause whereby disputes arising as a consequence of the agreement would be referred to arbitration for determination by the International Commercial Arbitration Court of the Chamber of Commerce and Industry of the Ukraine in the city of Kiev.

2.2.4 An agreement entitled *"Agreement for the Amendment and Supplements to Joint Activity Agreement No. 410/95"* (hereinafter "**Restated JAA 1996**"), appendices 2A and 2B[2]) was entered into on 15 October 1996.

2.2.5 Restated JAA 1996 identified the parties to the agreement as PNG on one side and "Carpatsky Petroleum Corporation, registered in Texas, USA" on the other (see page 1 of appendix 2B under the heading, "Definitions"). Restated JAA 1996 was signed by Leslie Texas, whereupon Carpatsky I's seal was used. Accordingly, the parties to Restated JAA 1996 are the same as the parties to JAA 1995, i.e. PNG and Carpatsky I.

2.2.6 Restated JAA 1996 repeated the contents of JAA 1995 subject to certain supplements and amendments. The arbitration clause was found in sections 20.4-20.5. It prescribed, as did the arbitration clause in JAA 1995, that disputes arising as a consequence of the agreement would be referred to arbitration for determination by the International Commercial Arbitration Court of the Ukrainian Chamber of Commerce and Industry in Kiev.

2.2.7 Addendum 1998 was entered into on 26 August 1998 (hereinafter

[2] The agreement was prepared in Ukrainian and is appended, in relevant part, as appendix 2A. Appendix 2B is an English translation of the complete agreement.

LEGAL#6475556v1

"**Addendum 1998**", appendices 3A and 3B[3]). The agreement contained extensive supplements and amendments relative to Restated JAA 1996. By means of this agreement, Ukrnafta replaced PNG as a party. As a consequence thereof, Addendum 1998 contained provisions wherein certain references to PNG and Restated JAA 1996 were amended to refer to Ukrnafta (see page 1, section 2 of appendix 3B).

2.2.8 Addendum 1998 contained no amendments regarding the definition of Ukrnafta's counterparty. Accordingly, the counterparty remained "Carpatsky Petroleum Corporation, registered in Texas, USA" (see page 1 of appendix 3B under the heading, "Definitions"). Like JAA 1995 and Restated JAA 1996, Addendum 1998 was signed by Leslie Texas. Again, Carpatsky I's seal was used.

2.2.9 Through Addendum 1998, the arbitration clause in Restated JAA 1996 was amended such that disputes as a consequence of the agreement would be referred to arbitration for determination by the Arbitration Institute of the Stockholm Chamber of Commerce in accordance with the UNCITRAL arbitration rules. Accordingly, it was first in Addendum 1998 that the arbitration clause prescribed arbitration in Sweden.

## 2.3 The dispute

2.3.1 In a document of 28 September 2007 (hereinafter the "**Request**", appendix 4) the company which subsequently turned out to be Carpatsky II requested arbitration against Ukrnafta in the Arbitration Institute of the Stockholm Chamber of Commerce (Arbitration Institute of the Stockholm Chamber of Commerce case V(124/2007), (hereinafter the "**Arbitration**"). The Arbitration was invoked pursuant to an arbitration clause in Addendum 1998. An arbitration tribunal (hereinafter the "**Tribunal**") was thereafter appointed and the parties commenced an exchange of writings.

[3] The agreement was prepared in Ukrainian and is appended, in relevant part, as appendix 3A. Appendix 3B is an English translation of the complete agreement.

LEGAL#6475556v1




2.3.2  In the Request, the plaintiff presented itself as "Carpatsky Petroleum Corporation", abbreviated as "**CPC**", a company registered in Delaware, USA (Sections 1 and 5 of the Request). It did not provide any charter number or taxpayer identification number for the company. However, the company stated an address in Houston, Texas, as the "registered seat" (section 5 of the Request). In this document, the plaintiff claimed to be the company which had entered into JAA 1995 (section 1 of the Request).

2.3.3  During the Arbitration, the claimant continued to hold itself out as the company that had entered into JAA 1995 and the supplementary agreements thereto.

2.3.4  In the beginning of November 2008, Ukrnafta contacted American counsel to obtain more information prior to a submission in the Arbitration. American counsel reported at the end of November 2008, *inter alia*, that Carpatsky I had ceased to exist as a legal entity on 22 July 1996 as a consequence of a merger with a company which had been formed 18 July 1996 (hereinafter the "**Merger**"). The company that Carpatsky I was merged into was Carpatsky II.

2.3.5  This information took Ukrnafta by surprise. As a consequence, Ukrnafta requested that counsel look into the matter further. In the middle of December 2008, Ukrnafta received the final report which confirmed that Carpatsky I had ceased to exist as a legal entity 22 July 1996 as a result of the Merger. Accordingly, the requesting company was not the company which Ukrnafta believed it to be, i.e. Carpatsky I, nor the company which entered into Addendum 1998 and the arbitration clause therein.

2.3.6  As a consequence of the information which Ukrnafta received regarding Carpatsky I's cessation, Ukrnafta made an objection in its submission to the Tribunal on 19 December 2008, appendix 5, that there was no arbitration agreement between the parties in the Arbitration and that the Tribunal thus did not have jurisdiction to determine the dispute. Ukrnafta asserted that the company had not lost its right to assert this objection since Ukrnafta was previously unaware of the circumstances by which there was no arbitration



agreement pursuant to which the Tribunal had jurisdiction in the Arbitration. Thereafter, an exchange of writings ensued between the parties with respect to whether there was an arbitration agreement.

2.3.7 On 4 March 2009, a hearing was held regarding the jurisdiction issue in Stockholm. Through a decision of 22 April 2009, appendix 6, the Tribunal found that it had jurisdiction to hear the dispute in the Arbitration.

2.3.8 On 19 May 2009, Ukrnafta filed a claim form against Carpatsky II in the Stockholm District Court and moved that the District Court declare that Ukrnafta was not bound by any arbitral agreement with Carpatsky II as a consequence of the fact that the Tribunal in the Arbitration lacked jurisdiction to adjudicate the dispute. Carpatsky II has requested dismissal of the case. This request was denied both by the Stockholm District Court as well as the Svea Court of Appeal (decision of 7 May 2010, appendix 7, and decision of 2 July 2010, appendix 8). After Carpatsky II appealed the decision of the Court of Appeal, the Swedish Supreme Court, on 12 November 2010, decided that there were no grounds for leave to appeal, appendix 9. Proceedings before the District Court were thereafter reinstated. The date for the main hearing has not yet been determined.

2.3.9 The Tribunal denied Ukrnafta's request of 18 January 2010 to stay the Arbitration pending the decision by the District Court. Proceedings on the issues of fact in the Arbitration were conducted in Stockholm between 2 and 5 September 2009. The award was issued on 24 September 2010 (hereinafter the "**Award**", appendix 10). By virtue of the Award, Ukrnafta was ordered to pay Carpatsky II damages in the amount of USD 145.7 million and interest thereon.

2.3.10 As developed below, the Award is not covered by a valid arbitration agreement between the parties (section 34, paragraph 1, sub-section 1 of the SAA). The Tribunal has further exceeded its mandate (section 34, paragraph 1, sub-section 2 of the SAA) and, furthermore, committed an irregularity in the course of the proceedings which probably influenced the outcome of the

LEGAL#6475556v1



Arbitration (section 34, first paragraph, sub-section 6 of the SAA).

## 3. Grounds

### 3.1 The Arbitration is not covered by a valid arbitration agreement between the parties

3.1.1 No arbitration agreement has been entered into between Carpatsky II and Ukrnafta through Addendum 1998

3.1.1.1 The arbitration agreement invoked by Carpatsky II in the Arbitration is set forth in Addendum 1998. According to the wording of Addendum 1998, Carpatsky II was not the contracting party to Addendum 1998. On the contrary, Addendum 1998 provided that "Carpatsky Petroleum Corporation, registered in Texas, USA", i.e. Carpatsky I, is the contracting party. Also, Carpatsky I's seal is used in Addendum 1998, and contains the company name, "Carpatsky Petroleum Corporation," and its American charter number 01251101, and its American taxpayer identification number, 76-0393576.

3.1.1.2 Furthermore, Carpatsky II cannot have become a party to Addendum 1998 through the Merger with Carpatsky I. It is uncontested by the parties that Carpatsky II, by virtue of the Merger, could only assume the rights and obligations which Carpatsky I had on the day the Merger was concluded, i.e. 22 July 1996. It is also uncontested between the parties that, at this time, there was no arbitration agreement which prescribed arbitration in Sweden. Addendum 1998 was executed more than two years after Carpatsky I ceased to exist. Accordingly, Carpatsky II has not become a party to the arbitration agreement in Addendum 1998 by virtue of the Merger.

3.1.1.3 At the time of entering into Addendum 1998, Ukrnafta did not know that Carpatsky I no longer existed. At no time at or about the execution of Addendum 1998 (or thereafter) did Carpatsky II inform Ukrnafta thereof. On the contrary, Carpatsky I is designated as a party to Addendum 1998. This reinforced Ukrnafta's belief that Addendum 1998 had been entered into with Carpatsky I. Ukrnafta did not even know of Carpatsky II's existence. Thus,

LEGAL#6475556v1

Ukrnafta has not executed Addendum 1998 or any of the other agreements with Carpatsky II.

3.1.2 An arbitration agreement between Carpatsky II and Ukrnafta has not come about in any other manner

3.1.2.1 Ukrnafta was not informed either by Carpatsky I or Carpatsky II regarding the Merger or the fact that Carpatsky I had thereby ceased to exist. Accordingly, Ukrnafta continued under the belief that its cooperation partner and contractual partner was only, and could be none other than, Carpatsky I.

3.1.2.2 Throughout the years commencing with the execution of JAA 1995 until November 2008, Ukrnafta has believed that it was dealing with Carpatsky I. Since Ukrnafta was unaware that Carpatsky II existed, Ukrnafta could not have entered into an arbitration agreement with Carpatsky II.

3.1.2.3 Accordingly, after the execution of Addendum 1998, no arbitration agreement was entered into between Ukrnafta and Carpatsky II. Nor did the Tribunal find that there was an arbitration agreement between Ukrnafta and Carpatsky II at the time of the request for Arbitration. According to the Tribunal, the arbitration agreement came about only when Ukrnafta participated in the Arbitration without making any objections concerning the validity of the arbitration agreement. The Tribunal has stated the following.

*"...by engaging in the arbitration without reservation, Respondent has entered into an arbitration agreement with Claimant..."*[4]

3.1.2.4 Ukrnafta has participated in the Arbitration in the belief that the invoking company was Carpatsky I, i.e. the company which Ukrnafta believed it had entered into an arbitration agreement with by means of Addendum 1998. As soon as it learned the real identity of the requesting company, Ukrnafta objected that there was no arbitration agreement. Ukrnafta, accordingly, has also not entered into an arbitration agreement with Carpatsky II by

[4] Decision on Jurisdiction, appendix 6, paragraph 74.

LEGAL#64755556v1

MANNHEIMER SWARTLING

participating in the Arbitration.

**3.2 The Tribunal has exceeded its mandate or, alternatively, committed an irregularity in the course of the proceedings which probably affected the outcome**

3.2.1 Introduction

As a consequence of the individual or collective circumstances invoked in this section, the mandate was exceeded or an irregularity has been committed in the course of the proceedings which probably affected the outcome of the case.

3.2.2 The Tribunal has based its decision on a circumstance not invoked by a party and, in any case, failed to resolve a disputed issue

3.2.2.1 Carpatsky II has testified that it is not possible to sell gas pursuant to the JAA with an economic profit while Decree 31, the ordinance which regulates gas prices in the Ukraine, is valid. In this respect, Carpatsky II states the following.

"*[I]t is undisputed that for so long as Decree 31 is in place, JAA gas cannot be sold at an economic profit.*"[5]

3.2.2.2 The fact that it was necessary to repeal Decree 31 in order for damages to a rise was thus a circumstance acknowledged by both parties. As its claim was finally framed, Carpatsky II asserted that Decree 31 would be repealed on 31 December 2009. Carpatsky II did not amend this date in the company's submissions to the Tribunal in 2010 notwithstanding that the asserted date of cessation had obviously passed. Accordingly, at the time of the determination by the Tribunal, there was no date regarding the repeal of Decree 31 invoked by Carpatsky II on which the Tribunal to base its determination.

[5] Carpatsky II, Second Post Hearing Memorial, appendix 11, paragraph 1034.

LEGAL#6475556v1



3.2.2.3 In two different respects, the Tribunal has exceeded its mandate or, alternatively, committed an irregularity in the course of the proceedings which has probably affected the outcome of the case. Firstly, notwithstanding that Carpatsky II had not stated a relevant date for when Decree 31 would be repealed on which the Tribunal could base its determination, the Tribunal awarded damages to Carpatsky II without taking into account the fact that the repeal of Decree 31 was a condition stipulated to by the parties in order for damages to arise. Secondly, even if Carpatsky II would be deemed to have stated a relevant date of the repeal of Decree 31 on which the Tribunal could base its determination, the Tribunal lacked jurisdiction to award damages. This is so since the Tribunal failed to take into account the issue regarding the time of the cessation of Decree 31.

3.2.3 The Tribunal has based its decision regarding the limitation of liability clause on circumstances which were not invoked without affording Ukrnafta the opportunity to present its claim

3.2.3.1 Article 20.1 of the JAA limits liability pursuant to the agreement to direct losses only, which prevents Carpatsky II from claiming compensation as it has done. However, the Tribunal found that Article 20.1 was not applicable taking into account (i) that, in the opinion of the Tribunal, liability cannot be limited only to direct losses in situations involving intentional breaches of contract, and (ii) in this case, an intentional breach of contract was involved.

3.2.3.2 However, Carpatsky II at no time asserted any facts in support of the proposition that there had been an intentional breach of contract, either prior to or after the *Tribunal* raised the issue on the last day of the proceedings.[6] Notwithstanding this and under the objection of Ukrnafta, the Tribunal notes in the award that the breach of contract was intentional. Accordingly, even in this respect, the Tribunal has exceeded its jurisdiction by basing its decision on a fact which has not been invoked by a party. By raising the issue at such a late stage of the proceedings, the Tribunal has furthermore prevented

---

[6] Record of 5 September 2009 from the last day of proceedings in the Arbitration, pages 100-101, appendix 12.

LEGAL#6475556v1


MANNHEIMER SWARTLING

Ukrnafta from asserting its claim in a satisfactory manner. Thereby, the Tribunal has committed an irregularity in the course of the proceedings. The irregularity committed in the course of the proceedings has probably affected the outcome of the case.

3.2.4 The Tribunal has failed to apply Ukrainian law

The parties are entitled to agree on the legal system to be applied. In accordance with the agreement between the parties, the Tribunal was obligated to apply Ukrainian law. However, the Tribunal applied Ukrainian law (Decree 31) in a manner foreseen by the Tribunal to apply in the future. By failing to apply Ukrainian law in violation of the agreement between the parties, the Tribunal has exceeded its mandate and/or committed an irregularity in the course of the proceedings which probably affected the outcome.

3.2.5 The Tribunal has awarded damages which were not claimed by Carpatsky II

Carpatsky II did not move for compensation for losses which arose following notice of termination of the JAA. Notwithstanding this, the Tribunal awarded compensation for losses related to so-called "post-termination loss". Hence, the Tribunal awarded compensation for which Carpatsky II did not make a claim. The Tribunal has thereby exceeded its mandate and/or committed an irregularity in the course of the proceedings which probably affected the outcome.

3.2.6 The Tribunal has based its assessment of the amount of the loss on a calculation model which was not invoked by the parties

Each party invoked expert testimony regarding the amount of the loss. These calculation models were very complicated. In lieu of basing its award on any of the calculation models invoked by the parties, the Tribunal chose to adjust the calculation models based on the Tribunal's own conclusions regarding the calculation of the amount of the damages. The Tribunal thereby misunderstood the calculation models and ascribed to them a purport which

LEGAL#6475556v1

was not invoked, much less intended, by any of the parties. Accordingly, the Tribunal has exceeded its mandate. By adjusting the calculation models without affording Ukrnafta the opportunity to comment thereon, the Tribunal has also deprived Ukrnafta of the possibility to assert its claim. Thereby, the Tribunal has committed an irregularity in the course of the proceedings which probably affected the outcome.

3.2.7 The Tribunal has erroneously assumed that Ukrnafta stipulated to certain of Carpatsky II's assertions in the determination of the amount of the loss

As stated above, both parties submitted expert opinions regarding the amount of the loss. In the calculation of the loss, the Tribunal assumed that Ukrnafta, through its expert, stipulated to Carpatsky II's assertion that the company had sufficient assets to invest in the parties' cooperation ("Respondent's expert does not dispute this fact"[7]). The assumption by the Tribunal is incorrect. Ukrnafta's expert has unequivocally and thoroughly contested the assertions made by Carpatsky II's expert on this issue and also stated the grounds therefor. By erroneously assuming that Ukrnafta stipulated to Carpatsky II's assertions, the Tribunal thereby exceeded its jurisdiction and/or committed an irregularity in the course of the proceedings which probably affected the outcome.

3.2.8 The Tribunal dismissed evidence regarding Decree 31 which was invoked by Ukrnafta

In a submission of 26 July 2010, Ukrnafta requested the Tribunal's leave to submit a new regulation regarding the gas price regulation in the Ukraine.[8] The regulation t further supported Ukrnafta's position that Decree 31 would not be rescinded and that Carpatsky II thus could not have incurred any loss due to the alleged breach of contract. Notwithstanding that the issue involving Decree 31's period of validity was decisive to the assessment of the

[7] Award, appendix 10, paragraph 343.
[8] Ukrnafta's letter to the Tribunal of 26 July 2010, appendix 13.

LEGAL#6475556v1

amount of damages, the Tribunal denied Ukrnafta's request.[9] By dismissing this request by Ukrnafta, the Tribunal deprived Ukrnafta of the possibility to pursue its claim in a satisfactory manner. The Tribunal has thereby committed an irregularity in the course of the proceedings. This irregularity has probably affected the outcome of the case. Had Ukrnafta been afforded the opportunity to submit the regulation, the Tribunal probably would have not granted damages to Carpatsky II or, in any case, granted a significantly lower amount.

3.2.9 The Tribunal has based its decision on the issue of the statute of limitations on facts other than those invoked by the parties

3.2.9.1 It is common ground in the case that the statute of limitations pursuant to Ukrainian law for Carpatsky II's claim was three years, and that this period commenced when Carpatsky II learned or could have learned of the asserted breach of contract by Ukrnafta.[10] Notwithstanding that Carpatsky II claimed that the company had actual knowledge of the alleged breach of contract on 18 April 2005 and notwithstanding that Carpatsky II asserted that the period of limitations had commenced at this time[11], the Tribunal stated that it had not been established that Carpatsky II learned or could have learned of Ukrnafta's alleged breach of contract prior to the submission of the Request, i.e. 28 September 2007.[12]

3.2.9.2 Accordingly, the Tribunal based its decision regarding the limitations issue on circumstances other than those invoked by the parties. Thereby, the Tribunal exceeded its jurisdiction. In addition, the Tribunal has imposed an erroneous and unexpectedly high evidentiary standard with respect to Carpatsky II's knowledge of the asserted breaches of contract. The Tribunal has imposed the "clear beyond doubt" evidentiary standard.[13] In light of the fact that the

[9] Decision of the Tribunal of 28 July 2010, appendix 14.
[10] Award, appendix 10, paragraph 221.
[11] Carpatsky II's Response to Rejoinder, appendix 15, paragraph 143.
[12] Award, appendix 10, paragraph 222.
[13] Award, appendix 10, paragraph 222.

LEGAL#6475556v1

Tribunal had previously assumed that a lower evidentiary standard applied, it was incumbent upon the Tribunal to notify Ukrnafta that it intended, by means of substantive direction of the proceedings, to apply a higher evidentiary standard. This was necessary in order to afford Ukrnafta the possibility to assert its claim. By depriving Ukrnafta of this possibility, the Tribunal has committed an irregularity in the course of the proceedings which probably affected the outcome.

## 4. Request for an extension to develop the grounds for the challenge

Ukrnafta moves for an extension until 15 February 2011 to develop the factual circumstances and the grounds for the challenge. The reason therefor is – save for the intervening holidays – that Ukrnafta's counsel requires additional time in order to develop the grounds for the claim in consultation with its client.

## 5. Evidence

Ukrnafta moves for an extension of time to submit evidence until such time as Ukrnafta has had the opportunity to read Carpatsky II's answer.

## 6. Miscellaneous

### 6.1 Information for service

6.1.1 Carpatsky II is a company registered in the state of Delaware in the US. On 21 December of this year, Ukrnafta obtained from the register in Delaware the following documents regarding Carpatsky II: (i) "Certificate of Good Standing", appendix 16 and (ii) "Certificate of Incorporation of Carpatsky Petroleum Corporation", appendix 17.

6.1.2 The "Certificate of Good Standing" certifies that Carpatsky II is, according to the register in Delaware, an existing company as per 21 December 2010. The "Certificate of Incorporation of Carpatsky Petroleum Corporation" provides,

LEGAL#6475556v1

*inter alia*, the identity of Carpatsky II's "registered agent". According to legislation in Delaware, a company which is registered in Delaware must provide the name of a "registered agent" who may accept service of process of, *inter alia*, a summons and complaint. This person is comparable to an agent for service of process. Pursuant to Article 3 of the "Certificate of Incorporation of Carpatsky Petroleum Corporation", the "registered agent" is the Corporation Trust Company. Its current address is:

County of New Castle
1209 Orange Street
Wilmington, DE 19801
USA

6.1.3 Based on this information, the Court of Appeal should be able to issue a summons and complaint in the case.

**6.2 Application fee**

The application fee was deposited on the Court of Appeal's plusgiro account on this day.

**6.3 Powers of attorney and authorization documents**

A power of attorney to represent Ukrnafta in the case and authorization documents for Ukrnafta are appended, appendix 18.

---

Stockholm, 23 December 2010

/signed/

Kaj Hobér