# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| OJSC Ukrnafta, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-09-891 |
| | § | |
| Carpatsky Petroleum Corp., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## Order

Pending before the court is a motion for summary judgment, renewed motion to dismiss, and motion for Rule 54(b) judgment filed by defendant Carpatsky Petroleum Corporation ("CPC"). Dkt. 64 (memorandum, Dkt. 64-1). After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion for summary judgment should be GRANTED and the other two motions DENIED AS MOOT.

## I. Background

Plaintiff OJSC Ukrnafta ("Ukrnafta") filed its original petition in the 190th Judicial District Court of Harris County, Texas, on February 23, 2009. Dkt. 1-7. It described its suit as follows: "This is a suit to recover nearly $80 million in damages and unjust enrichment resulting from defendants' coordinated fraud and negligence relating to a project to jointly develop oil and natural gas fields in Ukraine; and to require defendants to disgorge confidential trade secrets and monetary gains improperly and unjustly obtained." *Id.* It asserted claims of negligent misrepresentation, fraud, misappropriation of trade secrets, tortious interference with existing contract, and unjust enrichment, and it sought a declaratory judgment that a joint activity agreement (the "JAA") between Ukrnafta and CPC-Texas (or CPC-TX) was void ab initio.[1] *Id.* These claims stem mainly from Ukrnafta's

---

[1] The petition asserts that CPC-Texas ceased to exist on July 18, 1996 when it merged into a newly created company based in Delaware. Dkt. 1-7. The currently named defendant, CPC, is the Delaware-based company.

contention that when CPC-Texas merged with CPC, creating a new company based in Delaware, it allegedly did not disclose the merger to Ukrnafta, and Ukrnafta believed it was dealing with and disclosing its trade secrets to a Texas-based company. *See id.* In its complaint, Ukrnafta requests a permanent injunction preventing CPC and three other defendants from using or disseminating Ukrnafta's trade secrets and requiring them to return any trade secrets in their possession.[2] *Id.*

CPC removed the case to this court on March 26, 2009. Dkt. 1. In its notice of removal, CPC asserted that Ukrnafta's claims were subject to an arbitration agreement that fell under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *Id.* Ukrnafta moved for a preliminary injunction the next day. Dkt. 3. On April 3, 2009, CPC filed a motion for stay pending the outcome of an arbitration that had been pending in Stockholm, Sweden for more than a year. Dkt. 6. The court denied the motion for preliminary injunction and granted the motion to stay on April 7, 2009, finding that all of the claims asserted by Ukrnafta fell within the scope of the arbitration provision and that CPC was bound as a successor in interest to CPC-Texas. *Id.* at 7.

On March 10, 2011, CPC filed a motion to dismiss this case and confirm the arbitration award. Dkt. 21. It asserted that a final arbitration award had been issued in its favor. *Id.* Ukrnafta responded that there were ongoing appeals to set aside the award in Sweden. Dkt. 22. The court denied CPC's motion without prejudice and stayed the case again pending the conclusion of the ongoing appeals in Sweden. Dkt. 29.

On January 31, 2017, CPC filed an unopposed motion to reinstate the case, lift the stay, and set a briefing schedule on its March 10, 2011 motion to dismiss and confirm the arbitration award. Dkt. 41. It asserted that all appellate avenues in Sweden had been exhausted and the arbitration award in CPC's favor had been upheld. *Id.* The court granted the motion and set a briefing

---

[2] Urknafta sued four defendants, CPC, Taurex Resources PLC, Robert Bensch, and Kuwait Energy Company, K.S.C. *See* Dkt. 107 (original complaint). In addition to CPC, it served Bensch and Taurex. *See* Dkts. 7,8. The court stayed the case before their answer was due, and these defendants have not participated in the case.

2

schedule. Dkt. 42. On October 2, 2017, after receiving additional briefing from the parties, the court issued a memorandum opinion and order in which it granted the motion to confirm the arbitration award and denied, without prejudice, the motion to dismiss. Dkt. 53. The court noted that CPC's motion to dismiss, which was filed on *res judicata* and collateral estoppel grounds, did not adequately address all of the issues the court needed to consider to determine if each of Ukrnafta's claims was precluded. *Id.* The court therefore denied the motion to dismiss without prejudice and noted that it would consider a "renewed motion in the proper motion for summary judgment format that outlines each claim and why CPC believes the claim is identical to the arbitration panel's findings." *Id.*

On February 2, 2018, CPC filed a motion for summary judgment, renewed motion to dismiss, and, in the alternative, motion for Rule 54(b) judgment, which are the motions currently before the court. Dkt. 64. Ukrnafta filed its response on March 9, 2018, and CPC filed a reply on March 21, 2018. Dkts. 67, 70. The motions are now ripe for disposition.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

# III. ANALYSIS

CPC argues that the court should grant summary judgment in its favor because each of Ukrnafta's claims is barred by the preclusive effects of the arbitration award and Ukrnafta had a full and fair opportunity to contest its claims in the arbitration. Dkt. 64-1. It argues that the court's inquiry should be limited to ensuring that due process was satisfied and that no important statutory or constitutional policies are in peril, and that because no such concerns are present here, the court should grant the award its full preclusive effect. *Id.* It contends that each of Ukrnafta's claims is precluded as untimely based on the arbitration panel's finding that Ukrnafta knew about CPC's change of domicile to Delaware no later than 2000. *Id.* It also asserts that the claims are each precluded because the arbitration panel's findings prevent Ukrnafta from proving at least one element of each of its claims. *Id.* It additionally argues that each claim is independently barred by claim preclusion because all of the claims relating to the RC Field could and should have been brought in the arbitration. *Id.* It contends that to the extent any of the claims relate to the BB Field, they are not adequately pled and should be dismissed. *Id.* Finally, CPC argues that if the court does not agree that the claims are precluded, the court should enter a separate final judgment on the confirmation of the arbitration award to avoid delaying enforcement "***still more years*** while Ukrnafta pursues its baseless claims in this Court." *Id.*

Ukrnafta argues that CPC cannot meet its burden of proving that Ukrnafta's claims are precluded based on the Swedish arbitration proceedings. Dkt. 67. It asserts that the claims in the arbitration differed both legally and factually from the claims Ukrnafta has brought in this court. *Id.* Ukrnafta contends that the arbitration dealt with whether CPC "was permitted to 'top up' its investment in the exploration of certain Ukranian oil fields with Ukrnafta, after repeatedly failing to meet its financing obligations under [the JAA]," and the claims here are about whether CPC "used fraud and misrepresentation to gain access to Ukrnafta's trade secrets and other benefits." *Id.* With

4

regard to certifying the arbitral award as a final judgment, Ukrnafta argues that CPC fails to offer any explanation of the hardship it would suffer if the court does not grant the motion. *Id.*

A.     **Issue Preclusion**

CPC's initial arguments rely on the doctrine of issue preclusion, which is sometimes referred to as collateral estoppel. *See Migra v. Warren City Sch. Dist.. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S. Ct. 892 (1984) ("Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . This effect also is referred to as direct or collateral estoppel."). "Once a court has decided an issue, it is 'forever settled as between the parties.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1302 (2015) (quoting *Baldwin v. Iowa St. Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S. Ct. 517 (1931)). Thus, "[u]nder [issue preclusion or] collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970 (1979). "[I]ssue preclusion is not limited to those situations in which the same issue is before two *courts*." *B&B Hardware, Inc.*, 135 S. Ct. at 1303. "In an arbitrable case not directly involving federal statutory or constitutional rights, courts should use a case-by-case approach to determining the collateral estoppel effects of arbitral findings." *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1136–37 (5th Cir. 1991). "The application of collateral estoppel from arbitral findings is a matter within the broad discretion of the district court." *Id.* at 1137. "[A] district court's discretion in deciding whether to give arbitral findings preclusive effect . . . keeps the risk of prejudice at an acceptable level, at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written memorandum," as the arbitrators have in this case. *Id.*; *see* Dkt. 53 (discussing the arbitration decision in this case).

"The doctrine of collateral estoppel represents a choice between the competing values of correctness, uniformity, and repose." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

"Issue preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005); *see also B&B Hardware, Inc.*, 135 S. Ct. at 1303 ("The Restatement explains that subject to certain well-known exceptions, the general rule is that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" (quoting Restatement (Second) of Judgments § 27 (1980)).

"Issue preclusion in a second action on the same claim is sometimes designated as direct estoppel." Restatement (Second) of Judgments ch. 3, topic 2, title E, § 27, cmt. b (Am Law Inst. 1982). If the second action is brought on a different claim, "preclusion is sometimes designated as collateral estoppel." *Id.* Defensive estoppel is when the defendant uses estoppel to obtain dismissal of the plaintiff's claims, and offensive estoppel is when the plaintiff uses estoppel against a defendant. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4, 99 S. Ct. 645 (1979). The doctrine of mutual defensive collateral estoppel "preclude[s] relitigation of the same issue already litigated against the same party in another case involving virtually identical facts." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 169, 104 S. Ct. 575 (1984). Offensive collateral estoppel occurs when "a litigant who was not a party to the prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Parklane Hosiery Co., Inc.*, 439 U.S. at 326. Historically, "the authorities have been more willing to permit a defendant in a second suit to invoke an estoppel against a plaintiff who lost on the same claim in an earlier suit than they have been to allow a plaintiff in the second suit to use offensively a judgment obtained by a different plaintiff in a prior suit against the same defendant." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Foundation*, 402 U.S. 313, 329–30, 91 S. Ct. 1434 (1971).

1.     **The Court's Discretion**

The parties first disagree as to whether the court has discretion in determining whether preclusion applies. CPC argues that preclusion is mandatory and that the court only has discretion in cases of non-mutual, offensive collateral estoppel or cases involving federal statutory or constitutional rights. Dkt. 70. Ukrnafta, citing *Grimes v. BNSF Railway Co.*, 746 F.3d 184, 188 (5th Cir. 2014), contends that the discretionary standard applies in a case of defensive collateral estoppel as well. Dkt. 67. CPC asserts that Ukrnafta misreads *Grimes*, and that the following three cases foreclose a discretionary standard: *Murchison Capital Partners, L.P. v. Nuance Communications, Inc.*, 625 F. App'x 617, 622 (5th Cir. 2015) (unpublished), *In re Swate*, 99 F.3d 1282, 1290 (5th Cir. 1996), and *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1290 n.12 (5th Cir. 1995).

The court will first consider *Grimes*. The *Grimes* plaintiff was a railroad employee who alleged that his employer, BNSF Railway Company, violated the Federal Railway Safety Act by terminating the plaintiff's employment because he reported a work-related injury. *Grimes*, 746 F.3d at 185. BNSF terminated the plaintiff's employment after it had conducted an investigation and held a hearing as required under a Collective Bargaining Agreement ("CBA"). *Id.* at 186. It determined the employee had initially been dishonest about what caused the accident. *Id.* The plaintiff appealed to the Public Law Board ("PLB") pursuant to the terms of the CBA and the Railway Labor Act, and the PLB found that the employee had been dishonest. *Id.* It ordered him reinstated, but it did not require BNSF to compensate the employee for lost time. *Id.* The employee sued, alleging he was fired for the lawful good faith report; BNSF argued that it fired the employee for being dishonest. *Id.* The district court gave the PLB's finding that the employee had been dishonest preclusive effect. *Id.* The plaintiff argued on appeal to the Fifth Circuit that arbitration findings cannot be used to estop federal courts deciding independent federal claims. *Id.* He argued alternatively that the PLB proceedings were inadequate. *Id.* The Fifth Circuit agreed that the proceedings were inadequate and remanded to the district court. *Id.*

The *Grimes* plaintiff had relied on three U.S. Supreme Court decisions when arguing that the court should not apply the doctrine of collateral estoppel in a case involving federal claims. *Id.* (citing *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 104 S. Ct. 1799 (1984); *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 101 S. Ct. 1437 (1981); and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S. Ct. 1011 (1974)). The Fifth Circuit's reasoning in considering these cases is relevant to the current case. The Fifth Circuit determined that the three cases "counsel against only *claim preclusion*, not issue preclusion." *Id.* at 187. The court explained that the cases demonstrate that a prior arbitration of a federal claim does not necessarily preclude the claim, but the arbitration decision may be admitted as evidence, and the trial court has discretion regarding how much weight to give the arbitration decision. *Id.* The *Grimes* Court further explained that it "follows that these Supreme Court decisions do not prohibit a court from applying collateral estoppel." *Id.* The court instructed that the arbitral findings of fact would be conclusive if Grimes had brought the same type of claim that he pursued pursuant to the CBA, but they "are not, however, necessarily conclusive in a suit brought under a different statute." *Id.* at 187–88. The court noted that "arbitral proceedings *can* have preclusive effect even in litigation involving federal statutory or constitutional rights, and the decision to apply it is within the discretion of the district court." *Id.* at 188. In exercising that discretion, the trial court should consider procedural differences between arbitration and the court. *Id.* With regard to the *Grimes* case, the Fifth Circuit determined that the PLB, which only reviewed BNSF's record of the investigation, "did not afford [the plaintiff] the basic procedural protections of a judicial forum." *Id.* *Grimes* is helpful in the instant case, as it is clear that arbitral findings can have a preclusive effect and that the district court's discretion relates mostly to whether the arbitration provided procedural protection.

The court now turns to the cases cited by CPC in support of its position that the court has no discretion and must give the arbitral findings preclusive effect. In *Murchison Capital Partners, L.P.*, the Fifth Circuit cited *Grimes* for the proposition that "'arbitral proceedings can have preclusive

effect,'" and noted that the "party asserting that res judicata applies has the burden of proving that preclusion is appropriate." *Murchison Capital Partners*, 625 F. App'x at 620–21 (also citing *Memphis-Shelby Cty. Airport Auth. v. Braniff Airways, Inc.*, 783 F.2d 1283, 1289 (5th Cir. 1986)). The Fifth Circuit held that the district court mistakenly determined that "it had discretion in ruling on the legal issue of arbitral finality" because the case the district court relied on was a case dealing with offensive collateral estoppel, not res judicata (claim preclusion), and the discretion exercised in offensive collateral estoppel cases "does not extend to res judicata (*claim* preclusion) analysis." *Id.* It instructed that the "district court's exercise of discretion to find finality and decide [the] securities fraud claim is complicated by the mistaken premise that claim preclusion can be applied on a discretionary basis based on judicial economy." *Id.* It then discussed the legal standard for determining whether the arbitration decision was a "final decision" that can be given preclusive effect. *Id.* The *Murchison* case, while demonstrating that courts do not have the same type of discretion in cases involving claim preclusion as in cases involving offensive collateral estoppel, at least with regard to determining arbitral finality, does little to elucidate how much discretion district courts have in cases involving defensive collateral estoppel.

In *RecoverEdge L.P. v. Pentecost*, the Fifth Circuit set forth the elements required for collateral estoppel (identical issue that was actually litigated and necessary to prior judgment) and noted that "in some cases [the Fifth Circuit has] recognized a fourth requirement that there be 'no special circumstances that would render preclusion inappropriate or unfair.'" 44 F.3d at 1290 n.12 (quoting *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994)). It pointed out that the fourth requirement "originated as a limitation on *offensive* collateral estoppel," which "arises when a plaintiff seeks to estop a defendant from relitigating issues that the defendant previously litigated and lost against *another* plaintiff." *Id.* (second emphasis added). In cases involving traditional or mutual estoppel, on the other hand, the parties are the same in both proceedings. *Id.* The court thus indicated that the fourth element, which is akin to discretion, would not be considered in cases

involving traditional collateral estoppel. *Id.* This conclusion is supported by *In re Swate*, in which the Fifth Circuit, citing *Pentecost*, noted that the parties were the same in both proceedings and the case thus involved mutual estoppel. 99 F.3d at 1290. The court determined that an "inquiry into special circumstances [was] unnecessary for [its] collateral estoppel analysis." *Id.*

Here, the parties are the same, so the cases cited by CPC support an argument that the court need not inquire into whether there are special circumstances. Regardless, the court has already determined that Ukrnafta was afforded due process in the arbitration. *See* Dkt. 53. To the extent the court has discretion to determine whether preclusion applies to this arbitration decision, the court finds there was sufficient due process afforded during the arbitration and chooses to give it preclusive effect to the extent the other issue preclusion elements are met with regard to each issue impacting the various claims asserted in this case.

### 2. Timeliness

CPC's first argument is that all of Ukrnafta's claims are untimely because the arbitral tribunal found that Ukrnafta knew or could have known about CPC's change of domicile no later than 2000. Dkt. 64-1 at 14. According to CPC, "[e]ach of Ukrnafta's claims stems from injuries Ukrnafta allegedly suffered as a result of its misimpression that it was dealing with [CPC-Texas] rather than [CPC]." *Id.* The tribunal found that CPC's former president informed the deputy head of Ukrnafta's board of foreign economic relations about the change in structure no later than the year 2000. *Id.* at 15 (citing the tribunal's discussion of testimony from Leslie Texas). CPC thus argues that, under the discovery rule, the statute of limitations for all claims began to run, at the latest, in 2000. *Id.* CPC asserts that the statute of limitations for the negligent misrepresentation, tortious interference, and unjust enrichment claims is two years, the statute of limitations for the trade secrets claims is three years, and the statute of limitations for the fraud claim is four years. *Id.* (citing Texas law). Since this lawsuit was filed on February 23, 2009, if these claims were indeed discovered no later than the year 2000, the statute of limitations had run on all of the claims prior to filing. *Id.*

Ukrnafta argues that the tribunal's conclusions regarding the timing of Ukrnafta's knowledge were secondary and equivocal and thus cannot serve as the basis for estoppel. Dkt. 67. The tribunal ultimately found that there was no requirement for CPC-Texas to notify Ukrnafta of its reorganization and that "'[i]n any event, it appears very likely that Respondent was informed about this merger at the time.'" *Id.* (quoting Dkt. 67, Ex. 2 ¶ 203). Ukrnafta asserts that the "second, alternative holding was not necessary for the Tribunal's decision" and argues, relying on *Hicks v. Quaker Oats*, that holdings not necessary to a decision cannot serve as the basis for estoppel. *Id.* (citing *Hicks v. Quaker Oats*, 662 F.2d 1158, 1168 (5th Cir. 1981)).

CPC replies that *Hicks* involved *offensive collateral* estoppel and that the traditional rule is that if a court decides a case on two grounds, each may form the basis of an estoppel claim. Dkt. 70 at 4. It asserts that "the tribunal expressly found that [CPC's] former president Leslie Texas 'informed Mr. Kusch, the deputy head of Ukrnafta's board of foreign economic relations,' about [CPC's] change in domicile, and that the tribunal had 'no reason to doubt Mr. Texas' testimony or even suspect that he was not telling the truth.'" *Id.* (quoting the award). It also found that Mr. Kusch died in 2000, and that it was thus clear that Kusch, and consequently Ukrnafta, knew about the merger at some point before 2000. *Id.* at 5. CPC contends that this is not an equivocal finding. *Id.*

In *Hicks*, the Fifth Circuit considered "the propriety of the use of offensive collateral estoppel with respect to a prior unappealed and alternative ground of decision of a trial court." 662 F.2d at 1159. The case involved (1) an employee benefit instituted by Quaker that allowed employees to take inactive status when they turned sixty (the "Inactive Status Benefit"), and (2) the impact of a transition of Quaker's ownership on the Inactive Status Benefit. In the first lawsuit, an employee who did not receive the Inactive Status Benefit from the new owner sued Quaker and the new owner, arguing that the letter Quaker sent to employees announcing the Inactive Status Benefit (the "Benefit Letter") was a contractual promise. *Id.* at 1161. The trial court found that the Benefit Letter was an irrevocable promise to the employee by Quaker that became a binding contract upon the employee's

acceptance, and Quaker breached the contract. *Id.* The trial court dismissed the suit against the new owner. *Id.* The court "offered a second ground of decision" regarding Quaker, namely that the employee had taken action in detrimental reliance on receiving the benefit. *Id.* at 1162.

The second lawsuit was a class action initiated by a different employee. *Id.* This employee alleged that Quaker modified the employees' at-will employment "contract" with the Benefit Letter, transforming the at-will arrangement into a bi-lateral agreement, and then breached the bi-lateral agreement by no longer providing the Inactive Status Benefit after the change in ownership. *Id.* In an amended complaint, the employee in the second lawsuit alleged that the employees had acted in detrimental reliance on the Benefit Letter. *Id.* The district court granted Quaker's motion for summary judgment, holding that the Benefit Letter could not have modified the at-will employment contracts into contracts for a definite term because the plaintiffs did not offer additional consideration beyond rendering their services as employees. *Id.* It specifically noted that in the first case, the employee had taken additional steps by training and paying his successor based on his reliance on the benefit. *Id.*

The second plaintiff moved for reconsideration, arguing that Quaker had failed to show an absence of material fact as to reliance, and the trial court agreed. *Id.* at 1163. The court decertified the class since the proof of detrimental reliance at trial was individualized. *Id.* Right before trial, the plaintiffs moved to amend their complaint to allege that Quaker was collaterally estopped from relitigating issues that had already been determined in the first case, namely, that the Benefit Letter was a modification of the at-will employment contract and created a binding bi-lateral agreement. *Id.* The district court granted the motion to amend. *Id.* After evidence was presented at trial, the trial judge determined that the first case precluded Quaker from relitigating issues raised in the second case and no issues of unfairness prevented the use of offensive collateral estoppel. *Id.* The court's decision on the second case hinged on the finding in the first case that the Benefit Letter was

a binding bilateral contact. *Id.* The court noted that the decision in the first case had been made "upon two independent and alternative grounds," and that this did not preclude the use of collateral estoppel because "'where a prior judgment is based upon two essential, though alternative grounds, as here, each is a good estoppel.'" *Id.* (quoting the district court).

On appeal, the Fifth Circuit noted that the "alternative ground rule" whereby if a court decides a case on two grounds, each is a good estoppel, had been "called into question by courts and commentators." *Id.* at 1168. Quaker objected to the district court's use of offensive collateral estoppel to establish the existence of a valid bilateral contract for a fixed term of employment. *Id.* It argued that collateral estoppel should not apply because the holding was an alternative ground of decision. *Id.* The Fifth Circuit stated that it "has always been the rule that although an issue was fully litigated and a finding made on the issue in prior litigation, the prior judgment will not act as collateral estoppel as to the issue if the issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to the judgment." *Id.* at 1168. The court explained that the reasons for this rule were that (1) "an immaterial issue may not have been afforded the same careful deliberation and analysis as an issue necessary to the judgment"; and (2) "a decision on an immaterial issue provides the losing party with no incentive to contest an erroneous decision by appeal." *Id.* The court noted that a then-tentative draft of the Restatement of Judgments, Second, "ha[d] abandoned the 'alternative ground' rule when a decision is not appealed by the losing party." *Id.* at 1169. The court agreed with the draft, particularly when, as in the *Hicks* case, "not only do we have an unappealed and allegedly erroneous alternative ground of decision used for collateral estoppel purposes, but plaintiffs seek to use collateral estoppel offensively." *Id.* at 1170. It pointed out that when "collateral estoppel is used offensively the problems with the 'alternative ground' rule are heightened and the arguments against the rule become even more persuasive." *Id.*

The Fifth Circuit cited the draft of the Restatement (Second) of Judgments with approval in *Hicks*, and that draft has since become final. CPC argues that the rule had "only recently been 'called into question'" in the draft of the Restatement and that the departure from traditional rule only applies in cases of offensive collateral estoppel. Dkt. 70 at 4. *Hicks* was decided in 1981, and the draft has now been final since 1982. The Restatement (Second) of Judgments § 27 (1982), addresses issue preclusion in cases involving the same parties. Comment (h) states that if

> issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing the opportunity for a considered determination, which if adverse may be the subject of an appeal, outweighs the interest in avoiding the burden of relitigation.

Restatement (Second) of Judgments § 27 (1982), cmt. h. Comment (I) states that if "a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." *Id.*, cmt. I. The comment goes on to note that there "may be cases where, despite [the reasoning discussed in the comment], the balance tips in favor of preclusion because of the fullness with which the issue was litigated and decided in the first action," but "it is in the interest of predictability and simplicity for the result of nonpreclusion to be uniform." *Id.* That being said, if the judgment is based on two issues that independently could support the result, but on appeal the "appellate court upholds one of these determinations as sufficient and refuses to consider" the sufficiency of the other, the judgment is conclusive as to the upheld determination. *Id.*, cmt. o ("Effect of an appeal.").

CPC argues that a rule that gives preclusive effect to none of the holdings when a prior case is decided on numerous independent grounds, as the Restatement (Second) proposes in comment (I), is counterintuitive. Dkt. 70 at 3. CPC provides several non-binding cases that it asserts support its

argument that, to the extent the rule in the Second Restatement applies, it only applies to offensive issue preclusion. *Id.* CPC starts by citing *Irving National Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926), in which Judge Hand stated: "[I]f a court decides a case on two grounds, each is a good estoppel." *Id.* (quoting *Irving*). CPC also cites the following cases: *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 254–55 (3d Cir. 2006), *Deweese v. Town of Palm Beach*, 688 F.2d 731, 734 (11th Cir. 1982), *In re Westgate-California Corp.*, 642 F.2d 1174, 1176–77 (9th Cir. 1981), *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986), and *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-cv-17, 2015 WL 12696219 (E.D. Tex. Sept. 29, 2015). With the exception of *Adaptix*, which the court will briefly discuss, these non-binding cases relate to offensive collateral estoppel and thus do little to clarify whether the court should apply the rule discussed in *Hicks* in a defensive collateral estoppel case. *See Jean Alexander*, 458 F.3d at 254 (determining, in a case involving non-mutual offensive collateral estoppel, that applying issue preclusion to independent alternative findings "furthers the basic objectives of the doctrine," as it protects litigants from relitigating identical issues and promotes judicial economy and disagreeing with the viewpoint that courts give alternative holdings less stringent consideration); *Deweese*, 688 F.2d at 734 (noting, in an offensive collateral estoppel case, that courts have discretion regarding whether to apply collateral estoppel, and declining to apply it because the party against whom it was being used had not vigorously defended against or appealed on that ground in the first case); *In re Westgate-Cal.*, 642 F.2d at 1176 (applying collateral estoppel to an alternative holding in an earlier case); *Gelb*, 798 F.2d at 39 (determining in a case involving the offensive use of the doctrine of collateral estoppel that an alternative ground that was not reviewed on appeal could not be the basis of collateral estoppel).

In *Adaptix, Inc.*, the federal district court in the Eastern District of Texas, considering a case in which a party wished to assert issue preclusion defensively, noted that the *Hicks* decision disallowed use of issue preclusion due to potential prejudice associated with a plaintiff asserting it

offensively when the prior judgment is based on alternative grounds. 2015 WL 12696219, at *1. *Adaptix* was a patent case, and the defendant, AT&T, moved for summary judgment due to issue preclusion after a court in California, in a related case, had first determined that there was no infringement and then determined that Adaptix was barred from bringing claims of contributory infringement involving AT&T under the doctrine of issue preclusion. *Id.* The court in the Eastern District of Texas was considering the same exact issue–whether Adaptix was barred from bringing claims of contributory infringement, and reasoned that Adaptix had not shown how AT&T's assertion of issue preclusion from a prior judgment based on alternative grounds prejudiced it. *Id.* at *3. The court specifically found that the issue was identical, it was actually litigated, the determination of the issue was necessary to the other court's holding, and the plaintiff had had a full and fair opportunity to litigate the issue in the other court. *Id.*

Here, like the defendant in *Adaptix*, CPC seeks to use collateral estoppel defensively. Ukrnafta argues that it cannot be used because the alternative holding was not necessary to the tribunal's decision, citing *Hicks*, and CPC argues that *Hicks* applies only to cases involving offensive collateral estoppel and that this case, like *Adaptix*, does not involve offensive collateral estoppel. The parties are arguing around each other. It is true that *Hicks* involved offensive collateral estoppel. But the court does not need to make a grand determination regarding the applicability of the alternative ground rule in cases involving the defensive, as opposed to offensive, use of collateral estoppel because the heart of the issue is whether, in fact, the determination of the issue was *necessary* to the decision. In *Adaptix*, the court found that the determination of the issue was necessary to the court's holding. Here, the determination of the timing was not necessary to the tribunal's holding. Accordingly, CPC's motion to dismiss based on the statute of limitations issue already being decided by the tribunal is DENIED.

### 3.    Merits

CPC argues that the tribunal's findings foreclose each of Ukrnafta's claims on the merits because they prohibit Ukrnafta from proving the elements of its tort claims.  Dkt. 64-1 at 17.  The tort claims and elements thereof are as follows:

(1)    Negligent Misrepresentation.  To make out a claim for negligent misrepresentation under Texas law, a plaintiff must prove "(1) the representation is made by a defendant in the course of his [or her] business, or in a transaction in which he [or she] has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

(2)    Fraud.  To make out a claim for fraud under Texas law, a plaintiff must show that the defendant made a material representation that was false, "it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth," "it intended to induce [the plaintiff] to act upon the representation," and the plaintiff "actually and justifiably relied upon the representation and thereby suffered injury." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

(3)    Misappropriation of Trade Secrets.  Under Texas law, "[t]he elements of misappropriation of trade secrets are the following: '(1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages.'"  *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 279 (5th Cir. 2012) (quoting *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied)).

(4)    Tortious Interference with Contract.  Under Texas law, "[t]he elements of tortious interference with contract are (1) a contract subject to interference; (2) a willful and intentional act of interference (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage." *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016) (citing *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex.1996)).

(5)    Unjust Enrichment.  "Unjust enrichment is an implied-contract basis for requiring restitution when it would be unjust to retain benefits received. . . . [It] allows recovery 'when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Perales v. Bank of Am., N.A.*, No. H-14-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014) (Rosenthal, J.) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)) (discussing the contours of unjust enrichment).

CPC contends that at least one element of each of these claims cannot be met because the tribunal found that (1) CPC's change in domicile caused Ukrnafta no harm, (2) CPC did not act with a

culpable state of mind, and (3) CPC was the successor of CPC-Texas and acquired all of CPC-Texas's rights and obligations, and all of Ukrnafta's claims fail under these findings. *Id.* at 17–20.

Ukrnafta argues that (1) CPC's "blanket statement" that the tribunal determined that Ukrnafta suffered no harm is a mischaracterization. Dkt. 67 at 16. Ukrnafta asserts that it did not put its harm at issue in the arbitration and instead just raised defenses that did not require it to demonstrate harm. *Id.* It also asserts that the discussion of harm was not necessary to the final award. *Id.* at 17. Additionally, Ukrnafta contends that CPC's knowledge or recklessness was not arbitrated and any comments by the tribunal about CPC's knowledge were not necessary to the decision. *Id.* Finally, Ukrnafta asserts that the issues to be decided in this case regarding whether CPC is CPC-Texas's successor in interest "are not identical to anything the Tribunal decided" and even if CPC acquired some rights, it may not have extended to the trade secrets at issue in this case. *Id.* at 18.

CPC replies that the tribunal's finding on harm was "clearly relevant" and that one of the reasons the tribunal rejected the change-of-domicile argument was the absence of prejudice. Dkt. 70 at 5. With regard to scienter, CPC asserts that the tribunal clearly found that CPC did not intend to deceive Ukrnafta. *Id.* at 6. And with regard to whether the tribunal's findings on what CPC acquired in the merger include the trade secrets, CPC points out that the tribunal found that CPC succeeded CPC-Texas's rights under the JAA, which would include the trade secrets at issue here. *Id.*

The tribunal concluded that "governed by the law of Delaware, [CPC-Texas] was merged into [CPC] and ceased to exist on 22 July 1996. With that merger [CPC] succeeded into all rights and obligations of [CPC-Texas] and thus became a party to the initial JAA and acquired the legal capacity to enter into the Restated JAA as well as other addenda concluded with [Ukrnafta]." Dkt. 64, Ex. 3, Ex. A ¶ 203. It went on to note that CPC-Texas was not required under the JAA to inform Ukrnafta even though it appears that it did. It noted that the tribunal was "not merely considering the legal positions on the validity of the various agreements but also notes that

[Ukrnafta] has not asserted that it suffered harm from the fact that its contractual partner was no longer [CPC-Texas], but [CPC]." *Id.* ¶ 204. It found that the "fact that CPC was no longer incorporated in Texas had merely legal and tax implications for CPC itself. Nothing in relation to the way that business was conducted with the partners of CPC changed, and even the business address and the staff remained the same." *Id.* ¶ 205.

The court finds that the issue of harm determined by the tribunal is identical to the issue of harm needed to prove the claims in this case, harm was actually litigated in the arbitration, and the determination of harm was necessary to the tribunal's decision. Ukrnafta says it did not place harm into issue during the arbitration, as it was not required to assert it suffered harm. Dkt. 66 at 16. But CPC asserts that it (CPC) argued absence of harm as a reason to reject Ukrnafta's position, and "Ukrnafta's tactical decision not to put on any evidence in response to those arguments, even if based on a mistaken belief about relevance, does not mean the issue was not 'actually litigated' in the arbitration." Dkt. 70 at 5–6. The court agrees. Here, Ukrnafta would have to prove it suffered harm due to the merger to make out each of its tort claims, with the possible exception of unjust enrichment. The tribunal's finding that the merger resulted in no harm precludes Ukrnafta from relitigating that issue in this case.

The tribunal's finding that CPC acquired all of CPC-Texas's rights in the merger also precludes some of Ukrnafta's tort claims. Ukrnafta argues that the issues in this case are whether its trade secrets were acquired through improper means and whether the trade secret was used without its authorization, which are issues that "are not identical to anything the Tribunal has decided." Dkt. 67 at 18. It asserts that even if the merger was valid and CPC acquired rights under the JAA, the rights may not have extended to the acquisition of trade secrets. *Id.* Ukrnafta contends that it disclosed its trade secrets to CPC believing it was disclosing them to CPC-Texas and even though the tribunal determined that CPC has "certain rights under the JAA, it did not consider

whether this included the broader right to receive trade secrets from Ukrnafta under the appropriate legal standard." *Id.* at 19. Similarly, Ukrnafta contends that its unjust enrichment claim is not precluded because CPC wrongly received valuable trade secrets and the tribunal did not address CPC's right to receive trade secrets. *Id.*

The tribunal found that CPC "succeeded into *all rights and obligations of CPC-TX* and thus both became a party to the initial JAA and acquired the legal capacity to enter into the Restated JAA as well as other addenda concluded with [Ukrnafta]" and that the "newly formed company completely acquir[ed] the rights and obligations of the initial party." Dkt. 64, Ex. 3, Ex. A ¶¶ 203, 206 (emphasis added). In this case, Ukrnafta pled that it provided trade secrets pursuant to the JAA. Dkt. 1-7. If CPC succeeded all rights and obligations under the JAA, then the tribunal's findings preclude the claim that it was improper for CPC to obtain the trade secrets or that CPC wrongly received the trade secrets. The issue is identical, it was actually litigated, and it was necessary to the tribunal's holding. Thus, Ukrnafta's misappropriation of trade secrets claim and unjust enrichment claim fail for the additional and independent reason that CPC acquired all of CPC-Texas's rights in the merger and thus there was nothing wrong or unjust about it receiving Ukrnafta's trade secrets pursuant to the terms of the JAA.

Finally, CPC argues that the tribunal's findings regarding CPC's state of mind preclude the fraud and tortious interference with contract claims. Dkt. 64-1 at 18, 19. The court need not address this contention since it has already found that essential elements of each tort claim fail.

Ukrnafta also requests the court enter a declaratory judgment that the JAA is void and all of the amendments are void ab initio and enter an injunction prohibiting CPC from improperly using Ukrnafta's trade secrets. Both are precluded by the tribunal's finding that CPC was CPC-Texas's successor and thus entitled to receive Ukrnafta's trade secrets under the terms of the JAA.

**B.      Claim Preclusion and Rule 54**

Because the court finds that summary judgment should be granted in CPC's favor under the doctrine of issue preclusion, it need not address CPC's arguments that the claims also fail under claim preclusion. Additionally, it need not address whether to issue a final judgment only on the enforcement of the arbitration award since this order disposes of all open issues between CPC and Ukrnafta.

**C.      Other Defendants**

Ukrnafta has sued three additional defendants. While it did serve two of the three additional defendants several years ago, it has not otherwise pursued its claims against these defendants. Ukrnafta is ORDERED to show cause within ten days of the date of this order why the claims against Taurex Resources PLC, Robert Bensch, and Kuwait Energy Company, K.S.C. should not be dismissed for want of prosecution.

## IV. CONCLUSION

CPC's motion for summary judgment is GRANTED. CPC's alternative motions to dismiss and for Rule 54 judgment are DENIED AS MOOT. Ukrnafta is ORDERED to show cause within ten days of the date of this order why the claims against the other defendants should not be dismissed for want of prosecution.

Signed at Houston, Texas on November 13, 2018.

_____
Gray H. Miller
United States District Judge