# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| OJSC UKRNAFTA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-09-891 |
| | § | |
| CARPATSKY PETROLEUM CORPORATION *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to compel filed by defendant Carpatsky Petroleum Corporation ("CPC"). Dkt. 109. The court originally considered CPC's request through its informal discovery dispute procedure, which included a teleconference held on May 11, 2020. Dkt. 107. After the teleconference, the court determined that a round of briefing would be beneficial and ordered CPC to file a motion to compel and plaintiff OJSC Ukrnafta ("Ukrnafta") to file a response. Dkt. 108. The parties complied, and CPC has also filed a request to file a brief reply. Dkt. 112. After considering the arguments made during the teleconference, the parties' briefing, and the applicable law, the court is of the opinion that the request to file a reply should be DENIED and the motion to compel should be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

This court's involvement in this case began on March 26, 2009, when CPC removed the case to this court. Dkt. 1. Jurisdiction was predicated on the claims arising under the laws and treaties of the United States because they arose from an agreement between diverse parties—a Delaware corporation and the other a Ukrainian corporation—and the agreement contained an arbitration clause. *Id.* The court stayed the case for arbitration, and an arbitration panel in Stockholm

eventually issued an award in favor of CPC.  *See* Dkt. 53.  After appeals were exhausted in Sweden, this court confirmed the award.  *See id.*  The court also granted summary judgment on Ukrnafta's claims against CPC.  Dkt. 71.  The court entered final judgment on December 6, 2018, and Ukrnafta appealed.  Dkts. 79, 81.  On April 6, 2020, the Fifth Circuit affirmed this court's judgment. Dkt. 104.

CPC has been trying to collect on its judgment.  It served asset discovery requests in February 2019, and Ukrnafta initially produced four documents in response and eventually produced sixteen more documents.  Dkt. 109.  Ukrnafta has objected to disclosure of the following documents or categories of documents, and CPC moves to compel production of the documents:

**(1)     The Primecap Agreement**

CPC requested documents concerning the transfer of money, property, or assets made by or on behalf of Ukrnafta that terminated outside of Ukraine.  Dkt. 109.  Ukrnafta identified large payments to Primecap Cyprus Ltd., which is a foreign surety.  *Id.*  Ukrnafta, however, will not provide the contract under which the payments were made, arguing that it has a confidentiality provision prohibiting disclosure and that, regardless, it is irrelevant as all payments under the contract have already been made.  *Id.*  CPC argues that parties may not use private confidentiality agreement to subvert the discovery rules and that Ukrnafta's relevancy argument represents a "cramped view of relevance and ignores the realities of asset discovery."  *Id.*  It contends that the information it seeks provides a piece of a puzzle which it will use to predict future surety engagements or transactions and will help identify witnesses and other topics for further discovery. *Id.*

Ukrnafta argues that it disclosed its financial transactions with Primecap, listing a total of six payments to Primecap, the last of which settled all outstanding balances.  Dkt. 111.  It contends that

the agreement is therefore irrelevant, as it will not inform further enforcement efforts. *Id.* Ukrnafta further argues that it has not been given permission by Primecap to release the confidential terms of service. *Id.* It points out that it has even disclosed the financial institution from which it paid Primecap, arguing that there therefore are no other pieces of the puzzle for CPC to uncover. *Id.* Moreover, Ukrnafta asserts that the assets used for this agreement were in Ukraine and held by a Ukrainian institution, and thus do not lead to any assets CPC could legally recover anyway. *Id.*

**(2)     The Laber Declaration**

CPC requested documents related to any claims that Ukrnafta asserted against other parties, and Ukrnafta provided a statement of claim it had filed against the Russian Federation over Russia's annexation of Ukrnafta's assets in Crimea; this claim went to arbitration. Dkt. 109. The disclosed statement refers to a statement made by a member of Ukrnafta's supervisory board, Mr. Uriel Laber. *Id.* Ukrnafta withheld the Laber statement on relevancy grounds. *Id.* CPC contends that Laber's declaration describes the movement of petrol from Ukraine to Crimea and seizure of the assets in Crimea by the Russian Federation, and it asserts that details about this petrol movement could shed light on Ukrnafta's product distribution or export practices more generally. *Id.* It additionally asserts that details about the Russian Federation's expropriation of Ukranafta's property could help CPC execute against those assets to satisfy its judgment. *Id.*

Ukrnafta contends that it has provided all details about the expropriate of the property, down to the street address of the seized assets, to CPC. Dkt. 111. It points out that the Russian Federation's control over assets and property in Crimea is a significant geopolitical issue underlying the arbitration. *Id.* It contends that the Laber Declaration is about Ukranafta's loss of control of assets and that it has not moved any assets to Crimea since 2014. *Id.* It thus argues that it has

already provided everything that CPC needs to trace the former assets and requests that the court decline to compel further disclosure. *Id.*

**(3)       Naftogaz Litigation Documents**

CPC requested documents relating to any claims or potential claims concerning Naftogaz of Ukraine. Dkt. 109. Ukrnafta admitted that it filed a claim against Naftogaz in Kyiv Commercial Court to recover 8,039 billion cubic meters of natural gas, but it will not provide any documents related to the claim to CPC, arguing that they are protected by the attorney-client privilege. *Id.* CPC notes that it is not seeking any confidential communications between Ukrnafta and its attorneys or drafts prepared by its attorneys. *Id.* It seeks only documents that were actually filed in court and served on Naftogaz. *Id.* CPC provides a declaration from Iryna Nazarova, the managing partner at a law firm in Kyiv, Ukraine, who states that the privilege does not apply to documents that are in the possession of other parties, such as a court or another party in the lawsuit. *Id.*; Dkt. 109-8 (Nazarova Dec.).

Ukrnafta continues to assert that the Naftogaz litigation documents are privileged and irrelevant. Dkt. 111. It contends that the litigation was between two Ukrainian companies before a Ukrainian court applying Ukrainian law and that it concerned property and transactions within Ukraine. *Id.* It asserts that it is entitled to withhold the documents under Article 22 of the Law of Ukraine, and because they were drafted and reviewed by its counsel, they remain confidential within the Ukrainian court system. *Id.* They provide a declaration by Iegor Siervo, Ukrnafta's in-house legal counsel, who contends that Article 22 would exempt the "counsel-prepared documents" from production if they are requested by a third party like CPC. Dkt. 111-1. Ukranafta also asserts that the documents bear no relevance since they concern only Ukrainian assets. Dkt. 111.

**(4)**     **The Crown Agents Document**

CPC requested documents relating to a study that Crown Agents performed on Ukrnafta's procurement systems. Dkt. 109. CPC knew about the study from a "memorandum of understanding" that Crown Agents produced in response to a third-party subpoena. *Id.* The memorandum indicated that the study was a review and diagnostic of Ukrnafta's supply chain system and design of a procurement target operating model. *Id.* Crown Agents, however, would not send the results of the study to CPC, and instead insisted that CPC obtain them from Ukrnafta. *Id.* Ukrnafta would not produce the results of the study because it contended they were irrelevant and did not identify specific vendors. *Id.* Ukrnafta also insisted that the study only addressed internal protocols like how to monitor petty cash reimbursements by employees. *Id.* CPC finds this explanation questionable given the title of the study contains the term "supply chain function" and the study was about Ukrnafta's "supply chain system" and procurement model. *Id.* Additionally, it argues that whether it identifies specific vendors is inconsequential because information about how Ukrnafta structures and manages its supply chain will help CPC predict with which companies Ukrnafta may do business and the form the transactions may take. *Id.* Moreover, even if the study identifies only internal procedures, it may provide CPC with knowledge about specific witnesses who could provide information about Ukrnafta's supply chain management or help CPC to formulate more targeted discovery requests by identifying categories of documents. *Id.* In other words, the identification of specific vendors may be the endpoint, and the study may provide hints to get to that endpoint. *Id.*

Ukrnafta argues that the report and supporting documents are irrelevant and the production is thus disproportionately burdensome. Dkt. 111. It asserts that the Crown Agents' review was of internal protocols, vulnerabilities, inefficiencies, and areas of improvement, which is sensitive

5

business information and would not be helpful in identifying any specific assets, employees, contracts, or contract-party. *Id.* Additionally, it argues that because the Crown Agents did the review over three years ago and did not leave a written record of what was reviewed, producing all documents related to drafting the review, which is included in CPC's request, would be overly burdensome. *Id.*

Ukrnafta argues more broadly that CPC's motion to compel is not about seeking these documents to enforce its judgment. Dkt. 111. Rather, it contends that the documents CPC seeks relate only to assets in a foreign sovereign state whose courts have rejected the validity and enforceability of the arbitration award. *Id.* It asserts that CPC's rights to discovery are not limitless, especially when they implicate principles of international comity and threaten Ukrnafta's ability to comply with Ukrainian law. *Id.* Ukrnafta argues that because the Ukrainian courts declared the arbitration agreement that supports the award CPC seeks to enforce null and void, Ukrnafta is prohibited under Ukrainian law from participating in asset discovery or asset transfers that would enable CPC to enforce the judgment against property located within Ukraine. *Id.* (citing Dkt. 97, Exs. 8-10 and Sierov Dec.). Its in-house counsel asserts that "[c]omplying with the Texas judgment and paying the arbitration award will be illegal under Ukrainian law, under Articles 364-1 and 367 of the Criminal Code of Ukraine, as well as a failure to comply with a Ukrainian judicial decision, under Article 382 of the Criminal Code of Ukraine. For payment to be lawful, the award must be recognized in Ukraine, and here , it is not." Dkt. 111-1. Ukrnafta acknowledges that CPC is asserting that it is not seizing the assets, merely seeking information about them. *Id.* But it argues that the only reason CPC needs this information is to support future efforts to collect against the Ukrainian assets in contravention to the Ukrainian court's orders. *Id.* It argues that a "vague suspicion that the documents may leave a bread crumb trail is not enough to justify setting aside

general principles of discovery and international comity." *Id.*  It urges the court to decline CPC's invitation to order disclosure of documents that it contends will not enable CPC to enforce its judgment. *Id.*

## II.  MOTION TO FILE A REPLY

The court confined the briefing to a motion and response. *See* Dkt. 108.  CPC moves to file a reply because it believes a reply will assist the court in resolving the dispute.  Dkt. 112.  However, the proposed reply merely provides legal arguments relating to the impact of the cases cited by Ukrnafta. *See* Dkt. 112-1.  The court is capable of determining the import of the cases cited by the parties without the benefit of a reply brief.  Accordingly, the motion to file a reply is DENIED.

## III.  MOTION TO COMPEL

Federal Rule of Civil Procedure 69 relates to execution of a judgment.  Fed. R. Civ. P. 69. Rule 69(a)(2) covers discovery: "In aid of the judgment of execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."  Fed. R. Civ. P. 69(a)(2).  Under Rule 26(b),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P 26(b).  "The judgment creditor is allowed discovery to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution. . . . The scope of examination is very broad, as it must be if the procedure is

to be of any value."  Charles Alan Wright et al., Federal Practice and Procedure § 3014 (3d ed. 2020 Update).

The court has already ruled that CPC may gather the evidence needed to best execute its judgment.  Dkt. 99.  CPC argues that the documents it now seeks are relevant because they will help it "assemble[] scraps of information like pieces of a puzzle to predict future payments, transactions, or other patterns of conduct."  Dkt. 109.  Ukrnafta, on the other hand, argues that documents relating solely to assets located within Ukraine will not help CPC execute its judgment because CPC may not obtain assets located in Ukraine under Ukranian law.  Dkt. 111.

The court finds, in line with its prior order, that CPC is entitled to conduct broad discovery to help it determine how to best execute its judgment.  Thus, CPC's motion to compel is **GRANTED, IN PART**.

First, Ukrnafta shall provide the Primecap Agreement in accordance with the protective order issued in this case.

Second, the court is unconvinced that Ukraine's privilege laws preclude disclosure of the requested Naftogaz litigation documents, as while the actual documents that are in the possession of Ukrnafta may not be reachable under Ukranian law, the documents filed with the court are not privileged.  Ukrnafta is thus ORDERED to provide a copy of the Naftogaz litigation documents to CPC.

Third, Ukrnafta must provide the Crown Agents report.  However, the court finds requiring Ukrnafta to gather all of the documents supporting the Crown Agents' report would be overly burdensome, and the motion to compel, to the extent it seeks these additional documents, is DENIED.

Finally, it is unclear why Ukrnafta is concerned about the "significant geopolitical issues" associated with disclosing the Laber Declaration since it has already provided details about seized assets. However, rather than attempting to determine whether this document is actually relevant and whether requiring its disclosure requires a comity analysis without actually knowing what is in the document, the court ORDERS Ukrnafta to provide a translated copy of the Laber Declaration to the court for an *in camera* inspection. Ukrnafta must provide this copy within twenty (20) days of the date of this order. The court will rule on the motion to compel the Laber Declaration within a reasonable amount of time after receiving it for *in camera* inspection.

Signed at Houston, Texas on June 19, 2020.

Gray H. Miller
Senior United States District Judge